IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EXMARK MANUFACTURING COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | 8:10CV187 |
| vs. | ) ) | ORDER |
| BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC, and SCHILLER GROUNDS CARE, INC., | ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on the plaintiff's Motion for Protective Order to Preclude Deposition of Attorney Dennis Thomte (Filing No. 76). Specifically, the plaintiff seeks to prevent Schiller Grounds Care, Inc. (Schiller), from taking the deposition of Dennis L. Thomte (Mr. Thomte). The plaintiff filed a brief (Filing No. 77), a reply brief (Filing No. 88), and an index of evidence (Filing No. 78) in support of the motion. Schiller filed a brief (Filing No. 82) and an index of evidence (Filing No. 83) in opposition to the motion.

## BACKGROUND

Mr. Thomte represented the plaintiff during the prosecution of the patent-in-controversy, U.S. Patent No. 5,987,863 ('863 patent), entitled "Lawn Mower Having Flow Baffles and Removable Mulching Baffles." Filing No. 78, Ex. 1 - Patent. Mr. Thomte does not represent the plaintiff in the instant matter, however, on at least one previous occasion, he represented the plaintiff in litigation related to the '863 patent. **See** *id.* Ex. 9 - Toro Order. In the instant matter, the plaintiff alleges Schiller is liable for infringing the '863 patent. Filing No. 14 - Amended Complaint. Schiller denies all allegations of infringement and argues the '863 patent is invalid and unenforceable due to inequitable conduct by the plaintiff during prosecution of the '863 patent. Filing No. 57 - Amended Answer.

On December 23, 1998, pursuant to 37 C.F.R. § 1.102(d), Mr. Thomte submitted a Petition to Make Special (PTMS) and a Statement Accompanying Petition to Make Special (SAPTMS) to the U.S. Patent and Trademark Office (PTO). Filing No. 78, Ex. 8 -

Petition & Statement. The PTMS requested the '863 patent application "be taken out of turn for immediate action." *Id.* - Petition p. 1. The PTMS states the "applicants' claims are being infringed" and "applicants require a patent in order to terminate such infringement." *Id.* The SAPTMS filed by Mr. Thomte states "there is an infringing product actually on the market" and "I have made a rigid comparison of the alleged infringing product with the claims of this application, and, in my opinion, some of the claims are unquestionably infringed." *Id.* - Statement p. 1. Subsequently, on March 18, 1999, the PTO granted the PTMS. Filing No. 83, Ex. A - Petition Decision. Ultimately, on November 23, 1999, the PTO issued the '863 patent. Filing No. 78, Ex. 1 - Patent. Thereafter, on May 16, 2001, the plaintiff brought suit against Scag Power Equipment, Inc. (Scag) alleging infringement of the '863 patent. Filing No. 83, Ex. B - Scag Complaint.

Schiller now wishes to depose Mr. Thomte regarding the prosecution of the '863 patent, specifically, in regard to the content of the PTMS and SAPTMS. Filing No. 82 - Response p. 1. The plaintiff seeks a protective order prohibiting Schiller from deposing Mr. Thomte because Schiller failed to make the required showing to depose opposing counsel under the Eighth Circuit's **Shelton** rule. Filing No. 77 - Brief p. 1 (**citing *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)**). First, the plaintiff argues the information sought is irrelevant because there is a pending motion to dismiss (Filing No. 40) regarding Schiller's inequitable conduct defense. Filing No. 77 - Brief p. 6, 11, 12, 17. Second, the plaintiff contends the information sought by Schiller is available from other sources and privileged. *Id.* at 6-17. Schiller counters by arguing first that the **Shelton** rule does not apply because Mr. Thomte does not represent the plaintiff in the instant matter. Filing No. 82 - Response p. 7. In the alternative, Schiller contends it has made the required showing to depose Mr. Thomte under **Shelton**. *Id.* at 9-13. Specifically, Schiller argues the PTMS and SAPTMS are central to its inequitable conduct defense and counterclaim and Mr. Thomte prepared, signed, and submitted these documents. *Id.* at 10. As such, Mr. Thomte "is the most significant, and possibly the only source for the information Schiller seeks," and the information sought is relevant, non-privileged, and crucial. *Id.*

**ANALYSIS**

The Federal Rules of Civil Procedure provide for a broad scope of discovery in federal civil actions. **See** Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"). The scope of discovery, however, is subject to certain limitations. Specifically, a court may issue an order protecting disclosure or discovery. **See** Fed. R. Civ. P. 26(c). The party moving for the protective order must show good cause before a court will issue the order. *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999). As such, the burden is upon the movant to show the need for the order, which contemplates a specific showing of fact, as opposed to merely conclusory statements. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

District courts have broad discretion to limit discovery and decide discovery motions under Rule 26(c). *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993). The district court's discretion to limit the scope of discovery exists so long as it has a good reason to do so. *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). As the Eighth Circuit stated, "because discovery rules should be construed to secure the just, speedy, and inexpensive determination of every action . . . judges should not hesitate to exercise appropriate control over the discovery process." *Misc. Docket Matter No. 1*, 197 F.3d at 927 (internal quotations omitted).

Although the Federal Rules of Civil Procedure do not themselves exempt an attorney from being a source of discoverable facts, "[g]enerally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999). Within the Eighth Circuit, the leading case on such depositions is ***Shelton***. Under ***Shelton***, a party seeking to take the deposition of an adverse party's attorney must show that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at

1327. "This difficult burden imposed by *Shelton* was intended to guard against the 'harassing practice of deposing opposing counsel . . . that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process.'" *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir. 2002) (**quoting** *Shelton*, 805 F.2d at 1330). The Eighth Circuit has explained that the *Shelton* test was erected as a barrier "to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." *Pamida, Inc.*, 281 F.3d at 730.

Schiller argues the *Shelton* rule does not apply to the instant matter because Mr. Thomte is not the plaintiff's trial counsel in the current litigation, nor is there any evidence he is assisting trial counsel for the plaintiff in the current litigation. In the past, however, Mr. Thomte represented the plaintiff in litigation involving the '863 patent. Accordingly, although litigation strategy can vary considerably from case to case, it stands to reason that deposing Mr. Thomte *could* potentially lead to the disclosure of the plaintiff's litigation strategy in the instant case. This is the exact danger the *Shelton* test was erected to protect against. **See** *Pamida*, 281 F.3d at 730. As such, the court finds *Shelton* controls in this matter and the court will only allow Schiller to depose Mr. Thomte if it can show (A) no other means exist to obtain the information than to depose Mr. Thomte, (B) the information sought is relevant and nonprivileged, and (C) the information is crucial to the preparation of the case. For the reasons stated below, the court finds Schiller has made such a showing.

**A.     No other means exist to obtain the information.**

Schiller seeks to depose Mr. Thomte, the attorney who prosecuted the '863 patent for the plaintiff, regarding its inequitable conduct claim. Inequitable conduct renders a patent unenforceable if "the applicant withheld material information from the PTO during examination of the patent or submitted material false information, and that the applicant acted with the intent to deceive or mislead the examiner into granting the patent." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1326 (Fed. Cir. 2000). When inequitable conduct is alleged, "[a]n equitable judgment must be made that, in light of all the particular

circumstances, the conduct of the patentee is so culpable that its patent should not be enforced." *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1070 (Fed. Cir. 1992). The knowledge and actions of a patent applicant's representatives, including its attorney, are imputed to the applicant when determining whether inequitable conduct has occurred. **See** *Novo Nordisk Pharm., Inc. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1361 (Fed. Cir. 2005); **see also** 37 C.F.R. § 1.56 (stating the duty to disclose material information extends to the attorney who prosecutes a patent application). Schiller argues that because Mr. Thomte prepared, signed, and submitted the PTMS and SAPTMS, which are central to its inequitable conduct defense and counterclaim, Mr. Thomte "is the most significant, and possibly the only source for the information Schiller seeks." Filing No. 82 - Response p. 10.

In contrast, the plaintiff argues the information Schiller seeks is available from sources other than Mr. Thomte, such as the '863 patent inventors. Filing No. 77 - Brief p. 9-10. In making this argument the plaintiff relies exclusively on this court's decision to issue a protective order preventing the deposition of Mr. Thomte in *Toro v. Scag Power Equipment*,[1] a wholly separate matter involving the '863 patent. See Filing No. 77 - Brief p. 9-10 ("This case is controlled by the Court's decision in *Toro v. Scag Power Equipment* . . ."). Such reliance is misplaced. In *Toro*, the plaintiffs brought an infringement action against the defendants alleging infringement of three patents, including the '863 patent. **See** Filing No. 78, Ex. 9 - Toro Order p. 1-3. The defendants argued the three patents were each invalid and unenforceable because of the plaintiff's inequitable conduct before the PTO and sought to depose Mr. Thomte "concerning his knowledge, intent, and actions" in the prosecution of the patents-in-controversy. **See** *id.* at 7.

In regard to the '863 patent, the thrust of the defendants' inequitable conduct claim was that the plaintiff failed to disclose prior art in the prosecution of the '863 patent. *Id.* at 3. Specifically, the defendants alleged bad faith in that the plaintiffs, by and through Mr. Thomte, had failed to disclose a 1995 Walker Manufacturing Co. (Walker) brochure,

---

[1] *Toro v. Scag Power Equipment*, Case No. 8:01CV279 (D. Neb. Mar. 8, 2002). In *Toro*, Exmark Manufacturing Company, Inc. and The Toro Company were the plaintiffs; Scag Power Equipment, Inc. and Metalcraft of Mayville, Inc. were the defendants. **See** Filing No. 78, Ex. 9 - Toro Order

which constituted prior art. *Id.* While the '863 patent cited to a 1996 Walker brochure as prior art, the defendants argued the referral was to different prior art than the 1995 Walker brochure and such difference demonstrated bad faith in the prosecution of the '863 patent. *Id.* In other words, in *Toro*, the defendants' inequitable conduct defense centered on whether the 1995 Walker brochure constituted prior art, and if so, whether the 1995 brochure represented prior art different from the disclosed 1996 brochure. Answering each of these questions required examining the substantive content of both the 1995 and 1996 Walker brochures and the '863 application. Because the defendants' inequitable conduct claim turned on the similarities and differences between the Walker brochures and the '863 application, this court reasoned that any information discoverable from Mr. Thomte was also likely to be discoverable from the inventors. *Id.* at 8-10.

Conversely, in the instant matter, the thrust of Schiller's inequitable conduct claim centers on the veracity of Mr. Thomte's statements to the PTO that "there [was] an infringing product actually on the market[,]" *he had made* "a rigid comparison of the alleged infringing product with the claims" found in the '863 patent application, and *in his opinion*, "some of the claims [were] unquestionably infringed." **See** Filing No. 78, Ex. 8 - Petition p. 1 & Statement p. 1. Thus, the underlying factual issue centers on whether Mr. Thomte actually undertook the actions and reached the conclusions asserted in the PTMS and SAPTMS. As such, the court finds it is unlikely that either the inventors, or any other employee of the plaintiff would be a viable source of the information sought by Schiller. Furthermore, the plaintiff has failed to produce any evidence to show otherwise. Therefore, the court finds Schiller satisfies the first *Shelton* factor.

**B.    The information sought is relevant and nonprivileged.**

When a defendant accused of infringement asserts the patent-in-controversy is invalid and unenforceable because of inequitable conduct, there is no doubt the mental impressions of the attorney who prosecuted the allegedly invalid patent are relevant. **See** *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 774 n.3 (N.D. Ill. 2005) (finding discovery from attorneys involved in prosecution of patent-in-controversy is directly relevant to claim of inequitable conduct). Accordingly, the court's analysis will

6

focus on whether the information sought by Schiller is nonprivileged. Because Schiller seeks information that is both factual in nature and previously disclosed, the court finds the information sought is nonprivileged.

Although contrary authority exists, in the view of this court, the attorney-client privilege does apply to pre-litigation aspects of a patent attorney's practice, including the patent application process. See *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000) (holding attorney-client privilege applied to a document provided to a patent attorney for the purpose of making patentability determination), **and** *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1391 (Fed. Cir. 1996) (holding attorney-client privilege applied to pre-litigation communication between client and patent attorney ); **but see** *Genal Strap, Inc. v. Dar.*, Case No. CV2004-1691, 2006 WL 525794, at *2 (E.D.N.Y. Mar. 3, 2006) ("[W]ork performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection because it is not created in anticipation of litigation.")

Nevertheless, the information sought by Schiller is factual in nature and it is well established law that the attorney-client privilege cannot act to shield the discovery of relevant facts. See *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (underlying facts transmitted between a client and attorney do not become privileged); **see also** *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product."). Moreover, because the PTMS and SAPTMS disclosed the actions or knowledge underlying Schiller's inequitable conduct claim, any privilege attached to the actions or knowledge in question has been destroyed. Therefore, the court finds the information sought by Schiller is both relevant and nonprivileged.

**C.    The information is crucial to the preparation of the case.**

The court finds little difficulty concluding the information sought by Schiller is crucial to the preparation of the case. See *Alcon Labs. Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002) (finding mental impressions of patent prosecution counsel are

7

"crucial" to any claim of inequitable conduct). The plaintiff argues "Mr. Thomte's testimony cannot be found to be crucial, for *Shelton* purposes, because it does not support any defense that has been properly pled." Filing No. 77 - Brief p. 17 (**citing** *Exergen v. Walmart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009)). The crux of this argument is that the plaintiff's motion to dismiss Schiller's inequitable conduct claim (Filing No. 40) will inevitably be granted because Schiller has not pled sufficient underlying facts from which a court may reasonably infer Mr. Thomte's actions in the prosecution of the '863 patent constituted inequitable conduct.

The court finds the plaintiff's argument unpersuasive for two reasons. First, although the plaintiff's motion to dismiss (Filing No. 40) is still pending, this fact does not provide sufficient grounds for the court to conclude that Schiller's inequitable conduct defense will ultimately be dismissed. The fact is, Schiller's inequitable conduct defense is properly before the court at this time. Second, Schiller's Amended Answer (Filing No. 57), which was filed *after* the plaintiff's motion to dismiss, has likely remedied any deficiencies that may have been present in its original Answer (Filing No. 29). In its Amended Answer, Schiller has identified with particularity *who* committed the inequitable conduct (Mr. Thomte), *what* claims are tainted by the inequitable conduct (the '863 patent), *when* the inequitable conduct occurred (December 23, 1998), *where* the misrepresentation can be found (in the PTMS and SAPTMS), *why* the misstatement is material (because it led to an accelerated issuance of the '863 patent), and *how* the PTO used the misrepresented information (led PTO to grant PTMS) as required under *Exergen*. **See** Filing No. 57 - Amended Answer ¶ 21.

Under *Shelton* the practice of deposing opposing counsel should only be permitted under limited circumstances. The court's decision today comports with the decisions of other courts who have permitted depositions of patent prosecution counsel when the mental impressions and knowledge of such counsel was relevant to a claim of inequitable conduct. **See, e.g.,** *Paragon Podiatry Lab. Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1993) (citing patent attorney's deposition in affirming district court's decision that patent was invalid and therefore unenforceable); *Plymouth Indus., LLC v. Sioux Steel Co.*, Case No. 8:05CV469, 2006 WL 695458 (D. Neb. Mar. 17, 2006) (granting the


defendant's motion to compel deposition of patent prosecution counsel); *Amicus Comms. v. Hewlett-Packard Co., Inc.*, Case No. 99-0284, 1999 WL 33117227, at *2 (D. D.C. Dec. 3, 1999) (same); *Environ Prods. Inc. v. Total Containment Inc.*, 41 U.S.P.Q.2d 1302, 1306 (E.D. Pa. 1996) (same); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995) (refusing to limit scope of deposition of patent prosecution counsel). Moreover, the court's decision to deny the plaintiff's request to issue a protective order in no way precludes Mr. Thomte from asserting the attorney-client privilege during his deposition, if appropriate. Upon consideration,

**IT IS ORDERED:**

The plaintiff's Motion for Protective Order to Preclude Deposition of Attorney Dennis Thomte (Filing No. 76) is denied.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 18th day of April, 2011.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.