IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING COMPANY INC., <br><br> Plaintiff, <br><br> v. <br><br> BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC, and SCHILLER GROUNDS CARE, INC., <br><br> Defendants. | 8:10CV187 <br><br> MEMORANDUM AND ORDER |

This action is before the court for resolution of issues of claim construction after a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Exmark filed this action for patent infringement. Exmark generally contends that the claims of the patent in question define the invention in clear and simple terms that a jury can understand. Defendants disagree and contend that this court should construe a number of the terms and phrases. The court has carefully reviewed all submissions and pleadings by the parties, and in particular those submissions relating to the claim constructions, listened to oral argument, and reviewed the relevant caselaw. The court makes the following findings.

## BACKGROUND

Plaintiff Exmark Manufacturing Co., Inc. ("Exmark") is a manufacturer of high quality lawnmowers based in Beatrice, Nebraska. Under the terms of an acquisition dated November 25, 1997, Exmark is a wholly-owned subsidiary of the Toro Company ("Toro").

Exmark is the owner of U.S. Patent 5,987,863 (the '863 patent"), entitled "Lawn Mower Having Flow Control Baffles and Removable Mulching Baffles." On May 12, 2010, Exmark filed a complaint for infringement of the '863 patent against Briggs & Stratton Power Products Group, LLC ("Briggs") and Schiller Grounds Care, Inc. ("Schiller").

The '863 patent is part of a family of patents that can be traced back to a parent patent application, Ser. No. 08/559,575, that was filed November 16, 1995, and later abandoned. Goggin Ex. 2. The other patents in this family ("the Related Patents") include U.S. Patent 5,845,475 ("the '475 patent"), U.S. Patent 5,816,033 ("the '033 patent"), and U.S. Patent 5,865,020 ("the '020 patent").

The '475 patent application was filed on January 17, 1997, as a continuation in part of the abandoned application. The '863 patent application was thereafter filed on August 18, 1998, as a continuation of the '475 patent application.

Exmark is the sole owner of the '863 patent. Filing No. 15, Ex. 1. Issued on November 23, 1999, the patent is for a multi-blade lawn mower that can be converted from a conventional side discharge mower to a mulching mower. *Id.* Exmark alleges that defendants are knowingly and actively engaging in the manufacture and sale of similar mowers that are covered by the '863 patent. Filing No. 14 at 2-4. Exmark contends it has complied with the statutory requirement of placing a notice of the '863 patent on all mowers it makes that use the patented design. *Id.* at 2. Lastly, Exmark claims defendants knew or should have known of the '863 patent and that the sale of the mowers in question would infringe upon the '863 patent. *Id.* at 4.

Defendant Schiller admits that Exmark is the owner of the '863 patent, but denies any infringement. Filing No. 57 at 2-3. Both parties admit that an "immediate, real, and justiciable controversy exists" with respect to the validity of at least one claim of the '863 patent. *Id.* at 9; Filing No. 33 at 2.

## DISCUSSION

*A. Law*

The claims of a patent define the scope of the patent. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). The claims of a patent are of primary importance in determining what is patentable and the function and purpose of a claim is to "delimit the right to exclude." *Id.* at 1312. The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The construction of the terms in a patent is a matter of law reserved entirely for the court. *Markman,* 517 U.S. at 372. A claim construction order will dictate how the court will instruct the jury regarding a claim's scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008). "A district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *Id.* However, when the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. *Id.* at 1360.

The words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art in question

at the time of the invention.  *Phillips*, 415 F.3d at 1313.  The inquiry into how a person of ordinary skill in the art understands a term provides an objective baseline for which to begin claim interpretation.  *Id.*  Importantly, a person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed claim appears, but in the context of the entire patent, including the specification.  *Id.* (noting that a court does not look to the ordinary meaning of the term in a vacuum; it must look at the ordinary meaning in the context of the written description and the prosecution history).  Absent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis.  *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1347 (Fed. Cir. 2008).

"In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.  However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent.  *Id.*  In cases that involve "little more than the application of the widely accepted meanings of commonly understood words," general purpose dictionaries may be helpful, but in many cases, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art and the court "must look to those sources that are available to the public that show what a person of skill in the art would have understood the disputed claim language to mean."  *Id.* at 1314.  "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic

4

evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

The claims themselves provide substantial guidance as to the meaning of particular claim terms, quite apart from the written description and the prosecution history. *Phillips*, 415 F.3d at 1314. The context in which a term is used is highly instructive—other claims of the patent in question can also be "valuable sources of enlightenment as to the meaning of a claim term," as can differences among claims. *Id.* (also noting that the usage of term in one claim can often illuminate the meaning of the same term in other claims).

Because the claims do not stand alone, but are part of a fully integrated written instrument, the specification is usually the best guide to the meaning of a disputed term. *Id.* The specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess; in such cases, the inventor's lexicography governs. *Id.* The patent's prosecution history, if it is in evidence, should also be considered, second in importance to the patent's specification. *Id.* at 1317 (noting, however, that because it represents an ongoing negotiation, the prosecution history "often lacks the clarity of the specification and is thus less useful for claim construction purposes").

When looking at a specification in the patent, the court adheres to two axioms. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004). "On the one hand, claims 'must be read in view of the specification, of which they are a part.'" *Id.* (*quoting Markman*, 52 F.3d at 976, *aff'd*, 517 U.S. 370 (1996). On the other hand, a court

5

may not read a limitation from the specification into the claims. *Innovad Inc. v. Microsoft Corp.,* 260 F.3d 1326, 1332 (Fed. Cir. 2001) (noting that the "interpretative process forbids importing limitations from the specification into the defining language of the claims."). The distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be difficult to apply in practice. *Phillips,* 415 F.3d 1323. The purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so, and "[o]ne of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case." *Id.* On reading the specification in that context, it will often become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive. *Id.* (noting also that "there will still remain some cases in which it will be hard to determine whether a person of skill in the art would understand the embodiments to define the outer limits of the claim term or merely to be exemplary in nature.") A construction which excludes the preferred embodiment of a pantent is "rarely, if ever, correct." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.,* 616 F.3d 1283, 1290 (Fed. Cir. 2010).

Although intrinsic evidence is preferred, courts are also authorized to rely on extrinsic evidence "which consists of all evidence external to the patent and prosecution history including expert and inventor testimony, dictionaries and learned treatises." *Phillips,* 415 F.3d 1323 (noting that "extrinsic evidence is less significant than the intrinsic record in determining the 'legally operative meaning of claim language.'"). *Id.*

6

The court is guided in its endeavor by several "canons of construction" or guideposts. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1376 (Fed. Cir. 2001). Under the doctrine of claim differentiation, a dependent claim has a narrower scope than the claim from which it depends and an independent claim has a broader scope than the claim that depends from it. *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.,* 423 F.3d 1343, 1351 (Fed. Cir. 2005). Also, ordinarily, claims are not limited to the preferred embodiments disclosed in the specification. *Phillips,* 415 F.3d at 1323. Different words in a patent have different meanings and the same words have the same meaning. *Innova/Pure Water, Inc.,* 381 F.3d at 1119-20. Use of the open-ended term of art, "comprising," allows the addition of other elements so long as the named elements, which are essential, are included. *See Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501 (Fed. Cir. 1997); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed. Cir. 1986) (noting that "comprising" opens a method claim to the inclusion of additional steps, but does not affect the scope of the structure recited within the steps). If possible, claims should be construed so as to preserve the claim's validity, but that maxim is limited "to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" *Phillips,* 415 F.3d at 1327 (*quoting Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 911 (Fed. Cir. 2004)). When a document is "incorporated by reference" into a host document, such as a patent, the referenced document becomes effectively part of the host document as if it were explicitly contained therein. *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1329 (Fed. Cir. 2001).

7

### *B. Claim Construction*

The court has carefully reviewed the patent at issue and the intrinsic evidence. The court's claim construction is generally guided by the language of the claims, in the context of the other claims of the patent and the specifications. The intrinsic evidence of record provided a sufficient foundation for the court's claim construction.

### **1. Claim Term One - Involves Claims 1, 2, 6 and 7**

During the *Markman* hearing, the parties informed the court that they have now agreed to the construction of "first flow control baffle" and this court need not make any constructions in this regard.

The court will note, however, that it has determined that the use of the term "first," as in "first flow . . . ," throughout the list of claim terms and proposed constructions is construed by the court as the word "front." In other words, each time the word "first" is used in the term/phrase in Claim Term numbers 1 through 12, the court is going to construe that term as "front" hereinafter. Likewise, each time the word "second" is used, the court is going to change the construction of the word "second" to the word "rear."

### **2. Claim Term 2 - Claims 1, 2, 6, and 7**

Exmark argues that no construction is required for the phrase "said front flow control baffle extending substantially continuously from the front location adjacent the interior surface of said second side of wall to a second location adjacent the interior surface of said front side wall." Briggs and Schiller both propose a construction that would require language stating "said first front control baffle is in contact with or abutting the interior

8

surface of the second side wall and the interior surface of the first side wall, namely from side to side across the deck as shown in Fig. 4 of the '863 patent."

The court finds no support for defendants' proposed construction and finds no construction of this term is necessary. The meaning is relatively clear in the context of the patent as a whole. The word "adjacent" refers to parts that are near one another, but it does not require touching. There is a presumption that words in a claim mean the same thing. *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007). The word "adjacent" is used throughout the specification to mean "near." There is nothing in the prosecution history that justifies a change from the ordinary meaning of adjacent, and the court will not do so.

### **3. Claim Term 3 - Claims, 1, 2, 6, and 7**

Schiller requests that the phrase "and adjacent the forward end of said discharge opening" be construed to mean "and in contact with or abutting the forward end of said discharge opening." Exmark contends that no construction is required. The court agrees and finds that this language needs no construction and does not require contacting or abutting the forward end of the discharge opening. Again, as discussed above with Term 2, the word "adjacent" refers to parts that are near one another, but it does not require touching.

### **4. Claim Term 4 - Claims, 1, 2, 6 and 7**

The disputed phrase is "a front arcuate baffle portion that 'extends from the interior surface of said second side wall.'" Exmark argues no construction is needed. Briggs and Schiller argue for the following construction: "extends from a point in contact with or

9

abutting the interior surface of said second side wall." Again, the court finds no construction is required. The court agrees with Exmark that this language does not require that the first arcuate baffle portion contact or abut the second side wall. See *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 474 F. Supp.2d 1148, 1168 (E.D. Cal. 2007) (rejecting the contention that "extending from" required the structures to mechanically or structurally connected). The jury will be able to determine what "extends" means in this context, and the court finds no reason to read a limitation into this phrase as requested by defendants.

### 5. Claim Term 5 - Claims, 1, 2, 6, and 7

The phrase in question is "substantially straight." Exmark argues that no construction is required. Briggs argues that the construction should be "with no apparent curvature." Schiller did not propose any construction. The court agrees that no construction is needed. The jury can clearly determine what "substantially straight" means. See *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 2008 WL 4891132 *8 (D. Neb. 2008) ("A jury can be expected to understand that the word 'substantially' does not mean 'fully' or 'totally.'").

### 6. Claim Term 6 - Claims 1, 2, 6 and 7

The phrase in question is "a front elongated and substantially straight baffle portion, having first and second ends, extending from said second end of said front arcuate baffle portion." Defendants request a construction that states: "a first baffle portion, having a first and second ends, extending from a point in contact with or abutting said second end of said first arcuate baffle portion, and being at least as long as said first arcuate baffle portion." The court agrees that no construction is required, for much the same reasons as

set forth in Claim 4. This language does not require the first elongated and substantially straight baffle portion contact or abut the first arcuate baffle portion. The court agrees with Exmark that this language does not require that the first arcuate baffle portion contact or abut the second side wall. The jury will be able to determine what "extends" means in this context. Further, the reliance by the defendant on the perspective view is not accurate. The more accurate view is of Figure 2 of the Patent. The jury will likewise be able to determine what "elongated" means. No additional construction is needed.

### 7.   Claim Term 7 - Claims 1, 2, 6 and 7

The phrase in question states: "said front elongated and substantially straight baffle portion being angularly disposed with respect to the said circle defined by the blade tip path of said second cutting blade in a chord-like fashion." Exmark contends that the word "chord" is a geometry term and refers to a line joining any two points of a circle. Exmark proposes the following language: "the front elongated and substantially straight baffle portion is oriented such that the line corresponding to that baffle portion intersects the circle defined by the blade tip path of the second cutting blade at two points." This language does not require the first elongated and substantially straight baffle portion physically extend into or underneath the circle defined by the blade tip path of the second cutting blade. The defendants propose the following construction: "a front elongated and substantially straight baffle portion intersects and extends into a circle defined by a blade tip path of a second cutting blade across at least one point."

The court agrees with Exmark's proposed construction in part. The court finds that "'the front elongated and substantially straight baffle portion is oriented such that the line

11

corresponding to that baffle portion intersects the circle defined by the blade tip path of the second cutting blade at two points" accurately construes the language in question. The defendants requested language is not supported by the claim language. Further, the court agrees that were it to construe the language as requested by the defendants, such construction would be inconsistent with the requirement that the baffle be "between" the cutting blades and the front wall. The court will not adopt the remaining language offered by Exmark or the language offered by the defendants.

The court realizes that the examiner, on reexamination, used the words "is not disposed in the circle" when stating his reasons for the allowance. The court does not agree with the defendants that these words require the straight baffle portion to extend into the blade tip path. This interpretation does not make sense with Exmark's preferred embodiment. Regardless, the statements of an examiner in reasons for allowance are not binding on subsequent disputes over claim interpretation. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005).

### 8.   Claim Term 8 - Claims, 1, 2, 6 and 7

The term or phrase in question is "second flow control baffle." Exmark proposes: "a structure within the walls of the mower deck that controls the flow of air and grass clippings." The defendants propose: "a flow control baffle that is separate and distinct from the first flow control baffle."

The court will adopt the construction proposed by Exmark with one exception. The construction will now read: "a second rear structure within the walls of the mower deck that controls the flow of air and grass clippings." The proposed constructions of the defendants

are denied. There is no support for the claim of the defendants that the rear flow control baffle must be "separate and distinct from" the front flow control baffle. Two separate components can in fact be attached together. The jury can understand these terms.

### 9. Claim 9 - Claims, 1, 2, 6 and 7

The phrase in question is "semi-circular baffle portions." Exmark proposes that the court construe the phrase to mean "baffle portions that are shaped like a portion or part of a circle. There is no requirement that a semi-circular baffle portion be half of a circle." Briggs proposes that the court construe the phrase as a "curved baffle portions that form half a circle." Schiller offers no construction.

The court agrees with the construction offered by Exmark in part. The court will construe the phrase "semi-circular baffle portions" to mean "baffle portions that are shaped like a portion or part of a circle." The court will not adopt the second half of Exmark's construction or the construction suggested by Briggs. It is clear from Figure 4, Filing No. 116 at 41, page ID # 1771, that the sections in questions are a portion of a circle, but are not half of a circle. To construe the phrase any other way would also be contrary to the preferred embodiment. Exmark's construction is also consistent with the prosecution history.

### 10. Claim Term 10 - Claims 1, 2, 6, and 7

The phrase in question is "said front and rear flow control baffles defining a plurality of open throat portions which are positioned between adjacent cutting blades." Exmark contends that no construction is required. Defendants ask this court for the following

13

proposed construction: "a plurality of open throat portions, as defined by the front and rear baffles, are disposed between each pair of adjacent cutting blades."

The court finds no construction is required. There is no showing that the language requires two open throat portions as described by the defendants. The court finds that the construction suggested by Exmark is the preferred embodiment, and defendants' construction would exclude the preferred embodiment.

### 11.  Claim Term 11 - Claims 6 and 7

The phrase in dispute is "a rear elongated and substantially straight baffle portion, having front and rear ends, extending from said rear end of said rear arcuate baffle portion." Exmark contends that there is no construction required, as "this language does not require that the second elongated and substantially straight baffle portion contact or abut the second arcuate baffle portion." The defendants offer the following proposed construction: "a second baffle portion, having first and second ends, extending from a point in contact with or abutting said second end of said second arcuate baffle portion, and being at least as long as said second arcuate baffle portion."

The court agrees with Exmark that no construction is needed, and this construction is virtually the same issue as Term 6. The court agrees with Exmark that this language does not require that the first arcuate baffle portion contact or abut the second side wall. The jury will be able to determine what "extends" means in this context.

### 12.  Claim Term 12 - Claims 6 and 7

The phrase in dispute states: "said rear elongated and substantially straight baffle portion being disposed with respect to the said circle defined by the blade tip path of said

14

third cutting blade in a chord-like fashion." Exmark proposes "the second elongated and substantially straight baffle portion is oriented such that the line corresponding to that baffle portion intersects the circle defined by the blade tip path of the gird cutting blade at two points." The defendants propose the following construction: "a second elongated and substantially straight baffle portion intersects and extends into a circle defined by a blade tip path of a third cutting blade across at least one point."

The court agrees with Exmark's proposed construction and will adopt the same and notes that these issues are virtually the same as Term 7. The court agrees with Exmark that "the [phrase] language does not require that the second elongated and substantially straight baffle portion physically extend into or underneath the circle defined by the blade tip path of the third cutting blade."

THEREFORE, IT IS ORDERED that the court adopts the following claim constructions:

1. <u>All Claims</u>: Each time the word "first" is used in the term/phrase in Claim Term numbers 1 through 12, the court is going to construe that term as "front." Likewise, each time the word "second" is used, the court is going to change the construction of the word "second" to the word "rear."

2. <u>Claim 2</u>: The court finds that the phrase "said front flow control baffle extending substantially continuously from the front location adjacent the interior surface of said second side of wall to a second location adjacent the interior surface of said front side wall" needs no construction.

3. <u>Claim 3</u>: The court finds the phrase "and adjacent the forward end of said discharge opening" needs no construction.

    4. <u>Claim 4</u>: The court finds the phrase "a front arcuate baffle portion that 'extends from the interior surface of said second side wall'" needs no construction.

    5. <u>Claim 5</u>: The court finds the phrase "substantially straight" needs no construction.

    6. <u>Claim 6</u>: The court finds the phrase "a front elongated and substantially straight baffle portion, having first and second ends, extending from said second end of said front arcuate baffle portion" needs no construction.

    7. <u>Claim 7</u>: The court finds the phrase "said front elongated and substantially straight baffle portion being angularly disposed with respect to the said circle defined by the blade tip path of said second cutting blade in a chord-like fashion" shall be construed to mean that "the front elongated and substantially straight baffle portion is oriented such that the line corresponding to that baffle portion intersects the circle defined by the blade tip path of the second cutting blade at two points."

    8. <u>Count 8</u>: The court finds the phrase "second flow control baffle" shall be construed to mean "a second rear structure within the walls of the mower deck that controls the flow of air and grass clippings."

    9. <u>Count 9</u>: The court finds the phrase "semi-circular baffle portions" shall be construed to mean "baffle portions that are shaped like a portion or part of a circle."

    10. <u>Count 10</u>: The court finds the phrase "said front and rear flow control baffles defining a plurality of open throat portions which are positioned between adjacent cutting blades" needs no construction.

11. <u>Count 11</u>:  The court finds the phrase "a rear elongated and substantially straight baffle portion, having front and rear ends, extending from said rear end of said rear arcuate baffle portion" needs no construction.

12. <u>Count12</u>:  The court finds the phrase "said rear elongated and substantially straight baffle portion being disposed with respect to the said circle defined by the blade tip path of said third cutting blade in a chord-like fashion" is construed to mean "the rear elongated and substantially straight baffle portion is oriented such that the line corresponding to that baffle portion intersects the circle defined by the blade tip path of the gird cutting blade at two points."

DATED this 29th day of November, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.