IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING COMPANY INC., <br><br> Plaintiff, <br><br> vs. <br><br> BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC and SCHILLER GROUNDS CARE, INC., <br><br> Defendants. | 8:10CV187 <br><br> ORDER |

This matter is before the court on the defendant's, Briggs & Stratton Power Products Group, LLC (Briggs), Motion to Compel Production of Exmark's Patent Infringement Potentials List and Related Documents (Filing No. 255). Briggs filed a brief (Filing No. 256) and index of evidence (Filing No. 257) in support of the motion. The plaintiff, Exmark Manufacturing Company Inc. (Exmark), filed a brief (Filing No. 265) in response. Briggs filed a brief (Filing No. 269) and index of evidence (Filing No. 270) in reply.[1]

## BACKGROUND

This action pertains to the alleged infringement of United States Patent No. 5,987,863 (the '863 patent), which covers a lawn mower having flow control baffles. **See** Filing No. 14 - Amended Complaint p. 1-4. Exmark alleges the defendants are knowingly and actively engaging in the manufacture and sale of similar mowers that are covered by the '863 patent. *Id.* In Briggs' Answer, Briggs asserts a defense of laches. **See** Filing No. 29 - Answer ¶ 23. Briggs contends it has been making and selling mowers since 1999 that, under Exmark's theories of infringement, have substantially the same baffles, yet Exmark unreasonably waited until 2010 to file suit. **See** Filing No. 256 - Brief p. 4. In this motion, Briggs seeks to compel disclosure of a "Patent Infringements Potentials list" (the list) and related documents which, according to Briggs, evidences Exmark's knowledge of Briggs' accused mowers for purposes of establishing laches. **See** Filing No. 255 - Motion; Filing No. 256 - Brief.

---

[1] The defendant, Schiller Grounds Care, Inc., did not participate in this motion.

Exmark gave its former Chief Engineer and current Engineering Services Manager, Rodney L. Benson (Benson), the responsibility of working with inside counsel on patent matters, including the defense of Exmark's patents. **See** Filing No. 191-1 - Benson Decl. ¶ 2; Filing No. 191-3 Ex. 1 - Benson Depo. p. 11:7 - 13:12. As part of this responsibility, Benson created and maintained a list of potential patent infringers in order to obtain legal advice regarding patent infringement. **See** Filing No. 191-1 - Benson Decl. ¶ 3; Filing No. 257-2 Ex. 1 - Interrogatories p. 35-36.[2] Benson created the list in approximately 2001. **See** Filing No. 257-2 Ex. 1 - Interrogatories p. 31-32.

During this litigation, Briggs has sought to discover Exmark's bases for opposing Briggs' laches defense. **See** Filing No. 256 - Brief p. 6; Filing No. 257-2 Ex. 1 - Interrogatories. Specifically, Briggs requested Exmark provide "a detailed description of the factual and legal basis for Exmark's denial of Briggs' assertions underlying its defense of laches" including a description of "when Exmark first knew or reasonably should have known of any of Briggs' conduct or devices that would allegedly fall within the scope of any Asserted Claim[.]" **See** Filing No. 257-2 Ex. 1 - Interrogatories p. 21-26. Exmark answered, in part,

> [O]ne of its employees reported seeing a Ferris mower having flow control baffling in the underside of the deck at the GIE show in November of 2001 that might potentially infringe the '863 patent, but Exmark has no knowledge or record of what mower that was, what the structure of the baffles was, whether it was within the scope of the '863 patent claims, and in what time period and quantities Ferris sold that mower or other mowers having such a baffle structure.

*Id.* at 33-34. Exmark states it has disclosed all factual information relating to its knowledge of Briggs' infringement. **See** Filing No. 265 - Reply p. 7, 19-20. Briggs, under the theory the list Benson created would contain a definitive answer, requested detailed information about the list. *Id.* at 31-32. Exmark asserted the list was privileged and answered, "Exmark uses this list to get legal advice on potential infringement of Exmark's intellectual property." *Id.* Exmark stated the list was saved in a restricted location, the R: drive, and only three people had access to the list, although on

---

[2] The court's citation to page numbers, for briefs and exhibits, coincides with the CM/ECF page numbers.

occasion, Benson shared the list with select Exmark employees. *Id.*; Filing No. 191-1 - Benson Decl. ¶ 4. Exmark explained Benson disclosed the list because,

> In order to perform his job and effectively assist counsel and obtain legal advice, Mr. Benson sometimes shared the list with select persons in order to facilitate effective reporting of facts to Mr. Benson. In particular, engineers and management attending the GIE show had a need to know the information already on the list in order to effectively report facts about patent issues from the show.

**See** Filing No. 257-2 Ex. 1 - Interrogatories p. 35-36. In order to share the list with select Exmark employees, Benson saved a copy of the list on the S: drive. *Id.* The copy was set for automatic deletion after sixty days. *Id.* Approximately eleven Exmark employees had access to the list. **See** Filing No. 257-3 Ex. 2 - Interrogatories p. 8-9; **see also** Filing No. 257-5 Ex. 4 - Benson Depo. Periodically, Exmark engineers and management emailed Benson about the list and potentially infringing products. **See** Filing No. 257-4 Ex. 3; Filing No. 257-9 Ex. 8; Filing No. 257-10 Ex. 9 - Emails. Exmark produced some of these emails, but withheld other emails under the basis of attorney-client privilege. *Id.*; Filing No. 265 - Response.

During Benson's deposition, Exmark's counsel asserted the attorney-client privilege and instructed Benson not to answer questions regarding the list's contents, including whether Briggs' subsidiary Ferris was listed as a potential infringer. **See** Filing No. 257-5 Ex. 4 - Benson Depo.; Filing No. 270-3 Ex. 2 - Benson Depo. Benson also did not know or did not recall answers to numerous questions related to Briggs' laches defense. *Id.*

On December 23, 2014, Briggs filed the instant motion seeking to compel disclosure of the list and related documents under two theories: 1) the list and related documents are not privileged and 2) if a privilege exists, Exmark waived its privilege. **See** Filing No. 255 - Motion;[3] Filing No. 256 - Brief. The documents in question, as identified in Exmark's November 8, 2011, Privilege Log, are: 163, 164, 172, 173, 175, 205, and 206. **See** Filing No. 256 - Brief p. 11.[4] Documents 163, 172, 173, and 175 are

---

[3] Briggs represents the parties attempted to reach an agreement on this issue before Briggs filed its motion. **See** Filing No. 255 - Motion; Filing No. 256 - Brief.
[4] While Briggs seeks to compel disclosure of the list, the identified documents are emails and notes, according to the documents' descriptions. The list, itself, does not appear to be separately numbered in Exmark's Privilege Log. Although Exmark explains several of the documents are Benson's notes and

described as correspondence regarding potential patent infringement.  **See** Filing No. 257-11 Ex. 10 - Privilege Log.  Documents 164, 205, and 206 are identified as Benson's confidential notes.[5]  **Id.**

## ANALYSIS

**A.    Privilege**

In the absence of a relevant federal rule, statute, or constitutional provision, federal common law governs questions of privilege in federal-question jurisdiction proceedings.  **See** Fed. R. Evid. 501; **Hollins v. Powell**, 773 F.2d 191, 196 (8th Cir. 1985).  "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.'" **United States v. Yielding**, 657 F.3d 688, 707 (8th Cir. 2011) (**quoting Upjohn Co. v. United States**, 449 U.S. 383, 389 (1981)).  The Supreme Court in **Upjohn** determined the communications of an employee of a corporation with the corporation's counsel made in order to secure legal advice concerning matters within the scope of the employee's corporate duties, consistent with the underlying purposes of the attorney-client privilege, are protected from disclosure.  **See Upjohn**, 449 U.S. at 394-95.

The attorney-client privilege is applicable to an employee's communication if it meets the following five elements:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

**In re Bieter Co.**, 16 F.3d 929, 936 (8th Cir. 1994) (**citing Diversified Indus., Inc. v. Meredith**, 572 F.2d 596, 609 (8th Cir. 1978) (en banc)).  "[W]hen a matter is committed to a professional legal advisor, it is 'prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary.'"  **In re**

---

"[t]hese notes are the [list], or reflect its contents[,]" the court's review of Benson's notes reveals the notes are summaries reflecting the contents of the list and are not the actual list itself.

[5]   Exmark produced redacted versions of documents 164 and 205.  **See** Filing No. 257-12 Ex. 11; Filing No. 270-2 Ex. 1.

4

***Bieter Co.***, 16 F.3d at 938 (**quoting** *Diversified*, 572 F.2d at 610). The party asserting a privilege to prevent disclosure of information bears the burden of establishing the privilege. **See** *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003); *Diversified*, 572 F.2d at 609.

Briggs contests Exmark's assertion of the first and fifth requirements of the attorney-client privilege; therefore the court's analysis will focus on those two requirements. **See** Filing No. 256 - Brief p. 11-14; Filing No. 269 - Reply p. 7-13.

### 1. Legal Advice

Briggs contends the list and related documents are notes and emails appearing to contain factual information being exchanged between non-attorney Exmark employees. **See** Filing No. 256 - Brief p. 11-12. Briggs argues Exmark cannot establish the list and related documents are privileged documents or communications "made for the purpose of securing legal advice." *Id.*

Exmark argues the documents in dispute were clearly communicated to counsel for the purpose of obtaining legal advice. **See** Filing No. 265 - Response p. 10, 12-14. Exmark argues Benson repeatedly testified he prepared and maintained the list for the purpose of seeking legal advice; therefore, the list meets the first element of the attorney-client privilege. *Id.* (**citing, e.g.,** Filing No. 191-5 Ex. 3 - Benson Depo. p. 174:2-4; 186:3-7). Exmark argues two of the documents, 163 and 173, which are emails, explicitly list Exmark's attorney, Donald Trevarthen (Trevarthen), as the recipient, which would qualify the emails as privileged. *Id.* at 13. Exmark contends the remaining entries are Benson's notes for communicating with Exmark's attorney, and the notes are the list, or reflect the list's contents. *Id.* Exmark asserts it is well-established that notes for communicating with counsel are privileged. *Id.* at 14.

In reply, Briggs contends Exmark's designations of the seven documents are erroneous. **See** Filing No. 269 - Reply p. 7. Briggs argues documents 163 and 173 are email chains conveying factual information sent between non-attorney Exmark employees. *Id.* Briggs argues the fact that these emails were potentially forwarded to counsel does not invoke the attorney-client privilege as to the prior emails. *Id.* at 7-8. Briggs also argues documents 172 and 175 are merely emails between non-attorney Exmark employees and the mere fact the emails reflect factual information

communicated to counsel does not render the emails privileged. *Id.* at 9. Lastly, Briggs asserts documents 164, 205, and 206, as shown in the unredacted portions of 164 and 205, are Benson's summaries of comments, observations, and notes compiled by engineers attending shows. *Id.* at 9-10. Briggs argues the summaries are for a business purpose, and are not "communication[s] made for the purpose of securing legal advice." *Id.*

### a.    Emails and Notes

The court finds the August 29, 2006, and April 17, 2007, emails from Benson to Trevarthen, which are listed under documents 163 and 173, respectively, are protected under the attorney-client privilege. In applying the first requirement that the communication be made for the purpose of seeking legal advice, in *Diversified*, the Eighth Circuit noted that when a matter is committed to a legal advisor, it is "prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary." *Diversified*, 572 F.2d at 609-10. Here, there is no evidence to the contrary. Additionally, evidence shows the communications were made within the scope of Benson's job responsibilities and at a superior's direction to secure legal advice. **See** Filing No. 191-1 - Benson Decl. ¶¶ 2-3; Filing No. 191-3 Ex. 1 - Benson Depo. p. 11:7 - 13:12.

The court finds the August 25, 2006, email from Dave Converse to Benson and the April 13, 2007, email from Todd Moore to Benson, which are listed under documents 163 and 173, respectively, are not protected by the attorney-client privilege. Here, there is no presumption the communications were made for the purpose of seeking legal advice. While the subsequent emails from Benson to Trevarthen are privileged, as explained above, Exmark has not shown the prior emails are similarly privileged. First, Exmark has not sufficiently explained why the emails exchanged between non-attorneys qualify as "communication . . . made for the purpose of securing legal advice." Second, and significantly, Exmark produced similar emails exchanged between non-attorney employees, which discuss the list and its contents. By producing similar emails, Exmark implicitly acknowledged the August 25, 2006, and April 13, 2007, emails are not privileged. There is no basis to differentiate the already disclosed emails from these two emails. The fact that the emails may mention Briggs or its subsidiary is not

sufficient reason to invoke the attorney-client privilege. Similarly, documents 172 and 175, also emails between non-attorney Exmark employees, are not privileged because Exmark has not shown the "communication[s were] made for the purpose of securing legal advice."

Lastly, the court finds documents 164, 205, and 206, which are Benson's summaries sent to select Exmark employees, are not protected under the attorney-client privilege. Exmark has not shown the "communication[s were] made for the purpose of securing legal advice." The redacted portions of documents 164 and 205 appear to be summaries of fact, and not communications for legal advice. There is no evidence the redacted portions were communicated with counsel. Additionally, the court cannot reconcile Exmark's production of the redacted versions of 164 and 205 with the assertion the summaries are privileged. **See** Filing No. 257-12 Ex. 11 - Redacted Version of 164; Filing No. 270-2 Ex. 1 - Redacted Version of 205. Production of redacted portions is inconsistent with attaching the privilege to the summaries. The attorney-client privilege will not protect portions of those summaries solely because the redacted portions potentially name Briggs.

Importantly, the court is compelling production only of the emails and notes commenting or referencing the list, not the actual list itself. The seven documents Briggs seeks are identified as emails or notes. **See** Filing No. 257-11 Ex. 10 - Privilege Log. Exmark states documents 164, 172, 175, 205, and 206 "are the [list], or reflect its contents[,]" but if the redacted versions of documents 164 and 205 and the documents' descriptions in the Privilege Log are indicative of the documents' contents, the documents merely reflect the list's contents in the form of summaries and emails, and are not the actual list.

### b. The List

The court finds the list, not the notes or emails summarizing or commenting on list, is a document "made for the purpose of securing legal advice." **See** Filing No. 191-1 - Benson Decl. ¶¶ 2-3; Filing No. 191-3 Ex. 1 - Benson Depo. p. 11:7 - 13:12. Benson's testimony indicates he created the list within the scope of Benson's job responsibilities, at a superior's direction to secure legal advice, and communicated the list to inside counsel. **See** *id.*; **see also** *United States v. Defonte*, 441 F.3d 92, 95

(2nd Cir. 2006) ("[A]n outline of what a client wishes to discuss with counsel-and which is subsequently discussed with one's counsel-would seem to fit squarely within our understanding of the scope of the privilege."). The court will address below whether the list was disseminated beyond those who needed to know the list's contents.

### 2. Dissemination

Briggs contends Exmark is unable to demonstrate the individuals who received the list needed to know its contents. **See** Filing No. 256 - Brief p. 12. Briggs asserts at least eleven non-attorney employees had access to the list on the S: drive. *Id.* (**citing** Filing No. 257-5 Ex. 4 - Benson Depo. (explaining placement of the list on the S: drive)). Briggs argues Benson did not instruct individuals with access to the list that the list was confidential or otherwise restricted. *Id.* at 12-13. Briggs argues if the list constitutes communication to counsel, then the list would only need to be accessed by Benson and counsel, but not viewed, circulated, and revised by at least eleven non-attorney Exmark employees. *Id.* at 13.

Exmark argues the list was not widely disclosed to third parties, but instead only disclosed to limited internal employees. **See** Filing No. 265 - Reply p. 15-19. Exmark argues Benson expressed an intent to keep the list confidential by keeping the list in a separate, secure location under the R: drive. *Id.* at 15. Exmark contends Benson only disclosed the list to Exmark employees who needed to see the list and this court should not second-guess Benson's business judgment. *Id.* Exmark asserts Benson had to disclose the list to certain engineers because the engineers were attending industry shows and Benson relied on engineers at the shows to gather factual information relevant to the list. *Id.* at 16. Exmark asserts the engineers could not report to Benson without knowing the contents of the list. *Id.* at 16-17. Lastly, Exmark argues although Benson saved the list to the S: drive, the list was promptly auto-deleted after sixty days and no one who did not need the list was made aware the list was temporarily on the S: drive. *Id.* at 18 (**citing** Filing No. 191-5 Ex. 3 - Benson Depo. p. 191:15-16).

Briggs reiterates the list was shared with other employees and Benson did not label the list restricted or confidential. **See** Filing No. 269 - Reply p. 11-13. Briggs also argues if the list, as described by Exmark, is simply notes for communicating with counsel, then the engineers would not need the know the contents of the list. *Id.*

8

### a. Emails and Notes

No evidence exists the August 29, 2006, and April 17, 2007, emails, the two emails the court finds satisfy the first four requirements of the attorney-client privilege, were disseminated beyond those who needed to know the contents. Therefore, these emails are protected under the attorney-client privilege.

### b. The List

All testimony and affidavits indicate the list was treated as confidential. The list was on the R: drive, Benson testified the list was confidential, and he testified he intended to keep it confidential. **See, e.g.**, Filing No. 191-1 - Benson Decl. ¶ 4; Filing No. 257-2 Ex. 1 - Interrogatories p. 31-32; Filing No. 191-5 Ex. 3 - Benson Depo. p. 191:3-7; **see also** *In re Bieter Co.*, 16 F.3d at 939 ("This requirement exists as an indication of the **intent** of the client and the attorney to keep the communication confidential.") (emphasis added). Although the list was saved to the S: drive, the location was only temporary, and evidence shows only those engineers who needed to access the list were given the link to access the list on the S: drive. **See, e.g.**, Filing No. 191-5 Ex. 3 - Benson Depo. p. 191:3-16. Thus, while the list was disseminated to eleven Exmark employees, the list was shared with these employees because they had the information necessary for Benson to update and compile the list, which was then provided to counsel. Exmark sufficiently justified its objectively reasonable business decision to disclose the list to select employees in order for Benson to compile an updated list for counsel. There is no evidence the list was shared with third parties or otherwise circulated outside of limited Exmark employees. Accordingly, the court finds the fifth requirement is satisfied and the attorney-client privilege applies to the list.

### B. Waiver

Assuming the list is privileged, Briggs asserts Exmark waived any privilege by selectively disclosing communications describing the list's contents and allowing limited testimony about the list. **See** Filing No. 256 - Brief p. 15-17. Exmark contends Briggs' waiver argument fails because the documents and testimony provided were not privileged, therefore, no waiver could occur. **See** Filing No. 265 - Response p. 20.

Exmark argues the factual emails from non-attorneys to Benson were not privileged because the emails were not sent to an attorney and did not seek legal advice. *Id.* at 21.

Because the court finds the documents Exmark disclosed, and those the court orders Exmark to disclose, are not privileged, Exmark has not waived its attorney-client privilege to the list. **See** *Blankenship v. USA Truck, Inc.*, 515 F. App'x 622, 623 (8th Cir. 2013) (stating disclosure of non-privileged communications does not waive the attorney-client privilege); *Kovacs v. Hershey Co.*, No. 04-CV-01881-WYD, 2006 WL 3054167, at *3 (D. Colo. Oct. 25, 2006) ("Disclosure of non-privileged information obviously does not waive the attorney-client privilege.") (citation omitted).

**C.    Underlying Fact Disclosure and Fed. R. Civ. P. 30(b)(6) Deponent**

Briggs also contends, in accordance with *Upjohn*, Exmark may not refuse to disclose underlying facts in privileged communications. **See** Filing No. 256 - Brief p. 13-14. Briggs asserts it should be permitted discovery of those facts and a continuation of certain depositions to discuss those facts. *Id.* Exmark argues it has reviewed all privileged documents and disclosed all responsive facts to Briggs. **See** Filing No. 265 - Response p. 19-20. Exmark argues it has not withheld any factual information. *Id.*

In reply, Briggs argues Exmark's assurances ring hollow because Exmark's Rule 30(b)(6) witness was unable to recall when Exmark knew about Briggs' baffles. **See** Filing No. 269 - Reply p. 13-17. Briggs asserts in its Rule 30(b)(6) deposition notice, Briggs requested Exmark to designate a witness knowledgeable of all facts and circumstances related to Briggs' laches defense. *Id.* (**citing** Filing No. 270-4 Ex. 3 - 30(b)(6) Deposition Notice ¶¶ 17-21). Briggs argues Exmark failed to designate and prepare a person knowledgeable in the matters identified in Briggs' notice. *Id.* Exmark designated Benson, yet Briggs argues he was unable to recall the majority of information relevant to Briggs' laches defense. *Id.* (**citing** Filing No. 270-5 Ex. 4 - Exmark's Response p. 16-19; Filing No. 270-3 Ex. 2 - Benson Depo. p. 28:7-32:12 (Q: "When was the first time that you heard someone at Exmark express the view that they believed Ferris infringed the '863 patent?" A: "I don't recall."), 58:8-59:10 (Q: "Was Exmark aware in 2004 when Briggs acquired Simplicity that the Ferris products were infringing the '863 patent?" A: "I don't know."), 76:9-16 (Q: "And you don't recall any

concerns raised by anyone at Exmark as to whether Ferris infringes the '863 patent?" A: "I don't recall.")).[6]  Briggs contends Exmark's failure to prepare its Rule 30(b)(6) designee on the factual contents of the list, for example whether Briggs is on the list, is a violation of Rule 30(b)(6) that warrants a continued deposition.  *Id.*

Federal Rule of Civil Procedure 30(b)(6) provides, in pertinent part, "[t]he persons designated must testify about information **known or reasonably available to the organization**."  Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents."  *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012).  "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved."  *QBE Ins.*, 277 F.R.D. at 689.  "If the rule is to promote effective discovery regarding corporations the spokesperson must be informed."  *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278 (D. Neb. 1989).  "[T]he corporation] must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters."  *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995) (citations omitted).

After reviewing the provided portions of Benson's deposition, the court finds Exmark failed to fully satisfy its obligation to designate a knowledgeable witness to testify about information relevant to Briggs' laches defense.  Benson's testimony demonstrated a lack of knowledge and preparation for the deposition.  **See, e.g.**, Filing No. 270-3 Ex. 2 - Benson Depo. p. 28:7-32:12 (Q: "When was the first time that you heard someone at Exmark express the view that they believed Ferris infringed the '863 patent?" A: "I don't recall.").  Benson's responses indicated that he did not properly prepare for the deposition by reviewing the list and other related documents.  Additionally, a Rule 30(b)(6) witness "must provide responsive underlying factual information even though such information was transmitted through a firm's corporate lawyers."  **See** *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534,

---

[6] Briggs cites additional deposition responses by Benson wherein he responded "I don't know" or "I don't recall," but, in the interest of brevity and length, the court will not cite to all instances, but instead reference CM/ECF pages fifteen and sixteen in Briggs' brief.  **See** Filing No. 269 - Reply.

541 (D. Nev. 2008) (citation omitted); **see also** *Upjohn*, 449 U.S. at 395-96 (stating facts communicated to counsel are not protected by the attorney-client privilege). Therefore, the court finds Briggs shall have the opportunity to depose Benson or a knowledgeable and prepared corporate representative to offer testimony concerning Briggs' laches defense. **See** *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) ("To satisfy Rule 30(b)(6), the corporate deponent has an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf.") (citation omitted).

D.   **Payment of Expenses**

Federal Rule of Civil Procedure 37(a)(5)(C) provides "the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." The court finds, based on sufficient information in the parties' briefs, Exmark failed to designate a prepared and knowledgeable corporate representative for a properly noticed Rule 30(b)(6) deposition and therefore will bear the responsibility for the additional deposition. Exmark shall pay fees of one attorney's presence at the deposition and the costs associated with the additional deposition.

**IT IS ORDERED**:

Briggs' Motion to Compel Production of Exmark's Patent Infringement Potentials List and Related Documents (Filing No. 255) is granted in part and denied in part as set forth in this Order.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 2nd day of February, 2015.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge