IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **EXMARK MANUFACTURING COMPANY INC.,** | |
| Plaintiff, | **8:10CV187** |
| vs. | **ORDER** |
| **BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC and SCHILLER GROUNDS CARE, INC.,** | |
| Defendants. | |

This matter is before the court on the defendant's, Schiller Grounds Care, Inc. (Schiller), Motion to Compel Reopening of Deposition of Plaintiff's Damages Expert Melissa Bennis (Filing No. 281). Schiller filed a brief (Filing No. 282), declaration (Filing No. 283), and index of evidence (Filing Nos. 284 and 285) in support of the motion. The plaintiff, Exmark Manufacturing Company Inc. (Exmark), filed a brief (Filing No. 338) and index of evidence (Filing Nos. 337 and 339) in response. Schiller filed a brief (Filing No. 341) in reply.[1]

## BACKGROUND

This action pertains to the alleged infringement of United States Patent No. 5,987,863 (the '863 patent), which covers a lawn mower having flow control baffles. **See** Filing No. 14 - Amended Complaint p. 1-4. Exmark alleges the defendants are knowingly and actively engaging in the manufacture and sale of similar mowers that are covered by the '863 patent. *Id.* Schiller generally denies Exmark's allegations and asserts several counterclaims against Exmark. **See** Filing No. 57 - Amended Answer and Counterclaims.

In March of 2012, Melissa Bennis (Bennis), Exmark's damages expert, issued an expert report. **See** Filing No. 337-1 - Bennis' 2012 Rpt. Bennis opined patent infringement damages owed by both defendants should be based on a reasonable

---

[1] The defendant, Briggs & Stratton Power Products Group, LLC (Briggs), did not participate in this motion.

royalty determined by application of the fifteen *Georgia-Pacific*[2] factors and the reasonable royalty should be five percent of the revenue derived by both defendants from the sale of the infringing motor. *Id.* After a long stay and the resumption of this case, Bennis issued a revised expert's report on December 16, 2014. **See** Filing No. 337-2 - Bennis' 2014 Rpt.

On January 23, 2015, Schiller served a notice of deposition setting February 9, 2015,[3] as the date for Bennis' deposition. **See** Filing No. 339-2 Ex. 4 - Notice. In the notice, Schiller noted it "will coordinate the deposition, to the extent possible, with co-defendant Briggs. . . ." **See** Filing No. 339-2 Ex. 4 - Notice. Briggs subsequently issued a notice of deposition for Bennis for the same day with the understanding Schiller and Briggs would attempt to coordinate questions to avoid duplicative questions. **See** Filing No. 282 - Brief. Schiller's counsel agreed to permit Briggs' counsel to start the deposition in light of the quantum of damages Exmark seeks from Briggs. *Id.* at 5-7.

According to Schiller, Bennis repeatedly failed to directly respond to questions from Briggs' counsel, which needlessly extended her deposition. *Id.* at 7-9. Schiller represents its counsel attempted to resolve these delays during a lunch break on the day of the deposition, but was ultimately unable to reach an agreement. *Id.* at 9-10. Counsel discussed the feasibility of coordinating their questions, but noted the difference in the parties and the impossibility of coordination on all questions. *Id.* Thereafter, the deposition continued and Schiller alleges Bennis again avoided directly responding to Briggs' counsel's questions. *Id.* at 11. At 3:34 p.m., after approximately five-and-a-half hours of questioning, Briggs' counsel passed the witness to Schiller's counsel. *Id.* Schiller alleges Bennis' non-responsiveness continued and after three-and-a-half hours of questioning, Bennis and Exmark stopped the deposition. *Id.* at 12-13.

Schiller contends it is entitled to reopen Bennis' deposition for an additional three hours because it has not had ample opportunity to obtain sufficient information in discovery and the benefit of Bennis' testimony outweighs any burden or additional

---

[2] ***Georgia-Pac. Corp. v. U.S. Plywood Corp.***, 318 F. Supp. 1116, 1136 (S.D.N.Y. 1970) **modified sub nom. *Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.***, 446 F.2d 295 (2d Cir. 1971).
[3] February 9, 2015, was the last day to conduct depositions after Schiller obtained an extension of the deposition deadline. **See** Filing No. 266 - Motion; Filing No. 267 - Order.

expense. *Id.* at 14-16. Schiller argues the discovery sought is not cumulative and cannot be obtained otherwise. *Id.*

In response, Exmark contends Schiller has not shown good cause to reopen Bennis' deposition. **See** Filing No. 338 - Response. Generally, Exmark contends Bennis' deposition was needlessly extended because Schiller's counsel engaged in rancorous exchanges with Bennis, repeated questions, focused on impeachment rather than clarification of Bennis' opinion, and failed to meaningfully coordinate its questioning with Briggs' counsel. *Id.* Exmark argues Schiller has not identified a single question Schiller was unable to ask Bennis or Bennis failed to answer, which could justify reopening of the deposition. *Id.*

In reply, Schiller identified topic areas it would address in the reopened deposition. **See** Filing No. 341 - Reply p. 3-4.

## ANALYSIS

Pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(ii), if a deponent has already been deposed in the case, a party must obtain leave of court to take a deposition if the parties have not stipulated to the deposition. "Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1). Rule 26 provides,

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the

3

> action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). "The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."[4] Fed. R. Civ. P. 30 advisory committee's note, 2000 Amend., Sub. (d). In determining whether a witness should be required to submit to questioning beyond seven hours in length, the court should make a fact intensive inquiry. **See *Miller v. Waseca Med. Ctr.***, 205 F.R.D. 537, 540 (D. Minn. 2002) (referring to Rule 30's advisory committee's notes listing factors for consideration[5]). "Preoccupation with timing is to be avoided." Fed. R. Civ. P. 30 advisory committee's note, 2000 Amend., Sub. (d). Trial courts have "broad discretion to decide discovery motions." ***Pavlik v. Cargill, Inc.***, 9 F.3d 710, 714 (8th Cir. 1993).

The court finds Schiller has not established good cause to reopen Bennis' deposition, which already lasted eleven hours, nine of which were on the record. Bennis' answers to Schiller's questions were responsive and her conduct did not present any impediments to her deposition. Instead, it appears Schiller's counsel's "nearly three dozen" motions to strike and interruptions of Bennis' testimony were factors in lengthening the deposition. **See** Filing No. 282 - Brief p. 12. The following excerpt is one example of the foregoing:

> Q (Schiller's counsel). Okay. All right. How many license agreements have you negotiated in the course of your career?
> A (Bennis). Well, I think --
> Q. Not hypothetical ones, real ones, actual ones.
> A. Throughout the course of my work within this context, I think it's fair to say that I've reviewed and considered hundreds and hundreds of licenses and re- -- and certainly been a part of the analysis of what the result of a hypothetical negotiation would be.
> Q. Okay. Now, I'm going to move to strike your testimony as nonresponsive. And I'm going to ask you to listen very carefully to my questions, just so we can get you out of here.

---

[4] Both parties have cited a good cause standard for determination of this issue. **See** Filing No. 282 - Brief p. 16; Filing No. 338 - Response p. 10.

[5] As applicable in this case, such factors include reviewing numerous or lengthy documents and questioning by multiple parties in multi-party cases.

4

> I'm trying to get your lawyer on an airplane. All right? How many license agreements have you negotiated?
> A. And can you give me some context for your question?
> Q. No.
> A. No context?
> Q. No. Just have you ever negotiated a licensing agreement --
> A. Well --
> Q. -- where you are --
> A. -- there are --
> Q. -- on one side and somebody else is on the other?
> A. So is the question directed to me as a party, me on behalf of somebody? I can think of several directions where your question could be directed, so I was simply asking for a little clarification.
> Q. Did you negotiate all of those agreements?
> A. All of what agreements?
> Q. The ones that you just made reference to that required you to have context.
> A. I mean, I -- I'm trying to follow your question, and simply -
> Q. It's a simple one.
> A. -- asking for --
> Q. Okay?
> A. -- a little context.
> Q. We all know what a license agreement is. Right?
> A. I have reviewed hundreds of --
> Q. Gotcha.
> A. -- license agreements.
> Q. How many have you negotiated where you were on one side negotiating and somebody was on another side negotiating?
> A. I can't think of any examples where I was a party --
> Q. Okay.
> A. -- to a license agreement.

Filing No. 337-3 Ex. 3 - Bennis Depo. p. 286-288; **see e.g.**, Filing No. 337-3 Ex. 3 - Bennis Depo. p. 289, 509-510. Another example of an inefficient use of time was the colloquy about Bennis' lawn mowing experience twenty years ago. *Id.* at 326-329. Schiller's counsel could have better used his time to address pertinent questions regarding Bennis' opinions. Additionally, while the court understands the defendants have different cases and counsel needed to discuss the fifteen **Georgia-Pacific** factors, Schiller chose to have Briggs' counsel, who noticed the deposition second, start the deposition without any clear plan on the length of questioning or division of time.

5

Exmark and Bennis should not bear the burden of Schiller's counsel's tactics and choices during the deposition. Exmark already accommodated Schiller by extending the deposition deadline and allowing the deposition to proceed until 8:00 p.m. Accordingly,

**IT IS ORDERED**:

Schiller's Motion to Compel Reopening of Deposition of Plaintiff's Damages Expert Melissa Bennis (Filing No. 281) is denied.

### ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 5th day of March, 2015.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge