IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING COMPANY INC., | |
| Plaintiff, | **8:10CV187** |
| vs. | **MEMORANDUM AND ORDER** |
| BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC:  SCHILLER GROUNDS CARE, INC., | |
| Defendants. | |

This matter is before the court after a hearing on May 28, 2015, on numerous interrelated motions:  Defendant Schiller Grounds Care, Inc.'s ("Schiller") motion for summary judgment on plaintiff Exmark Manufacturing Company, Inc.'s ("Exmark") claim of willful infringement and on Schiller's affirmative defense of laches, Filing No. 286; Defendant Briggs & Stratton Power Products Group, LLC's ("Briggs") motions for summary judgment of no willfulness, and for a ruling in its favor on the laches defense. Filing No. 306 and Filing No. 311; Briggs's motion for a summary judgment that its redesigned mowers do not infringe the '863 patent, Filing No. 296; Briggs's and Schiller's motion for summary judgment that the claims of the patent are void due to indefiniteness, Filing No. 302 and Filing No. 309; Plaintiff Exmark's motion for a summary judgment of infringement by Briggs, Filing No. 318; Exmark's motion for a summary judgment of infringement by Schiller; Filing No. 324; Exmark's motion for a summary judgment in its favor under 35 U.S.C. §§ 102 & 103 (invalidity by reason of anticipation and obviousness), Filing No. 326; Exmark's motion for summary judgment in its favor under 35 U.S.C. § 112 (invalidity by reason of indefiniteness), Filing No. 328;

Exmark's motion for summary judgment in its favor on defendants' defenses (notice and marking, statute of limitations, double patenting, waiver and implied waiver and unclean hands), Filing No. 330.   This is an action for patent infringement.   The court has jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(1) and 1338(a).

I.      BACKGROUND

The present motions can be loosely categorized as validity motions (Filing Nos. 302, 309, 326, and 328), infringement motions (Filing Nos. 296, 318, and 324), defenses motions (Filing Nos. 286, 311 and 330) and willfulness motions (Filing Nos. 286 and 306).   This case involves a lawn-mower patent.   On May 12, 2010, Exmark initiated this action accusing defendants Briggs and Schiller of infringing claims 1, 2, 6 and 7 of its U.S. Patent No. 5,987,863 ("the '863 patent").   Filing No. 1, Complaint.   The patent at issue involves a "Lawn Mower Having Flow Control Baffles and Removable Mulching Baffles."   *Id.*, Ex. A, '863 patent.

Essentially, for the reasons stated below, the court finds the claims of Exmark's patent are valid.   Further, the court finds that Briggs's accused original products and Schiller's accused products infringe the patent claims.   The court also finds the defenses of laches and waiver are inapplicable.   The court finds, however, that there are genuine issues of material fact with respect to whether or not Briggs's modified designs are infringing and on whether the defendants' infringing conduct was willful.

A.      The Parties

Plaintiff Exmark is a Nebraska corporation with a principal place of business in Beatrice, Nebraska.   The company was incorporated in 1982 as a manufacturer of professional turf care equipment.   At that time, Exmark "focused on manufacturing a line

2

of mid-size walk-behind mowers and turf rakes." By 1987, Exmark expanded its product offerings to include commercial riding mowers. In 1995, the company introduced its mid-mount, zero-turn riding mower, the Exmark Lazer Z. In November 1997, Exmark became a division of the Toro Company ("Toro").

Defendant Briggs is a Delaware Limited Liability Company with a principal place of business in Jefferson, Wisconsin. Filing No. 1, Complaint. Briggs is a wholly-owned subsidiary of Briggs & Stratton Corporation, a designer and manufacturer of garden and turf care products through its Simplicity, Snapper, Ferris and Murray brands. Over the years, Briggs has acquired several entities. It acquired Simplicity in 2004. Simplicity had acquired Snapper in 2002 and Ferris in 1999. Briggs's allegedly infringing mowers are sold under the Ferris and Snapper brands and include but are not limited to, mowers sold under the designation Snapper Pro S200X, Ferris Comfort Control DD, and mowers having Briggs' iCD Cutting System.

Defendant Schiller is a Pennsylvania corporation with a principal place of business in Southampton, Pennsylvania. Schiller was established in 2009 through the merger of Schiller-Pfeiffer, Inc. (a manufacturer of gardening, landscaping and turf care equipment) and Commercial Grounds Care, Inc. (a manufacturer of grounds care equipment, including commercial mowers.). In 2006, Commercial Grounds Care, Inc. acquired the assets of the commercial grounds care division of Jacobsen, a Textron Company. Textron had earlier acquired the Ransomes, Simms and Jeffries ("Ransomes") lawn-mower company, which had, in turn, acquired Wisconsin Marine, another lawn-mower manufacturer. Schiller and/or its predecessors manufactured Bob-Cat, Bunton, Steiner, and Ryan brand mowers. Schiller's allegedly infringing mowers

3

include, but are not limited to, mowers sold under the Bob-Cat and Bunton brand names and sold under the designation Bob-Cat FastCat Pro and Bob-Cat Hydro Walk-Behind.

> B.    The Patent

The '863 patent abstract states:

> A multiblade lawn mower including a mower deck having a plurality of cutting blades rotatably disposed therein.   A first flow control baffle is positioned in the mower deck between the cutting blades and the front wall of the mower deck and extends substantially continuously between the sides of the mower deck.   A second flow control baffle is positioned in the mower deck rearwardly of the cutting blades.   The first and second flow control baffles include a plurality of semi-circular baffle portions which define a plurality of open throat portions there between.   A plurality of selectively removable mulcher baffles are positioned in the mower deck to close the throat portions, thereby defining a substantially cylindrical mulching chamber around each of the cutting blades.

Filing No. 1, Complaint, Ex. A, '863 Patent.

The '863 patent is part of a family of patents that can be traced back to a parent patent application, Serial. No. 08/559,575, that was filed November 16, 1995, and later abandoned.  *See Toro Co. v. Scag Power Equip., Inc.*, No. 8:01-CV-279, Filing No. 185, Memorandum and Order at 5 n.5 (D. Neb. May 16, 2001).  Exmark eventually replaced the November 1995 application, Serial No. 08/559,575, with a continuation-in-part application in January 1997.  *Id.*  The '863 patent is a continuation of the '475 patent. *Id.* at 2 n.2.  The '863 patent also claims priority to two earlier applications: Application Serial No. 08/784,825 ("the '825 application"), filed in 1997, and Application Serial No. 08/559,575 ("the '575 application"), filed in 1995.  Filing No. 321, Exs. 30 & 31, ('825 and '575 applications.)   The other patents in this family ("the Related Patents") include U.S. Patent 5,845,475 ("the '475 patent"), U.S. Patent 5,816,033 ("the '033 patent"), and U.S. Patent 5,865,020 ("the '020 patent").

C.      Claim Construction

The court held a Markman hearing on September 1, 2011, and entered a claim construction order based on the language of the claims in the context of the other claims of the patent and the specifications.  Filing No. 156, Memorandum and Order at 8.   The court found the intrinsic record provided a sufficient foundation for claim construction and did not rely on extrinsic evidence.   *Id.*   The court generally found that most of the terms at issue needed no construction, but clarified the meaning of several terms.[1]  *Id.* at 15-16.   Although the parties agreed on the construction of "first flow control baffle," the court interpreted it to mean "front flow control baffle."   *Id.* at 9.  "Adjacent" needed no construction and refers to parts that are near one another but not touching.  *See id.* at 8-9.  "Extends" in the context of "a front arcuate baffle portion that 'extends from the interior surface of said second side wall'" does not "require that the first arcuate portion contact or abut the second side wall."  *Id.* at 10.  The court found "substantially straight" needed no construction, noting that the jury could be expected to understand that the word "substantially" does not mean "fully or totally."  *Id.* (citations and quotations omitted).   The court interpreted the phrase "said front elongated and substantially straight baffle portion being angularly disposed with respect to the said circle defined by the blade tip path of said second cutting blade in a chord-like fashion" to mean "'the front elongated and substantially straight baffle portion is oriented such

---

[1]  The court found the following terms needed no construction:  "said front flow control baffle extending substantially continuously from the front location adjacent the interior surface of said second side of wall to a second location adjacent the interior surface of said front side wall;" "and adjacent the forward end of said discharge opening;" "a front arcuate baffle portion that 'extends from the interior surface of said second side wall;'" "substantially straight;" "said front and rear flow control baffles defining a plurality of open throat portions which are positioned between adjacent cutting blades;" "a rear elongated and substantially straight baffle portion, having front and rear ends, extending from said rear end of said rear arcuate baffle portion."  *See* Filing No. 156, Memorandum and Order at 8-14.

that the line corresponding to that baffle portion intersects the circle defined by the blade tip path of the second cutting blade at two points.'" *Id.* at 11-12.  The court construed the term "second flow control baffle" to mean "a second rear structure within the walls of the mower deck that controls the flow of air and grass clippings."  *Id.* at 12. "Semi-circular baffle portions" was construed to mean "baffle portions that are shaped like a portion or part of a circle." *Id.* at 13.

In reexamination proceedings, the United States Patent Trial and Appeal Board (PTAB) construed the term "flow control baffle" to mean "an element that 'controls' the flow of air and grass clippings… in a 'meaningful way'". Filing No. 368, Ex. 40, PTAB Opinion at 8.

D.    Procedural History

The '863 patent has been reexamined by the United States Patent and Trademark Office ("USPTO") three times.  Filing No. 320, Index of Evid., Ex. 35, Exmark Request for an *ex parte* reexamination; Ex. 25, Schiller Request for an *ex parte* reexamination; and Ex. 27, Briggs Request for an *ex parte* reexamination.  Exmark's own patent attorney filed the first Request for Ex Parte Reexamination "in an abundance of caution" after the patent's validity was challenged in *Toro Co. v. Scag Power Equip., Inc.*, No. 8:01-CV-279 (D. Neb. May 16, 2001).[2]  *Id.*, Ex. 35, Exmark's Ex Parte Request

---

[2] In 2001, Exmark and its parent, The Toro Company, sued Scag Power Equipment, Inc. for infringement of the '863 patent and three other patents (the '475, '961 and '176 patents).  *Toro Co. v. Scag Power Equip., Inc.,* No. 8:01-CV-279, Filing No. 185, Memorandum and Order at 1-2 (D. Neb. May 16, 2001).

The primary issue in the Scag Power Equipment case relative to the '863 patent was the validity and enforceability of the claims over a prior art "Walker brochure."  *Id.*  The Walker brochure was submitted by Exmark to the USPTO during the original examination of the '863 patent.  *See Toro Co. v. Scag Power Equip., Inc.,* No. 8:01-CV-279, 2003 U.S. Dist. LEXIS 603, at *8-10 (D. Neb. Jan. 15, 2003).

for Reexamination;  *See Toro Co. v. Scag Power Equip., Inc.*, No. 8:01-CV-279, 2003 U.S. Dist. LEXIS 603, at *8-10 (D. Neb. Jan. 15, 2003).

On March 23, 2012, during the pendency of this litigation, Schiller filed a request for Ex Parte Reexamination of the claims of the patent at issue herein.[3]  *See* Filing No. 214, Stipulated and Joint Motion to Lift the Stay of Proceedings at 1.  Schiller asserted that the claims were invalid because they were not entitled to the filing date of the original '575 patent and were therefore anticipated by Exmark's own brochure showing the patented invention.  Filing No. 321, Ex. 25, Schiller Request at 4 (ECF 321-13).  On July 25, 2012, while the Schiller reexamination was still pending, Briggs filed for an Ex Parte Reexamination by the USPTO of the same claims.  Filing No. 321, Ex. 27, Briggs Request (ECF 321-15, 321-16).  The USPTO granted the reexamination request on April 27, 2012, and issued an Office Action initially rejecting the subject claims 1, 2, 6, and 7 as obvious in light to prior art and unpatentable.  Filing No. 322, Ex. 38, Office Action at 6-7 (ECF 322-7).  That decision was ultimately reversed by the PTAB.  *Id.*, Ex. 47, USPTO Decision dated July 20, 2014.  On August 13, 2014 the USPTO issued a "Notice of Intent to Issue Reexamination Certificate, affirmed the patentability of the claims and required no changes to the patent." *Id.,* Ex. 48, Reexamination Certificate.

---

Scag accused Exmark of intentionally mis-citing Walker patent to the USPTO in such a way that the patent examiner did not actually consider it to be prior art.  *Id.*  Shortly before trial, this court granted summary judgment to Toro on Scag's inequitable conduct defense.  *Id.* at *18.  On November 16, 2004, an Ex Parte Reexamination certificate was issued by the USPTO which affirmed the patentability of the claims examined and required no changes to the patent.  *See* Filing No. 322, Ex. 36.  The case later settled.  *See Toro Co. v. Scag Power Equip., Inc.*, No. 8:01-CV-279, Filing No. 195, Settlement Agreement (Sealed).

[3] This action was stayed during the pendency of the reexaminations.  Filing No. 197, Order.

E.      Facts

The record shows that in 1994, Exmark inventor Garry Busboom designed a side discharge mower with front and rear baffles that intentionally directed grass clippings from one cutting chamber into the path of the next cutting blade.  Filing No. 321, Ex. 28, Strykowski Validity Report at 18, 112-13.  The resulting mower discharged grass better at higher speeds and without bogging down in wet or heavy grass.  *Id.* at 112-13.

After Exmark filed this suit in early 2010, Briggs re-designed its curved-straight-curved baffles into a continuous curved design in which the baffle curves, then curves again, then curves yet again as it extends along the deck.  Filing No. 317, Ex. 19, Weber Dep. at 163-64 (ECF 317-4 Page ID 7103).  Exmark contends that both Briggs's original baffle design and its updated baffle design infringe the patent, but moves for a summary judgment of infringement only with respect to the original design.[4]  Filing No. 318, Motion.   Briggs moves for a declaration that its redesigned mowers do not infringe the patent.  Filing No. 296, Motion.

In its motion for a summary judgment of infringement against Schiller, Exmark contends that the 48 inch, 52/54 inch, and 61 inch accused products that Schiller manufactured from 2006 to 2010 literally infringe claims 1, 2, 6, and 7 of the '863 patent.  Shiller also redesigned its mowers after this lawsuit was filed and Schiller filed for and received United States Patent No. 8,171,709 ("the Schiller patent") in connection with

---

[4] Exmark's motion for summary judgment relates to versions 1-4 of seven versions of Briggs's accused products that are challenged in this lawsuit.  Filing No. 319, Exmark Brief at 2.  It seeks a summary judgment of infringement with respect to those products that Briggs and its predecessors manufactured and sold prior to the filing of this lawsuit and continued to sell for some time after this suit was initiated and are referred to as "original Briggs designs."  *Id.*; Filing No. 317, Ex. 1, Strykowski Report at 27-39.

that redesign.  Filing No. 317, Ex. 19, Weber Dep. at 163-64 (ECF 317-4 Page ID 7103); Ex. 20, Weber Second Dep. at 200 (ECF 317-5 Page ID 7188); Filing No. 321, Ex. 21, Schiller Patent (ECF 321-9).  Exmark does not contend that the Schiller redesign infringes the '863 patent.

Exmark only seeks damages for infringement by Briggs beginning on May 12, 2004, six years from the date of the filing of the complaint on May 12, 2010, and does not seek damages outside the statutory period.  Exmark alleges that sometime prior to August 2006, a company that is not a party to this suit began infringing the '863 Patent and Schiller continued the infringement when it purchased certain product lines and other assets of that company on August 18, 2006.  It seeks damages for infringement by Schiller from and after that date.

In support of their motions, the parties presented the testimony of their expert witnesses.  *See, e.g.*, Filing No. 317, Exs. 1, Updated Report of Dr. Paul Strykowski (ECF 317-1(restricted)); Ex. 2, Rebuttal Expert Report of Denis Del Ponte (ECF 317-2 (restricted)); Ex. 5, Deposition Transcript of Denis Del Ponte ("Del Ponte Dep.") (ECF 317-3 (restricted); Ex. 19, Deposition Transcript of Anthony Weber ("Weber Dep.") (ECF 317-4); Ex. 28,  Strykowski Validity Report (ECF 317-6); Filing No. 320, Ex. 4, Updated report of Garry Busboom; Ex. 7, Supplemental Expert report of Mark J. Wegner; Filing No. 321, Ex. 13 (ECF 321-3), Deposition Transcript of Frank Fronczak ("Fronczak Dep.").[5]  Exmark's experts, Dr. Paul Strykowski and Mr. Garry Busboom agree that all of

---

[5] Schiller contends that Fronczak was not designated to provide an opinion on whether Schiller infringed the patent.  Filing No. 369, Schiller Brief at 2 n. 1; *see* Filing No. 367, Deposition of Frank Fronczak at 10 (ECF 367-20, Page ID 11443).  Fronczak provided an opinion on invalidity as anticipated and/or obvious.  Filing No. 321, Ex. 13, Fronczak Dep. at 67 (ECF 321-3 Page ID 7979); Filing No. 317,

the limitations of claim 1 and claim 2 of the '863 patent are literally present in the original Briggs designs.  Filing No. 317, Ex. 1, Strykowski report at 52 (ECF 317-1); Filing No. 320, Ex. 4, Busboom Report at 3.  Briggs's expert, Denis Del Ponte, admits that, based on the court's claim construction, all the limitations of claims 1, 2, 6, and 7 of the '863 patent, except for one, are literally present in some or all of Briggs's original designs. Filing No. 317, Ex. 5, Del Ponte Dep. at 106, 108-09, 110-114, 121-22; Ex. 2, Del Ponte Rebuttal Report at 6, 47, 127-135.

The only limitations that Mr. Del Ponte contends are not present are the requirements that the first arcuate baffle portion has a first end "which extends from the interior surface of [the closed] side wall partially around said first cutting blade."  *See* Filing No. 1, Complaint, Ex. A, '863 patent at 6:21-24, 7:32-35; Filing No. 317, Ex. 2, Del Ponte Rebuttal Report at 49 (ECF 317-2); *see also id.*, Ex. 5, Del Ponte Dep. at 116-118, Ex. 6, Del Ponte Ex. 610 at 2.   He contends that "even though the baffle portion may be in contact with the second side wall . . . because all versions are parallel to the wall, none 'extend from' the wall." *Id.*, Ex. 2, Del Ponte Rebuttal Report at 49.   Schiller's engineer, Mr. Mark Wegner, testified that he knew about Exmark's '863 patent at the time he developed the allegedly infringing design in roughly 2005. Filing No. 317, Ex. 62, Deposition of Mark Wegner ("Wegner First Dep.") at 47, and 95-96 (ECF 317-10 Page ID 7449, 7461).

During claim construction, this court rejected Briggs's argument that the claim language "a first arcuate baffle portion . . . which extends from the interior surface of

---

Ex. 49, Fronczak Report at 3 (ECF 317-7 Page ID 7364).  The issues are somewhat interrelated, but the court will consider the evidence only to the extent that it is relevant to the issue under consideration.

said second side wall" required that the first arcuate baffle portion physically contact or abut the closed side wall.  Filing No. 156, Memorandum and Order at 9-10.  After the court issued its claim construction order, Del Ponte stated in his expert report the only basis for Briggs's contention that its original designs did not infringe the '863 patent was that none of its baffle portions "extend from" the wall.  Filing No. 317, Ex. 2, Del Ponte Rebuttal Report at 49-50; *see also id.*, Ex. 5, Del Ponte Dep. at 116-118; Filing No. 320, Ex. 6, Del Ponte Ex. 610 at 2.

Briggs argues that their accused product does not "extend[] from the interior surface of said second side wall partially around said first cutting blade," but rather, its first arcuate baffle portion "extends in a substantially non-parallel way from the interior surface of said second side wall partially around said first cutting blade." Filing No. 320, Ex. 6, Del Ponte Ex. 610 at 2-5; Filing No. 1, Complaint, Ex. A, '863 Patent at Fig. 2. The record shows that Briggs's original accused products are virtually identical to the preferred embodiment shown in Figs. 2 & 4 of the patent.  *See e.g.*, Filing No. 1, Complaint, Ex. A, '863 Patent at Figs 2 & 4; Filing No. 299, Ex. 8, Declaration of Philip Wenzel at 5 (ECF 299-6 Page ID 5633); *Id.* at 13, Ex. A (ECF 299-6 Page ID 5640).

With respect to Briggs's modified design, the record shows Briggs's modified design curves the straight portions of the baffle between the first and second arcuate portion.  *See* Filing No. 317, Ex. 2, Del Ponte Rebuttal Report at 17; Filing No. 299, Ex. 8, Wenzel declaration at 7 (ECF 299-6 Page Id. 5634).   Briggs presented expert testimony that its modified design does not infringe the patent.  *See* Filing No. 317, Ex. 2, Del Ponte report at 18-37.  However, evidence presented by Exmark controverts that testimony.  *See* Filing No. 309, Exmark's Brief at 7-14 (disputing Briggs's purported

statements of undisputed fact); Filing No. 391, Exs. 1-71.  Both Dr. Strykowski and Mr. Busboom have provided expert reports and testified unequivocally that they believe that Briggs's modified baffles have a first arcuate baffle portion followed by a first elongated and substantially straight baffle portion, and that the Briggs modified baffles infringe the asserted claims of the '863 patent.  Filing No. 317, Ex. 1, Strykowski Report at 52; Filing No. 320, Ex. 4, Busboom Report at 2, 21-23.

The structure of Schiller's accused baffle designs are shown in a Schiller assembly drawing. *See* Filing No. 317, Ex. 1, Strykowski report at 14-16, 25-26 (ECF 317-1); Filing No. 320, Ex. 9, Strykowski Ex. X (ECF 320-11), Ex. 10, Strykowski Ex. Y (ECF 320-12); Filing No. 321, Ex. 11 Strykowski Ex. Z (ECF 321-1).  Exmark's experts, Dr. Strykowski and Mr. Busboom, agree that all limitations of claims 1, 2, 6 and 7 of the '863 patent are literally present in each of the Schiller accused mowers.  *Id.*, Ex. 1, Strykowski Report at 27; Ex. 4, Busboom Report at 3.  Schiller's employee expert, Mr. Wegner, only denies the presence of one claim limitation in the Schiller accused products.  Filing No. 320, Ex. 7, Wegner Supplemental Report at 2, 8-9 (ECF 320-6); Filing No. 321, Ex. 12, Wegner Second Dep. at 7 (ECF 321-2).  Specifically, Mr. Wegner only denies that the accused Schiller mowers have a front flow control baffle that extends to a "location adjacent the interior surface of said first side wall and adjacent the forward end of said discharge opening."  *Id.*  The "first side wall" in the claims refers to the side wall having the discharge opening. *Id.* at 4.  Schiller's engineer, Mr. Mark Wegner, testified that he knew about Exmark's '863 patent at the time he developed the allegedly infringing design in roughly 2005.  Filing No. 317, Ex. 62, Deposition of Mark Wegner, dated August 24, 2011, (ECF 317-10, pp. 47 and 95- 96).

12

During the claim construction process, Schiller asserted that this claim limitation required that the front flow control baffle be "in contact with or abutting the interior surface of the second side wall and the interior surface of the first side wall" and the court rejected Schiller's argument, finding that the "word 'adjacent' refers to parts that are near one another, but it does not require touching. . . . The word 'adjacent' is used throughout the specification to mean 'near.'" Filing No. 156, claim construction order at 8-9.  Wegner testified he believed "adjacent" within the scope of the '863 patent would mean one-eighth inch or less.  Filing No. 321, Ex. 12, Wegner Second Dep. at 10-11 (ECF 321-2, Page ID #7902).

Schiller's expert, Dr. Fronczak, testified that the Schiller decks meet the "adjacent" limitation in the asserted patent claims.  Filing No. 321, Ex. 13, Fronczak Dep. at 255, 257-58, 263; Ex. 14, Fronczak Ex. 669 (48" Schiller accused product); Ex. 15, Fronczak Ex. 668 (52/54" Schiller accused product); Ex. 16, Fronczak Ex. 670 (61" Schiller accused product).   Dr. Fronczak further testified that numerous prior art structures met the "adjacent" limitation in the asserted patent claims despite the fact that there was a gap between the baffle in the prior art and the forward end of the discharge opening.  *Id.*, Ex. 13, Fronczak Dep.  at 164-65, 209-10; Ex. 17, Fronczak Ex. 666; Ex. 18, Fronczak Ex. 658) (showing a gap in those prior art structures at least as large as the gap in Schiller's accused products).  Also, the Schiller '709 Patent describes the front baffle as being "adjacent" the discharge opening despite the fact that the gap between the end of the baffle and the discharge opening in the preferred embodiment is roughly twice the size of the gap in the accused products.  *See* Filing No. 321, Ex. 21, Schiller Patent at (ECF 321-9) at 8.  Exmark has also presented evidence that Schiller's

accused product is essentially identical to Fig 4 of the '863 patent. *See, e.g.,* Filing No. 1, Complaint, Ex. A, '863 Patent at Fig. 4; Filing No. 320, Ex. 8, Strykowski Ex. E; Filing No. 317, Ex. 1, Strykowski Report at 25.

The record shows from at least 1996 until August 18, 2006, Mr. Mark Wegner was as an engineering manager for Ransomes and was responsible for the design and development of Bob-Cat mowers, as well as Bunton mowers beginning in 1998. Filing No. 317, Ex. 62, Wegner Dep. at 45, 72 (ECF 317-10). From August 18, 2006 until sometime in 2008, he continued in that same position with the same responsibility for Schiller. *Id.* at 72. Wegner continues to work for Schiller today and has been designated by Schiller as a technical expert in this case. Filing No. 320, Ex. 7, Wegner Report (ECF 320-6). Wegner added blowout baffles to Ransomes mowers in 1996. *Id.* at 18-19. Wegner was aware that Exmark at that time had a front flow control baffle and he testified the idea may have come from Exmark. *Id.* at 40, 147-48. Wegner admits that he learned of Exmark's '863 patent in late 1999, shortly after it was issued. *Id.* at 95-96. Wegner participated in the *Toro v. Scag* litigation in 2002. Filing No. 393, Ex. 46, Wegner *Scag* Dep. (ECF 393-4). From 2000 until August 18, 2006, Mr. Tony Weber was a product manager for Ransomes and was responsible for both the Bob-Cat and Bunton brands. Filing No. 317, Ex. 19, Weber Dep. at 16, 19-20, 65-66. From August 18, 2006 until at least 2009, he continued in that same position with the same responsibility for Schiller. *Id.* at 20-24. Weber testified that sometime in 2004-2005, he became aware of Exmark's '863 patent. *Id.* at 51-52. Weber testified that he talked to Wegner about the '863 patent at that time. *Id.* at 73-74. Jeff Hallgren joined Schiller in 2008 and he was the marketing and brand manager for commercial mower products

and was Tony Weber's boss in 2009.  Filing No. 393, Ex. 60, Revised Suiter Report at 12; *Id.*, Ex. 69, Schiller Interrogatory Responses at 7; Filing No. 317, Ex. 19, Weber Dep. at 25.  Hallgren and Weber talked about whether Schiller's mowers infringed Exmark's '863 patent in 2008.   Filing No. 393, Ex. 60, Revised Suiter Report at 12; Filing No. 317, Ex. 19, Weber Dep. at 65-67.

    II.     LAW

        A.    Summary Judgment Standards

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'"  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323).  If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"  *Id.* (quoting *Celotex*, 477 U.S. at 324).  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—

whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 251-52 (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

B.    Invalidity

A patent is presumed valid under 35 U.S.C. § 282 and, "consistent with that principle, a [fact finder is] instructed to evaluate . . . whether an invalidity defense has been proved by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, ──── U.S. ────, 131 S. Ct. 2238, 2241 (2011); *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008). The alleged infringer bears the burden to prove

16

the factual elements of invalidity by clear and convincing evidence. *Yoon Ja Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1324 (Fed. Cir. 2006).

In determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence, an examiner's decision on an original or reissue application is "evidence the court must consider." *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 964 (Fed. Cir. 1986) (quoting *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139, 227 USPQ 543, 548 (Fed. Cir. 1985)). Upon reissue, the burden of proving invalidity is "made heavier." *Custom Accessories, Inc.*, 807 F.2d at 964; *accord American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1364 (Fed. Cir. 1984) (upon reissue in light of prior art before the district court, the "burden of proof of unpatentability has become more difficult to sustain"). However, "the [PTO] Examiner's decision, on an original or reissue application, is never binding on a court." *Fromson v. Advance Offset Plate*, 755 F. 2d 1549, 1555 (Fed. Cir. 1985).

1.    Anticipation

"Anticipation requires every element of the claim to be present in a single prior art reference." *In re Bookstaff*, No. 2014-1463, 2015 WL 1344663, at *2 (Fed. Cir. Mar. 26, 2015); *see Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1341 (Fed. Cir. 2011). An invention is anticipated under § 102 only if a single prior art reference expressly or inherently discloses every element of the asserted invention. *Akamai Techs. v. Cable & Wireless Internet Servs.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003). Thus, anticipation requires "strict identity." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1297 (Fed. Cir. 2002). What a prior art reference discloses in an anticipation analysis is a factual determination that may be decided on a motion for summary

17

judgment only if no material facts are disputed. *Novo Nordisk Pharm. v. Bio–Tech. Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005). *Custom Accessories, Inc.,* 807 F.2d at 961 (noting that although "a court must consider an examiner's decision on an original or reissue application when determining if the party asserting invalidity has met its statutory burden, a court may nonetheless find a patent anticipated based on a reference that was properly before the PTO at the time of issuance"); *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1381 (Fed. Cir. 2005).

### 2.      Obviousness

To establish invalidity based on obviousness, a challenger must prove by clear and convincing evidence that the claimed invention would have been obvious to a person having ordinary skill in the art at the time the invention was made when viewed in light of the prior art. 35 U.S.C. § 103 (2012). Obviousness is a question of law based on underlying facts. *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). Therefore, summary judgment of non-obviousness is appropriate when there is no genuine dispute regarding the underlying facts (such as what the prior art teaches), and the only dispute is over the ultimate conclusion of obviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

### 3.      Indefiniteness

Definiteness is to be evaluated from the perspective of a person skilled in the relevant art, that claims are to be read in light of the patent's specification and prosecution history, and that definiteness is to be measured as of the time of the patent application. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2123 (2014) ("Nautilus II"). "Patents are 'not addressed to lawyers, or even to the public generally,'

but to those skilled in the relevant art.'" *Id.* at 2128.  "To determine the proper office of the definiteness command, . . . [the Supreme Court] read[s] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus II*, at 2129.[6]

Section 112's definiteness requirement must take into account the inherent limitations of language.  *Id.*; *see Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 731 (2002).*  "On the one hand, some modicum of uncertainty is the 'price of ensuring the appropriate incentives for innovation[.]'" *Nautilus, 134 S. Ct. at 2128.* (quoting *Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 437 (1902 ).*  "At the same time, a patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them,'" in a manner that avoids "[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims."  *Id.* (quoting *Markman v. Westview Instruments, Inc., 517 U.S. 370, 373, (1996 )* and *United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236(1942).*

"In the face of an allegation of indefiniteness, general principles of claim construction apply."  *Biosig Instruments, Inc. v. Nautilus, Inc., 783 F.3d 1374, 1377-78 (Fed. Cir. 2015)* ("Nautilus II Remand") (quoting *Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1332 (Fed. Cir. 2010)* (citations omitted)).  When a "word of degree" is used, the court must determine whether the patent provides "some standard for

_____

[6] Before the Supreme Court's *Nautilus* decision, the Federal Circuit had held that patent claims are not indefinite if they were "amenable to construction" and not "insolubly ambiguous."  Cite.

measuring that degree." *Nautilus II Remand*, 783 F.3d at 1378. (quoting *Enzo Biochem*, 599 F.3d at 1332).  The Federal Circuit explains:

> [w]e do not understand the Supreme Court to have implied in [*Nautilus II*], and we do not hold today, that terms of degree are inherently indefinite. Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention.

*Id.* (also noting that in examining allegedly ambiguous claims, courts now steer by the bright star of "reasonable certainty," rather than the unreliable compass of "insoluble ambiguity").  "Indefiniteness is a legal determination; if the court concludes that a person of ordinary skill in the art, with the aid of the specification, would understand what is claimed, the claim is not indefinite."  *Id.* at 1381 (quoting *Freeny v. Apple Inc.*, No. 2:13–CV–00361, 2014 WL 4294505, at *4 (E.D. Tex. Aug. 28, 2014)).  "'[T]he degree of precision necessary for adequate claims is a function of the nature of the subject matter.'"  *Nautilus II Remand*, 783 F.3d at 1382 (quoting *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993)).

    C.    Infringement

The party moving for summary judgment bears the initial burden of "showing that the evidence on file fails to establish a material issue of fact essential to the [opposing party's] case."  *Id.*; *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).  Once the moving party does so, the summary-judgment question is whether there is evidence—not argument—that a reasonable jury could find sufficient given the non-moving party's burden of proof.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986).

It has long been established that the patent owner has the burden to prove infringement. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, — U.S. —, —-134 S. Ct. 843, 846 (2014) (in a declaratory judgment action, "the burden of persuasion is with the patentee, just as it would be had the patentee brought an infringement suit").   A determination of infringement requires a two-step analysis. *Yufa v. Lockheed Martin Corp.*, 575 Fed. App'x 881, 885-86 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 955 (2015), *reh'g denied*, 135 S. Ct. 1486 (2015).   "'First, the claim must be properly construed to determine its scope and meaning.'" *Id.* at 885 (quoting *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)).   "'Second, the claim as properly construed must be compared to the accused device or process.'" *Yufa*, 575 Fed. App'x at 886 (quoting *Carroll*, 15 F.3d at 1576).   The first step, claim construction, is a question of law, reviewed de novo.   *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1319 (Fed. Cir. 2011).   In contrast, infringement, whether literal or under the doctrine of equivalents, is a question of fact.   *Id.*   A court may determine infringement on a motion for summary judgment 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'   *Id.*

D.   Defenses (Laches, Waiver and Unclean Hands)[7]

"'Laches may be defined generally as 'slackness or carelessness toward duty or opportunity.'" *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028-29

---

[7] The defendants concede that Exmark's motion for summary judgment should be granted with respect to purported defenses related to marking, the statute of limitations, and double patenting.  Schiller also concedes that its unclean hands defense should be dismissed.  Both parties continue to assert their waiver defense, and Briggs continues to assert its unclean hands defense.

(Fed. Cir. 1992) (en banc) (quoting *Webster's Third New International Dictionary* (1969)).  In a legal context, laches may be defined as the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar. *A.C. Aukerman*, 960 F.2d at 1028-29.  "The Supreme Court has long recognized the defense of laches to a patent infringement action brought in equity."  *Petrella v. Metro–Goldwyn-Mayer, Inc.*, ––– U.S. –––, 134 S. Ct. 1962, 1974 n. 15 (2014).

Under 35 U.S.C. § 286, "[e]xcept as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286; *see A.C. Auckerman*, 960 F.2d at 1030) (explaining that "section 286 is not a statute of limitations in the sense of barring a suit for infringement," rather, "the effect of section 286 is to limit recovery to damages for infringing acts committed within six years of the date of the filing of the infringement action.").  The Federal Circuit has held that laches can bar damages incurred prior to the commencement of suit, but not injunctive relief.  *A.C. Aukerman Co.*, 960 F.2d at 1029–1031, 1039–1041; *but see Petrella*, 134 S. Ct. at 1974 n.15 (abolishing laches as a defense in copyright cases).  The Federal Circuit Court of Appeals is presently considering *en banc* whether "[i]n light of the Supreme Court's decision in *Petrella v. Metro–Goldwyn–Mayer*, 134 S. Ct. 1962 (2014) (and considering any relevant differences between copyright and patent law)," the en banc decision in *A.C. Aukerman* should be overruled "so that the defense of laches is not applicable to bar a claim for damages based on patent infringement occurring within the six-year damages limitations period established by 35 U.S.C. § 286?" and whether "[i]n light of

the fact that there is no statute of limitations for claims of patent infringement and in view of Supreme Court precedent," the defense of laches should "be available under some circumstances to bar an entire infringement suit for either damages or injunctive relief?" *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, No. 2013-1564, 2014 WL 7460970, at *1 (Fed. Cir. Dec. 30, 2014).

To prove the defense of waiver, a defendant must show that the patentee "with full knowledge of the material facts, intentionally relinquished its rights to enforce the ['863 patent] or that its conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008) (emphasis added).  In contrast to laches, waiver requires actual, as opposed to constructive knowledge of the material facts about a potential claim, and laches requires a showing of prejudice, while waiver does not. *Compare Qualcomm*, 548 F.3d at 1020 *with A.C. Aukerman Co.,* 960 F.2d at 1028.

The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).  To prove unclean hands, a defendant must prove the plaintiff engaged in inequitable conduct and, second, that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant.  *Intamin, Ltd. v. Magnetar Techs. Corp.*, 623 F. Supp. 2d 1055, 1074 (C.D. Cal. 2009).

E.      Willfulness

Proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  To prove that its patent was willfully infringed, a patentee must make two related showings.  *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 773 (Fed. Cir. 2014).  "First, it must 'show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.'"  *Id.*  (quoting *In re Seagate Tech., LLC*, 497 F.3d at 1371).  "Second, 'the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.'"  *Aqua Shield*, 774 F.3d at 773.  The first issue is legal, and the second issue is factual.  *Id.*; *see also Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 780 F.3d 1357, 1359-60 (Fed. Cir. 2015) (Taranto, J., concurring in denial of rehearing en banc).

III.    DISCUSSION

A.      Validity (Filing Nos. 302, 309, 326, and 328)

Exmark seeks a summary judgment in its favor on the defendants' defense of that the patent is invalid as anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103, and indefinite under 35 U.S.C. § 112.  Briggs and Schiller move for summary judgment in their favor on the defense of invalidity due to indefiniteness.[8]

---

[8] Briggs contends that four claim terms are indefinite:  1) the baffle begins and ends at locations "adjacent" the side walls; 2) the "elongated and substantially straight" baffle portion; 3)  Exmark's contention that the baffle must have a "meaningful effect on the flow of air and grass clippings relative to its absence;" and 4) the baffle must be "substantially continuous."  Exmark's purported contention that the

The court first finds that no reasonable jury could find on this record that the defendants have met their burden of presenting clear and convincing evidence that the claims at issue are invalid as anticipated or obvious.  The '863 patent has now been examined four times by the PTO, and each time the PTO held the claims of the '863 patent to be patentable.  The court has considered the PTO reexaminations and affords them some, though not determinative, weight.  All of the defendants' prior art invalidity arguments have been fully considered by the PTO and rejected.  The PTO has similarly rejected the argument that the claims were anticipated by the plaintiff's own brochures and that the patent is not entitled to a priority date of 1995.  Under these circumstances, the court finds that no reasonable juror could find that the defendants have met their burden of proving by clear and convincing evidence that the claims of the patent are invalid.

With respect to indefiniteness, Briggs contends that *Nautilus II,* 134 S. Ct. at 2124, changed the standards for indefiniteness.  The PTO has not been presented with an indefiniteness challenge.  The court finds Briggs's argument is unavailing.  Whatever the distinction between the "reasonable certainty" standard announced in *Nautilus II*, and the former standard that required that language be "not insolubly ambiguous," the court finds the terms at issue herein are not indefinite.  Four claim terms are at issue:

---

baffle must have a "meaningful effect" is not in the claim, but was argued to the PTO.  Filing No. 368, Ex. 40, PTAB opinion at 8.

The court's decision does not hinge on the "meaningful effect" construction.  The "meaningful effect" language was adopted by the PTAB merely to explain why the mounting plates of the prior art Simplicity patent were not "flow control baffles."  *Id.*  The parties previously agreed to the interpretation of the claim term "flow control baffle" to mean the "structure within the walls of the mower deck that controls the flow of air and grass clippings."  That term is easily understood.  The court will not adopt the construction that every portion of the baffle have a meaningful effect on the flow of air and grass clippings.

"elongated and substantially straight baffle portion," "substantially continuously" "adjacent the interior surface" and "a first flow control baffle positioned in said mower deck which extends downwardly from the interior surface of said top wall between said cutting blades and said front wall."   In light of the specifications and the prosecution history of this patent, those terms inform those skilled in the art with reasonable certainty.   The record shows that a person of ordinary skill in the art in 1995 would know with reasonable certainty how curved a baffle could be and still be "substantially straight;" how "elongated" the portions of the purportedly inventive baffle must be; how far from the side wall a baffle can be and still be "adjacent;" or how many gaps a baffle can have and still be "substantially continuous."   As noted in the courts claim construction order, "[t]he word "adjacent" refers to parts that are near one another, but it does not require touching" and "is used throughout the specification to mean 'near.'" *See* Filing No. 156, Memorandum and Order at 9.   The term "substantially straight" was also construed in the court's earlier order.   *Id.* (noting that "[a] jury can be expected to understand that the word 'substantially' does not mean 'fully' or 'totally.'").   The court also found the jury would be able to determine what "elongated" means in the context of the specification, particularly with reference to Figure 2 of the patent.   *Id.* at 11.

Terms of degree such as "substantially" and "adjacent" are prevalent in patent claims and *Nautilus II* does not stand for the proposition that such terms can never be used.   In the context of the claims of this patent, the terms can be easily understood. The court finds the defendant's argument is inconsistent with the claim language, the court's claim construction order, its own experts' opinions on what the prior art teaches, and with the common-sense understanding of the terms.   The terms must be viewed

26

with the understanding of the function of the flow control baffle, which was to "control" the flow of the air and grass clippings.  There are objective criteria to measure the effect of a flow control baffle.  One skilled in the art would understand the limitations to call for a baffle that efficiently controls the flow of the air and clippings.  The terms must be understood in the context of the objectives of claimed invention—particularly "to provide a lawn mower . . . having a flow control baffle which efficiently directs the grass clippings and air towards the side discharge of the mower deck in a manner which prevents grass clippings and air from being directed downwardly onto the ground or turf unless the mulching baffles are mounted on the mower." Filing No. 1, Complaint, Ex. A, '863 Patent at 2:24-29.

The court finds, in view of the PTO reexaminations, the specifications, prosecution history, and the evidence and testimony presented herein, that no reasonable jury could find that the defendants have met their burden of proving either anticipation, obviousness, or indefiniteness by clear and convincing evidence. Accordingly, the court finds Exmark's motion for a finding of no invalidity should be granted and the defendants' motions for a summary judgment of invalidity based on indefiniteness should be denied.

### B.    Infringement (Filing Nos. 296, 318, 324)

#### 1.    Original Briggs Designs and Schiller Designs

The court, having reviewed the evidence in support of and against Exmark's motion for summary judgment on the infringement issue with respect to Briggs's older accused products and Schiller's accused products, finds that no reasonable jury, comparing the claims, as construed in the court's Markman order, to the accused

products and designs could find that the accused products did not infringe the patent. The evidence shows that every limitation recited in the claims is found in the accused devices. Uncontroverted evidence shows that Briggs relies on a distinction involving the extent to which the baffles in its designs extend away from the mower deck. This small distinction is meaningless in light of the patent's specifications and prosecution history. The novel aspect of the patent is that the patented invention efficiently directs the air and grass clippings at higher speeds and without bogging down in wet or heavy grass. Briggs's argument that because a portion of its baffle is generally, substantially, or reasonably parallel to the side wall, it cannot meet the limitation that the first arcuate baffle portion has a first end that "extends from the interior surface of the side wall partially around said first cutting blade" is contrary to the court's claim construction and to common sense. There is no claim limitation or other language in the patent that states the first arcuate portion of the baffle cannot be parallel to the side wall. Only the point at which the baffle touches the side wall is parallel. Excluding that point at the very beginning of the baffle, a portion of the baffle in Briggs's accused original designs does "extend from" the side wall. Briggs's argument presents a strained and nonsensical reading of the asserted claims. The court finds as a matter of law that all the limitations of the claims, as construed, are present in Briggs's accused versions 1-4. On this record, no reasonable juror could find otherwise.

Schiller relies on the requirement in the patent that the front flow control baffle extend to a location "adjacent" the forward end of the discharge opening as differentiating its accused products. The court has construed "adjacent" to mean near. As to that limitation, all of the independent experts (including Schiller's) agree that the

front baffle in Schiller's accused products extends sufficiently close to the forward end of the discharge opening such that it is "adjacent" that location.  The court finds all of the claimed limitations are present in Schiller's accused products and no reasonable juror could find otherwise.  Accordingly, the court finds that Exmark's motions for summary judgments of infringement against Briggs with respect to its original designs and against Schiller should be granted.

> 2.   Briggs's re-designed mower

The court finds there are genuine issues of material fact with respect to whether the re-designed mower infringes the patent.  Accordingly, the court finds Briggs's motion for a summary judgment that its redesigned mowers do not infringe the patent should be denied.

> C.   Defenses (Filing Nos. 286 and 330)

As noted, Exmark seeks damages only for the period dating back six years from the filing of this action.  The statutory provision on damages works a significant constraint on the plaintiff's remedy and mitigates against the need to resort to the equitable remedies of laches or waiver.

The court finds that there is no evidence that Exmark intentionally relinquished its rights to enforce the '863 patent, nor has its conduct  been so inconsistent with an intent to enforce its rights as to induce a reasonable belief that the right was relinquished.  The record shows that Exmark has sought to enforce its patent through reexamination actions and litigation.  The defendants have not shown that Exmark waived its rights.

Further, the evidence does not show the sort of inequitable conduct that would justify the equitable defense of unclean hands.  Based on the uncontroverted evidence

before the court, the court finds as a matter of law that the defendants are not entitled to the equitable defenses of waiver, implied waiver or unclean hands.  Exmark is entitled to summary judgment in its favor on those defenses.

> D.  Willfulness (Filing No. 286)

Defendant moves for summary judgment in their favor on Exmark's claim of willful infringement.  The court finds that there is evidence in the record from which a reasonable fact finder could conclude that Briggs' accused products presented an objectively high risk of infringing Exmark's '863 patent.  The court has rejected Briggs's defenses with respect to infringement and invalidity, and a jury could find Briggs's claim of entitlement to those defenses was not substantial.

Further, there is evidence that Schiller's predecessor's designer and engineer was aware of the Exmark patent at the time he designed the products that evolved into Schiller's accused products.  There is evidence that Schiller employees were objectively aware of the risk associated with infringement of the '863 patent, and that the conduct continued after Ransomes' former employees became employed by Schiller.

As noted, both Briggs's original designs and Schiller's designs are virtually identical to the preferred embodiment of the patent at issue.  The court finds resolution of the willfulness issue will require assessments of credibility.  The court finds there are genuine issues of material fact with respect to willfulness.  Accordingly, the defendant's motion for summary judgment on Exmark's willful infringement claim will be denied.

IT IS ORDERED:

1.     Briggs's and Schiller's motions for summary judgment that the claims of the patent are invalid due to indefiniteness (Filing No. 302 and Filing No. 309) are denied.

2.     Exmark's motions for summary judgment of no invalidity under 35 U.S.C. §§ 102, 103 and 112 (Filing No. 326 and Filing No. 328) are granted.

3.     Briggs's motion for summary judgment that Briggs's redesigned mowers do not infringe (Filing No. 296) is denied.

4.     Exmark's motions for a partial summary judgment of infringement (Filing No. 318 and Filing No. 324) are granted.

5.     Briggs's motion for a summary judgment of no willfulness (Filing No. 306) is denied.

6.     Schiller's motion for partial summary judgment on Exmark's claim of willful infringement and on its affirmative defense of laches (Filing No. 286) is denied.

7.     Exmark's motion for summary judgment on defendants' defenses (Filing No. 330) is granted.

8.     Briggs's motion for a summary judgment of laches (Filing No. 311) is denied.

Dated this 28th day of July, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge