UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING CO., INC., | ) ) ) ) ) Case No. 10-CV-00187 ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| v. | |
| BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC, ET AL. | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS SECOND MOTION IN LIMINE
TO PRECLUDE DEFENDANT FROM PRESENTING ARGUMENTS, EVIDENCE, AND
TESTIMONY REGARDING EQUITABLE DEFENSES**

Plaintiff ("Exmark") moves this Court for an Order *in limine*, excluding arguments, evidence, and testimony elicited by Defendant ("Briggs") related to its equitable defenses, particularly on the issues of alleged delay in bringing suit and any alleged prejudice suffered as a result of such delay. Equitable defenses like laches and estoppel are for the Court to decide, not the jury. A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). The Court has already determined in response to Briggs' motion for summary judgment of laches that "the defenses of laches and waiver are inapplicable" in this case. (Dkt. No. 476 at 2.) Moreover, evidence supporting Briggs' equitable defenses, including alleged delay and prejudice, is irrelevant to any of the issues that the jury will be asked to decide. Furthermore, allowing a jury to hear such evidence would be unfairly prejudicial to Exmark, and would be misleading and confusing for the jury, which may be tempted to improperly decide liability and damages issues on the basis of equitable factors.

1

For these reasons, pursuant to Federal Rules of Evidence 402 and 403, Briggs should be precluded from making arguments, presenting evidence, and eliciting testimony on its equitable defenses in front of the jury. To the extent Briggs still intends to pursue its equitable defenses despite the Court's rejection of its laches defense in the summary judgment Order, those equitable defenses should be heard separately and solely by the Court.

**I.     BACKGROUND**

A full discussion of the facts underlying Briggs' laches defense is set forth in Exmark's Brief in Opposition to Briggs' Motion Regarding Laches (Dkt. No. 394). In summary, Exmark introduced the "Lazer Z," which was the first mower to incorporate the invention of the '863 patent, in 1995. (Dkt. No. 394, Exmark's Br. in Opp. to Briggs' Mot. Regarding Laches at p. 5.) In the late summer of 1996, Briggs' predecessor, Ferris, copied the invention of the '863 patent. (Id. at pp. 7-14.) The '863 patent issued on November 23, 1999. (Dkt. No. 1, Ex. A.)

Briggs asserts that Exmark suspected Ferris of infringing the '863 patent as early as 2001. (Dkt. No. 312, Briggs' Laches Br. at 2.) Briggs relies on a document from an Exmark engineer listing Ferris as a company that "appear[ed] to infringe" the '863 patent. (Dkt. No. 314-2, 2001 Exmark memo; see also Dkt. No. 314-10, 2002 Exmark memo at 5.) Briggs also points to an interrogatory response in which Exmark stated that "one of its employees reported seeing a Ferris mower that might potentially infringe the '863 patent at the GIE show in November of 2001." (Dkt. No. 314-13, Exmark's Resp. to Briggs' Supp. Interrogs. at 9.)

In 2001, Exmark and its parent, The Toro Company, sued Scag Power Equipment for infringement of the '863 patent. (Dkt. No. 393-17, Scag Complaint.) The president of Briggs' predecessor in interest, Ferris Industries, was deposed in the Scag case in 2002. (Dkt. No. 394, Exmark's Opp. Br. to Briggs' Mot. for Summ. J. of Laches at 43.) While Briggs denies that it

2

was aware of Exmark's '863 patent prior to 2010, there is strong evidence that Briggs was aware of the '863 patent at least as a result of this 2002 deposition. (Id.; Dkt. No. 317-24, Briggs Interrog Resp. at 6-7; Dkt. No. 317-14, Wenzel Dep. Tr. at 125:17-22.)

The Scag case settled shortly before trial in 2003. (Dkt. No. 391-11, Scag Settlement Agreement.) After settlement of the Scag case, Exmark wanted to remove any questions of patentability and so submitted the '863 patent to reexamination. (Dkt. No. 322-5, Exmark's Request for Reexam.) In late 2004, the Patent Office issued a reexamination certificate, confirming the patentability of the '863 patent. (Dkt. No. 322-6, Reexam. Certificate 11/16/04.)

While Exmark suspected in the time period from 2004 to 2010 that several companies might be infringing the '863 patent, it was not aware that these companies were extensively touting infringing baffles as core features of their mowers. (Dkt. No. 392-2, Benson Decl. at ¶ 12.) That changed in 2009 when Briggs began a significant marketing campaign centered on its "iCD cutting system," which focused on high quality of cut and using the infringing flow control baffles.



(Dkt. No. 320-3, Laurin Ex. 78.) In 2009, Briggs targeted Exmark's largest customer, in part by claiming that its mowers were essentially the same as Exmark's in terms of quality of cut. (Dkt. No. 317-14, Wenzel Dep. Tr. at 221:20-222:19; Dkt. No. 391-12, Benson 2015 Dep. Tr. at 30:12-31:11.) In May 2010, shortly after Briggs launched its iCD cutting system marketing campaign, Exmark sued Briggs for infringement of the '863 patent. (Dkt. No. 1.)

Briggs has asserted the affirmative equitable defenses of laches and estoppel. (Dkt. No. 29 at 3-4.) Earlier this year, Briggs moved for summary judgment on its laches defense. (Dkt. No. 312, Briggs' Laches Br.) In its brief, Briggs alleged that Exmark improperly delayed in filing suit and that it has suffered both evidentiary and economic prejudice as a result. (Id. at 5-6.) In particular, Briggs alleges that the recollections of witnesses has diminished, that the person who originally developed Briggs' baffle system in late-1990 cannot be found, and that Briggs could have avoided years of potential damages if suit had been brought earlier. (Id.)

4

Exmark disputed these allegations for the reasons discussed in Exmark's Brief in Opposition to Briggs' Motion for Summary Judgment of Laches. (Dkt. No. 394.)

On July 28, 2015, the Court issued its Order on the summary judgment motions. With respect to laches, the Court denied Briggs' motion for summary judgment, finding the defense to be "inapplicable" and noting that "[t]he statutory provision on damages works a significant constraint on the plaintiff's remedy and mitigates against the need to resort to the equitable remedies of laches or waiver." (Dkt. No. 476 at 2, 29.)

## II.   ARGUMENTS AND EVIDENCE REGARDING EQUITABLE ISSUES SHOULD BE EXCLUDED

Equitable estoppel and laches are equitable defenses committed to the sound discretion of the court. A.C. Aukerman, 960 F.2d at 1028.[1] While the Seventh Amendment preserves the right to a jury trial on legal claims, there is no right to a jury for equitable claims. Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001); see also In re Apotex, Inc., 49 Fed. Appx. 902, 903 (Fed. Cir. 2002) (no right to a jury on equitable claims); Villaneuva v. City of Scottsbluff, No. 11-3185, 2012 U.S. Dist. LEXIS 2055, at *2 (D. Neb. Jan. 9, 2012) (same); Ojeda v. City of Scottsbluff, No. 08-3067, 2008 U.S. Dist. LEXIS 96657, at *3 (D. Neb. Nov. 25, 2008) (same); DeKalb Genetics Corp. v. Syngenta Seeds, Inc., No. 06-1191, 2008 U.S. Dist. LEXIS 10305, at *6 (E.D. Mo. Feb. 12, 2008) (same); Rohren v. Centennial Pub. Sch. Dist. 67-R, No. 07-3150, 2007 U.S. Dist. LEXIS 85121, at *2 (D. Neb. Nov. 16, 2007) (same).

Even when there are disputed facts underlying an equitable claim or defense, such facts "are ordinarily for the court to resolve." Gen. Electro Music Corp. v. Samick Music Corp., 19

---

[1] The Federal Circuit currently is considering en banc whether laches remains a valid defense to patent infringement at all in light of the Supreme Courts' recent decision in Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962 (2014), which abolished laches in copyright cases. See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, No. 13-1564, 2014 U.S. App. LEXIS 24697, at *2-3 (Fed. Cir. Dec. 30, 2014).

F.3d 1405, 1408 (Fed. Cir. 1994); see also DeKalb Genetics Corp., 2008 U.S. Dist. LEXIS 10305, at *6-8; Ill. Tool Works, Inc. v. MOC Prods. Co., 946 F. Supp. 2d 1042, 1044 (S.D. Cal. 2012); Advanced Tech. Incubator, Inc. v. Sharp Corp., No. 09-135, 2010 U.S. Dist. LEXIS 145630, at *8-9 (E.D. Tex. Mar. 31, 2010); Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc., 219 F.R.D. 135, 145-46 (N.D. Iowa 2003). While courts occasionally have granted requests by a party to give an equitable defense like laches to the jury on an advisory basis, Briggs has not asked the Court to do so here. Moreover, such a request should be denied when the evidence relating to the equitable defense would create a risk of unfair prejudice or mislead and confuse the jury. See id.

By stating in its summary judgment Order that "the defenses of laches and waiver are inapplicable" in this case (Dkt. No. 476, Summ. J. Order at 2), the Court has already indicated that it is comfortable deciding Briggs' equitable defenses without advisory input from the jury. Evidence relating to Briggs' laches and estoppel arguments are irrelevant to any issue that the jury will decide. To the extent this evidence might have any marginal relevance to one or more of these issues, the prejudice to Exmark would far outweigh any alleged probative value.

1. **Evidence of Alleged Delay and Resulting Prejudice Is Irrelevant to Any of the Issues That the Jury is Required to Decide and Should Be Excluded from the Jury Pursuant to Rule 402**

    a. **Evidence of Alleged Delay and Prejudice Is Irrelevant to Infringement**

Determining patent infringement is a two-step process: first, the court determines the scope and meaning of the claims as a matter of law; second, the factfinder compares the properly construed claims to the accused products. TechSearch L.L.C. v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir. 2002). In this case, the Court already has issued an Order regarding claim

6

construction. (Dkt. No. 156.) All that remains to be done is for the jury to compare the claims to the accused product.

*When* the present lawsuit was filed is completely irrelevant to the jury's job of comparing the claims to Briggs' accused products. Direct infringement is a strict liability offense, wherein factors such as the timing of the lawsuit and a defendant's mental state are irrelevant. See Commil USA, LLC v. Cisco Sys., 135 S. Ct. 1920, 1926 (2015). Furthermore, alleged prejudice resulting from allegedly faded memories or missing documents is also entirely irrelevant to comparing the claims to the accused products. Regardless of whether witness' memories have faded regarding past events, they certainly are capable of comparing the claims of the '863 patent to the accused products today.

### b. Evidence of Alleged Delay and Prejudice Is Irrelevant to Damages

The minimum damages amount allowable under 35 U.S.C. § 284 is the reasonable royalty that the patentee would have received in an arms-length bargain. Whitserve, LLC v. Computer Packages, Inc., 694 F.3d 10, 26-27 (Fed. Cir. 2012). The Federal Circuit has approved use of the fifteen factors cited in Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), to frame the reasonable royalty analysis. Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1317 (Fed. Cir. 2011). As stated by the Federal Circuit: "Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation," including but not limited to the value of the patented invention. Id.; see also Astrazeneca AB v. Apotex Corp., No. 2014-1221, 2015 U.S. App. LEXIS 5543, at *31-33, 33 n.5 (Fed. Cir. Apr. 7, 2015); Univ. of Pittsburgh v. Varian Med. Sys., 561 Fed. Appx. 934, 949-50 (Fed. Cir. 2014).

7

Significantly, *when* a patentee chooses to sue an infringer is not one of the Georgia-Pacific factors. Georgia-Pacific, 318 F. Supp. at 1120. Though the Georgia-Pacific factors are not comprehensive of all the considerations that might be relevant to a reasonable royalty analysis, this analysis must nonetheless focus on the date of the hypothetical negotiation, namely when infringement began, which in this case is 1999. LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 75 (Fed. Cir. 2012).[2] The filing date of an eventual patent infringement lawsuit is irrelevant to what the parties would have agreed to on the date of the hypothetical negotiation. See id. Furthermore, because the reasonable royalty analysis focuses on the hypothetical negotiation occurring at a certain time (in this case 1999), any later damages that Briggs claims could have been avoided but for the alleged delay in filing suit are irrelevant. Evidence of alleged prejudice resulting from delay properly is heard in regards to the equitable issues of estoppel and laches, not the primary damages case.

### c. Evidence of Alleged Delay and Prejudice is Irrelevant to Willful Infringement

The determination of willful infringement involves two distinct analyses. With respect to the first "objective prong" of the analysis, the court must determine as a matter of law whether "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., 776 F.3d 837, 844 (Fed. Cir. 2015) (quoting In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc)); Carnegie Mellon Univ. v. Marvell Tech. Group, No. 14-1492, 2015 U.S. App. LEXIS 13622, at *36 (Fed. Cir. Aug. 4, 2015). "The state of mind of the accused infringer is not relevant to this objective inquiry." Id. With respect to the second "subjective prong" of

---

[2] Pursuant to 35 U.S.C. § 286, Exmark is only seeking damages for Briggs' infringement occurring within six years prior to the filing of this lawsuit.

8

the analysis, the jury must make a factual determination of whether the objectively-defined risk "was either known or so obvious that it should have been known to the accused infringer." Id.

*When* a patentee files suit for infringement and any alleged prejudice as a result of alleged delay are not objective bases for evaluating the risk of either infringement (as described above) or validity. See Ill. Tool Works, Inc., 946 F. Supp. 2d at 1045. Indeed, "the laches defense is not pertinent to objective willfulness." Id. At most, delay in filing suit may in some cases have marginal relevance to the state of mind of the alleged infringer, but "the state of mind of the accused infringer is not relevant to [the] objective inquiry." Bard Peripheral Vascular, Inc., 776 F.3d at 844 (quoting In re Seagate Tech., LLC, 497 F.3d at 1371).

The timing of a patent infringement suit and any alleged prejudice from any delay do not speak to the subjective prong of the willfulness analysis either, particularly at the time when the infringer began its infringing activity. As the Supreme Court noted with respect to copyright law, one need not immediately sue on every actionable infringement, especially before one appreciates whether such infringement affects one's business. Petrella, 134 S. Ct. at 1965-66. The Federal Circuit likewise has recognized "extent of infringement" as a justification for waiting to file suit. Aukerman, 960 F.2d at 1033. Thus, during the early stages of infringement, alleged delay in filing suit does not credibly speak to the infringer's state of mind. Similarly, damages that might have been avoided but-for the alleged delay has no bearing on an infringer's state of mind.

The lack of relevance of alleged delay to Briggs' state of mind is particularly clear given that Briggs has presented no evidence that it believed the '863 patent was invalid or not infringed prior to the filing of this lawsuit. This is not surprising considering that *Briggs denies it knew about the '863 patent prior to being sued*. (Dkt. No. 317-24, Briggs Interrog Resp. at 6-7; Dkt.

No. 317-14, Wenzel Dep. Tr. at 125:17-22.) Having made this contention, Briggs cannot credibly claim that because it had not been sued for infringement with respect to the '863 patent it subjectively believed the '863 patent was either not infringed or invalid. It might be a different case when an infringer asserts that they knew about the patent and they relied on the fact that the patentee had not sued them on that patent. Those are not the facts of this case. Any argument, evidence, or testimony presented by Briggs regarding alleged delay and alleged prejudice is simply not probative of Briggs' subjective state of mind with respect to the '863 patent.

### 2. Evidence of Alleged Delay and Prejudice Should Be Excluded Pursuant to Rule 403 for Being Unfairly Prejudicial to Exmark and Misleading, Confusing, and a Waste of Time for the Jury

Even if alleged delay in filing suit and resulting prejudice were relevant to the issues that must be decided by the jury, the relevance of these considerations to infringement, damages, and willfulness would be marginal at best. The Court already has stated in its summary judgment Order that "the defenses of laches and waiver are inapplicable" in this case (Dkt. No. 476, Summ. J. Order at 2), indicating that it is comfortable deciding Briggs' equitable defenses without advisory input from the jury. Additionally, for the reasons stated above, evidence of alleged delay in filing suit and resulting prejudice are not primary elements, nor are they even typical considerations involved in the infringement, damages, and willfulness analyses. Any marginal value of such evidence would be substantially outweighed by the unfair prejudice to Exmark, and the probability that such considerations would confuse, mislead, and waste the time of the jury. Evidence of alleged delay and resulting prejudice should thus independently be excluded pursuant to Federal Rule of Evidence 403.

If evidence of alleged delay and prejudice were allowed to be presented to the jury, it would greatly lengthen the trial so that additional evidence relevant only to laches could be

presented. For example, if such evidence is allowed, Exmark must be allowed to present evidence that the alleged delay is excused and/or reasonable. See A.C. Aukerman, 960 F.2d at 1038. This would require delving into, among other things, the many other infringers that have infringed the '863 patent over the years and the reasons that Exmark did not engage earlier in a lengthy, expensive and time consuming campaign to stop the industry-wide infringement. (Dkt. No. 394, Exmark's Opp. to Briggs' Laches Br. at 16-23, 38-39.) Exmark also would have to present evidence that Briggs did not suffer any prejudice as a result of the alleged delay in filing suit. This would entail an explanation of how, among other things, Briggs did not make significant capital investments specific to the flow control baffles that are the focus of this lawsuit, and contrary to Briggs' assertion, important witnesses such as Mr. Baumbach, are not missing at all. (See id. at 45-51.) Exmark would also then need to show that Briggs' own culpability, such as its willful infringement of the '863 patent, negates any possible finding of prejudice to Briggs or any effect on infringement, damages, and/or willfulness. Aukerman, 960 F.2d at 1034; (Dkt. No. 394, Exmark's Opp. to Briggs' Laches Br. at 52-56).

All of this evidence would be unfairly prejudicial to Exmark and very confusing and misleading to the jury in that it would give the impression that equitable issues rightly play a role in the liability and damages issues it must decide. Evidence surrounding the alleged delay and prejudice also would be a waste of time for the jury given that such evidence would at best have marginal relevance to the issues it must decide—such evidence rightly should only be heard as part of Briggs' laches defense, which is an equitable issue to be decided by the Court. A.C. Aukerman, 960 F.2d at 1028.

**EXMARK MANUFACTURING CO., INC.**

By its attorneys,

Dated: August 7, 2015

   s/ J. Derek Vandenburgh
J. Derek Vandenburgh (admitted *pro hac vice*)
Joseph W. Winkels (admitted *pro hac vice*)
Alexander S. Rinn (admitted *pro hac vice*)
CARLSON, CASPERS, VANDENBURGH,
   LINDQUIST & SCHUMAN P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Phone: 612-436-9600
Fax: 612-436-9605
dvandenburgh@carlsoncaspers.com
jwinkels@carlsoncaspers.com
arinn@carlsoncaspers.com

Jill Robb Ackerman (No. 17623)
BAIRD HOLM LLP
1500 Woodmen Tower
1700 Farnam Street
Omaha, NE 68102-2068
Phone: 402-636-8263
Fax: 402-344-0588
jrackerman@bairdholm.com

**Certificate of Service**

I certify that on August 7, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record as follows:

| | |
|---|---|
| J. Derek Vandenburgh | Marc A. Cohn |
| Matthew J. Goggin | Matthew M. Wolf |
| Joseph W. Winkels | James T. Smith |
| Jill R. Ackerman | Charles R. Wolfe |
| Amy DeWitt | Rebecca D. Ward |
| William Louden | Tara M. Marcus |
| Andre R. Barry | John P. Passarelli |

                                    s/ J. Derek Vandenburgh
                                    J. Derek Vandenburgh (admitted *pro hac vice*)
                                    Joseph W. Winkels (admitted *pro hac vice*)
                                    Alexander S. Rinn (admitted *pro hac vice*)
                                    CARLSON, CASPERS, VANDENBURGH
                                        LINDQUIST & SCHUMAN, P.A.
                                    225 South Sixth Street, Suite 4200
                                    Minneapolis, MN 55402
                                    Phone: 612-436-9600
                                    Fax: 612-436-9605
                                    dvandenburgh@carlsoncaspers.com
                                    jwinkels@carlsoncaspers.com
                                    arinn@carlsoncaspers.com