IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING COMPANY INC., | |
| Plaintiff, | 8:10CV187 |
| v. | MEMORANDUM AND ORDER |
| BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC, | |
| Defendant. | |

This matter is before the court on defendant Briggs and Stratton Power Products Group, LLC's ("Briggs's") motion for judgment as a matter of law, remittitur, and for a new trial on damages, Filing No. 654, and for judgment as a matter of law or a new trial on willful infringement, Filing No. 656.[1]

I.     BACKGROUND

This is an action for patent infringement that was tried to a jury on September 8-11, 2015, and September 14-17, 2015. Prior to trial, the court found as a matter of law that Exmark's '863 patent was valid and that defendant Briggs's original mower deck design (versions 1-4) infringed the patent. Filing No. 476, Memorandum and Order at 26-28. The jury was asked to assess damages for that infringement and to determine whether that infringement was willful. It was also asked to determine whether Briggs's redesigned mower deck (versions 5-7) infringed the patent and whether that infringement, if any, was willful. Filing No. 599, Verdict.

---

[1] Also pending is Briggs' Motion for Reconsideration (Filing No. 581) of an order on a motion in limine (Filing No. 565). The matter was addressed at trial and will be denied as moot. See Filing No. 615, T. Tr., Vol. VI at 1011-12.

The jury found the redesigned mower deck did not infringe. *Id.* at 1. It assessed damages in the amount of $24,280,330.00 for infringement in connection with the original mower deck designs and found the infringement had been willful. *Id.* at 1-2.

Briggs first argues it is entitled to judgment as a matter of law on damages because Exmark failed as a matter of law to establish the amount of damages by a preponderance of evidence. It argues that Exmark's damages expert, Melissa Bennis, based her damages opinion on the entire value of an accused mower without apportioning value to the patented flow control baffle feature or establishing that that feature drove customer demand for those products. It contends that establishing those factors is a necessary predicate to determining damages. Alternatively, Briggs contends it is entitled to remittitur or to a new trial on damages. It argues that the jury was precluded from considering certain evidence that would have undermined the damages award; to wit, evidence that Exmark had knowingly allowed fourteen other companies to infringe the '863 patent, and evidence of prior art.

Briggs also argues it is entitled to judgment as a matter of law on willfulness. It challenges the court's finding that Briggs's actions were objectively reckless in that its invalidity defenses were not reasonable. *See* Filing No. 564, Order at 3 (finding as a matter of law that no reasonable litigant could realistically expect Briggs's invalidity defenses to succeed).[2] In this connection, it argues that it presented credible invalidity and noninfringement defenses to the PTO that preclude any finding of objective recklessness.

---

[2] Because the court had already found that the threshold showing of objective recklessness had been established, the jury was asked to determine the subjective prong of the willfulness determination. *See* Filing No. 605, Jury Instructions at 34.

Briggs also argues that it is entitled to judgment as a matter of law on the subjective prong of the willfulness determination because there is no substantial evidence that Briggs knew or should have known that it was infringing a valid claim of the '863 Patent. In this connection, it argues that Exmark "tried to prove that Briggs knew or should have known about the '863 patent, but it did not attempt to show that Briggs knew or should have known that it was infringing a valid claim of that patent." *See* Filing No. 657, Briggs's Brief at 17.[3] Alternatively, Briggs argues it is entitled to a new trial on the subjective prong because the verdict is against the great weight of the evidence so as to constitute a miscarriage of justice. Its argument is based on certain evidentiary rulings that it contends precluded Briggs from presenting evidence of prior art that would have shown that, even if Briggs knew about the patent, it would not have known of an objectively high risk that it was infringing a valid claim.

Relevant facts are set forth in the court's previous orders and in other opinions on post-trial motions and are incorporated herein by reference. *See* Filing No. 565, Memorandum and Order (motions in limine); Filing No. 564, Order (*sua sponte*); Filing No. 477, Memorandum and Order (Daubert motions); Filing No. 476, Memorandum and Order (summary judgment); Filing No. 476 (summary judgment) claim construction); Filing No. 156 (claim construction); Filing No. 687, Memorandum and Order (Laches); Filing No. 689, Memorandum and Order (enhanced damages and attorney fees).

II.  LAW

    A.  Judgment as a Matter of Law/New trial

---

[3] Exmark argues that Briggs failed to preserve any challenge to the subjective prong because Exmark did not raise the issue in its prejudgment motion. Because the court rejects the challenge on the merits, it need not address the issue.

In a patent case, motions for summary judgment and judgment as a matter of law are decided under the law of the regional circuit. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1164 (Fed. Cir.), *cert. denied*, 136 S. Ct. 270 (2015). Pursuant to Fed. R. Civ. P. 50(b), a court must affirm the jury's verdict unless, in viewing the evidence in the light most favorable to the prevailing party, the court concludes that a reasonable jury could not have found for that party. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006). In "reviewing the sufficiency of the evidence, [the] court draws 'all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence.'" *Dean v. County of Gage, Neb.*, 807 F.3d 931, 939 (8th Cir. 2015) (quoting Fed. R. Civ. P. 50(a)(1)). "A Rule 50(a) motion is proper only if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* (quoting Fed. R. Civ. P. 50(a)(1)); *Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002) (en banc)("Such a ruling is appropriate only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party."). A post-trial motion for judgment as a matter of law may be granted only if there was "'a complete absence of probative facts to support the conclusion reached' so that no reasonable juror could have found for the nonmoving party." *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 928 (8th Cir. 2010) (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997)).

A motion for a new trial or amendment of judgment under Fed R. Civ. P. 59 serves the limited function of allowing a court to correct manifest errors of law or fact or allowing a party to present newly discovered evidence. *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 934-35 (8th Cir. 2006). Such motions cannot be

4

used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment. *Id.* Rule 59(e) "provides a means 'to support reconsideration [by the court] of matters properly encompassed in a decision on the merits.'" *Leonard v. Dorsey and Whitney, LLP*, 553 F.3d 609, 620 (8th Cir. 2009). Under rule 59(e), the court may reconsider issues previously before it, and generally may examine the correctness of the judgment itself. *Id.* Under Rule 60, relief from judgment is available under the catch-all provision of the rule, Fed. R. Civ. P. 60(b)(6), "'only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress.'" *Murphy v. Missouri Dept. of Corrections*, 506 F.3d 1111, 1117 (8th Cir. 2007) (quoting *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005)).

New trials based on the weight of the evidence are generally disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred. *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000); *United States v. Anwar*, 428 F.3d 1102, 1109 (8th Cir. 2005) (stating that a district court may weigh the evidence and evaluate for itself the credibility of the witnesses in determining whether a new trial is warranted). A new trial is favored over a remittitur when a court finds that passion or prejudice has influenced a jury's damage award on the theory that such passion or prejudice may also have influenced the jury's determinations in other phases of the trial. *Tedder v. American Railcar Indus., Inc.*, 739 F.3d 1104, 1110-11 (8th Cir. 2014).

### B. Remittitur

A district court's decision to grant or withhold a remittitur is determined under the law of the regional circuit. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013). In the Eighth Circuit, remittitur "is a procedural matter governed by federal, rather than state law." *Taylor v. Otter Tail Corp.,* 484 F.3d 1016, 1019 (8th Cir. 2007) (quoting *Parsons v. First Investors Corp.*, 122 F.3d 525, 528 (8th Cir. 1997)). A court is not at liberty to supplant its own judgment on the damages amount for the jury's findings. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996). In holding that a jury damage award is excessive, an appellate court has two options: (1) to reverse the jury award and order a new trial; or (2) to allow the plaintiff the option of agreeing to a remittitur in a specified amount. *Id.* Under the Federal Circuit's "maximum recovery rule," the court is required "to remit the damage award to the highest amount the jury could 'properly have awarded based on the relevant evidence.'" *Id.* (quoting *Unisplay, S.A. v. American Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995)).

### C. Damages

Upon a finding of infringement, title 35 envisions the award of damages adequate to compensate the patentee for infringement, but in no event less than a reasonable royalty. 35 U.S.C. § 284 (1994). The patent owner bears the burden of proving this amount. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). "Damages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015)

(quoting *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)). "This principle—apportionment—is 'the governing rule' 'where multi-component products are involved.'" *Id.* Consequently, to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014).

The Federal Circuit Court of Appeals recognizes that under this apportionment principle, there may be more than one reliable method for estimating a reasonable royalty. *Commonwealth Sci. & Indus. Research Org.*, 809 F.3d at 1301. An infringer may be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement. *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1383 (Fed. Cir. 2004).

        D.    Willfulness

To prove willfulness, a patent holder must make two separate showings by clear and convincing evidence: (i) that the infringer acted in spite of an objectively high risk of infringing a valid claim (the objective prong); and (ii) that the infringer knew about this risk or that the risk was so obvious that it should have known (subjective prong). *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). "Proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *Id.* The objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1006-07 (Fed. Cir. 2012) ("Bard II"). "Only if the patentee establishes this 'threshold objective standard' does the inquiry then move on to whether 'this

objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.'" *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 776 F.3d 837, 844 (Fed. Cir.), *cert. denied*, 136 S. Ct. 189 (2015) ("*Bard III*") (quoting *Seagate*, 497 F.3d at 1371). "Objective recklessness will not be found where the accused infringer has raised a 'substantial question' as to the validity or noninfringement of the patent." *Id.* (quoting *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010).

### III. DISCUSSION

#### A. Damages

For the reasons stated in its earlier ruling, the court finds Exmark's damages expert, Melissa Bennis, testified in accordance with methodology accepted under Federal Circuit precedent. Filing No. 477, Memorandum and Order at 13-14. She employed a rigorous factual and quantitative analysis of reasonable royalty damages. Ms. Bennis concluded that a reasonable royalty for infringement in this case would be 5% of revenues on Briggs's accused lawn mowers, apportioning 95 cents of every dollar of such revenue to features not claimed in Exmark's '863 patent. The jury considered Ms. Bennis's opinion, as well as the opinion of Briggs's damages expert, together with all the other evidence presented at trial, and agreed with Ms. Bennis that a reasonable royalty for infringement in this case would be 5% of revenues of Briggs's accused lawn mowers.

The court finds the jury's finding on damages is amply supported by evidence adduced at trial. Ms. Bennis analyzed a hypothetical negotiation using the *Georgia*

*Pacific* framework.[4] She considered, inter alia, the importance of the invention to Exmark and Briggs, the competitive relationship between Exmark and Briggs, the licensing policy and history of Exmark, the sales and profitability of Exmark and Briggs, the lowering of prices to Brickman, and the accounting of non-patented features in Briggs's mowers.

Briggs presented evidence of the cost of its redesign to the jury and the jury apparently rejected the argument that the cost of redesign represented an appropriate measure of damages. The jury apparently rejected that theory. Further, Briggs did not show that it had a non-infringing alternative available at the time of the hypothetical negotiation, which would have occurred in 1999. The fact that Briggs redesigned its mowers in 2010 has little relevance to the damages analysis, which revolves around a hypothetical negotiation that would have occurred in 1999. The jury reasonably inferred that no non-infringing alternative was available in 1999, since Briggs opted to use the infringing design at that time. That inference is buttressed by the fact that the redesign process Briggs employed in 2008 did not produce any such non-infringing alternative.

The court finds the greater weight of evidence at trial supports a 5% reasonable royalty rate as an appropriate measure of damages in this case. Evidence supports the conclusion that the patented technology was important to both Exmark and to Briggs, because it directly affected the quality of cut provided by lawn mowers, increased productivity, and even improved the function of other features in a lawn mower such as preventing the blades from getting bogged down in heavy grass. Also, the testimony of

---

[4] *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) (setting out fifteen factors that frame the reasonable royalty analysis); Filing No. 477, Memorandum and Order at 8 n.1.

other witnesses' testimony supported the factors under the *Georgia Pacific* framework. Dr. Bennis was capably cross-examined on her theory. The jury was presented with an alternative methodology through the testimony of Briggs's damages expert, but apparently rejected that theory. Viewing the evidence in the light favorable to the verdict, the court finds that the jury reasonably could have rejected Briggs's expert's testimony. There was evidence that Exmark would not have accepted Briggs's proposed royalty in a hypothetical negotiation.

For the same reasons as stated in this court's earlier order on Briggs's *Daubert* motion, the court rejects Briggs's "entire market value rule" argument. *See* Filing No. 477, Memorandum and Order at 8-11, 13. The claimed benefits of the invention—improved cutting performance, a reduction of blowout, a more uniform discharge, and a faster cut with less engine demand—all go right to the heart of the purpose and function of the accused product.

Briggs has not shown that the jury's damages award is in any way monstrous or shocking. Briggs arguably enhanced its sales of mowers for a number of years through the infringing conduct. The jury awarded Exmark roughly $250 per mower and the evidence establishes that Briggs earned a considerably larger profit than that on every mower it sold. Exmark, meanwhile, was deprived of the opportunity to reap the benefits of its invention as an exclusive feature enabling it to earn a premium by virtue of the improved performance of the mower.

The court also finds Briggs's motion for a new trial on damages should be denied. The motion is premised on the court's evidentiary rulings. The first involves the laches defense as relevant to the issue of damages. For the reasons stated in earlier

orders and on the record at trial, the court rejects Briggs's argument that it should have been allowed to present evidence of other infringers and to argue that Exmark's failure to sue those other alleged infringers somehow diminished the Exmark's perceived value of its invention. *See* Filing No. 565, Memorandum and Order at 4; Filing No. 615, T. Tr., Vol. VI at 1011-12; Filing No. 612, T. Tr., Vol. III at 344-54. To adopt that argument would mean that foregoing suit essentially grants an implied license, with a royalty of zero, to the suspected infringer.

The court finds there are many reasons to forego a lawsuit, not the least of which is extraordinary expense. It is reasonable to forego a lawsuit because the costs of litigating to a successful conclusion would far exceed the benefits obtained in such a suit. The purported evidence would have been of little relevance in any event since the record shows that other alleged infringers were not major competitors of Exmark. Also, there is no evidence that the other competitors were actually infringing, as opposed to being suspected of infringing. The record also showed that Exmark did not license the technology to any competitors. There is no support for the argument that Exmark had willingly accepted a zero-dollar royalty by allowing other manufacturers to infringe.

The exclusion of evidence relating to other non-infringing alternatives was also appropriate because there was no showing that those alternatives would have been available at the time of the hypothetical negotiation at issue. It was also appropriate to exclude evidence of prior art because it was not relevant to whether Briggs knew or would have known Exmark's patent was valid, and risked relitigation of validity issues. *See* Filing No. 564, Order at 2-3; Filing No. 565, Memorandum and Order at 5-8. Also Briggs has not shown that the admission of all of the challenged evidence would have

been likely to produce a different result. Accordingly the court finds Briggs's motion for a new trial on damages should be denied.

B. Willfulness

For the reasons stated in its earlier order, the court first reaffirms its findings on the objective prong of the willfulness test. *See* Filing No. 564, Order at 1-3. Under the standards announced in *Bard III*, 776 F.3d at 844, the court finds that Briggs's position is not susceptible to a reasonable conclusion that the patent was invalid or was not infringed. The mere fact that Briggs initially succeeded in part before the PTO, only to be reversed by the Patent Appeals Board, does not show that its position was reasonable. To have had a reasonable chance of prevailing on its defenses, Briggs would have had to raise new evidence or theories that were not considered by the PTO or in the court's earlier orders. Briggs's argument remains unchanged and there is still no substantial evidence that the patent is invalid on grounds of obviousness or indefiniteness.

This action involves a patent that has been examined four times by the PTO. The validity of the patent was not a close call. Briggs could not establish an invalidity defense based on obviousness or indefiniteness in PTO proceedings, even with the benefit of no presumption of validity, a lower standard of proof, and a broader claim construction. Accordingly, the court finds Briggs did not raise a substantial question as to the validity or noninfringement of the patent. On this extensive record, no reasonable litigant could have realistically expected these defenses to succeed, so as to preclude a finding of objective recklessness.

Briggs also challenges the jury's finding on the subjective prong of the willfulness analysis. The court finds that the jury's finding of willful infringement is well supported by the evidence. The jury was instructed to determine whether there was clear and convincing evidence that "an unjustifiably high risk of infringement was known to Briggs or was so obvious that it should have been known to Briggs." Filing No. 605, Jury Instructions at 34.

Briggs now attempts to parse the distinction between knowledge of the '863 patent and knowledge of potential infringement of the valid claims of the '863 patent. It argues that Exmark "ignored the invalidity side of the coin, as it failed to provide any evidence that Briggs knew or should have known that it was infringing a valid claim of the '863 Patent." Filing No. 657, Briggs's Brief at 14. The court finds this is a distinction without a difference. In the context of the entire trial, it was clear that the issue was infringement of certain claims of the '863 patent—those involving the mower deck flow-control baffles.

Further, the validity of the claims was not at issue. As discussed above, the court had already ruled that Briggs's defenses were not objectively reasonable. Filing No. 564, Order. A patent, of course, is presumed valid. 35 U.S.C. § 282. The court had earlier denied Briggs's motion for a summary judgment of invalidity and granted Exmark's opposing motion. Filing No. 476, Memorandum and Order at 27-30 (stating that "no reasonable jury could find that the defendants have met their burden of proving either anticipation, obviousness, or indefiniteness by clear and convincing evidence" and finding Exmark's motion for a finding of no invalidity should be granted and the defendants' motions for a summary judgment of invalidity based on indefiniteness

should be denied). The court also denied Briggs's motion for reconsideration of the issue. Filing No. 566, Order at 3. Prior to trial, Briggs argued that prior art was relevant to whether Briggs knew or should have known the '863 patent was valid. Filing No. 496, Exmark Motion; Filing No. 514, Briggs's Opposition to Exmark's Fourth Motion in Limine at 5-6. The court rejected that argument. *See* Filing No. 565, Memorandum and Order at 5-6.

There is a wealth of evidence that supports the jury's determination. The evidence strongly suggests that Briggs copied Exmark's baffles. Further, the evidence shows that Briggs either knew about Exmark's '863 patent or willfully ignored Exmark's patent markings, literature and other evidence of the existence of the '863 patent. Not only was the Briggs original baffle design strikingly similar to that in Exmark's Lazer Z product, it is virtually identical to the preferred embodiment of the patent. Any reasonable business person looking at the accused original Briggs design and Exmark's patent would have concluded that the copying created a serious risk of infringement. Importantly, the record shows that the president of Briggs's predecessor corporation, Ferris Industries, testified in the Scag litigation. The court discredits the testimony that he was not aware of the flow control baffle patent. Also, Briggs's appreciation of the importance of the flow control baffle configuration to improved cut quality is shown by the emphasis on that quality in the materials promoting its iCD system. *See* Filing No. 689, Memorandum and Order (on enhanced damages and attorney fees).

The evidence shows that Ferris/Briggs was aware of the Scag litigation and the evidence shows the risk of infringement was particularly high after 2004, when the PTO had reexamined and confirmed the validity of Exmark's patent and resolved all the

issues raised in Scag. The fact that the Scag litigation resulted in a settlement and a decision by Scag to redesign its mower deck would have highlighted the existence of a risk to any reasonable person.

The court further finds that Briggs has failed to satisfy the heavy burden of showing that it is entitled to a new trial on willfulness based on the court's evidentiary rulings. The court rejects Briggs's argument that the court erred in granting Exmark's motion in limine to exclude invalidity evidence. The court finds that evidence is not relevant, first because Briggs's invalidity defenses are not objectively reasonable in the context of the history of the case; and second, because prior art does not establish that Briggs would have had a reasonable belief that the patent was invalid. Further, even if relevant, the evidence of prior art would have had little probative value. Also, Briggs is not able to show the admission of the evidence would have made any difference to the result.

Nor can Briggs show that prior art should have been admitted to rebut Exmark's evidence of copying by showing that "coincidences happen." There was no evidence that Briggs's witnesses had any knowledge of the prior art and even if they did, the evidence would be of little probative value. Absent any evidence that Briggs knew of and relied on the prior art in arriving at its design, prior art does not rebut the coincidence established by the evidence—that Briggs arrived at the same design right after acquiring Exmark's mower. Briggs has not shown any miscarriage of justice so as to warrant a new trial on willfulness. Accordingly, the court finds Briggs's motion for a judgment as a matter of law or new trial on willfulness should be denied.

IT IS HEREBY ORDERED:

1. Defendant Briggs and Stratton Power Products Group, LLC's motion for judgment as a matter of law, remittitur, and for a new trial on damages (Filing No. 654) is denied.

2. Defendant Briggs and Stratton Power Products Group, LLC's motion judgment as a matter of law or a new trial on willful infringement (Filing No. 656) is denied.

3. Defendant Briggs and Stratton Power Products Group, LLC's motion for reconsideration (Filing No. 581) of an order on a motion in limine (Filing No. 565) was addressed at trial and is denied as moot.

DATED this 11th day of May, 2016.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge