IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING COMPANY INC., | 8:10CV187 |
| Plaintiff, | |
| vs. | MEMORANDUM AND ORDER |
| BRIGGS & STRATTON POWER PRODUCTS GROUP, LLC, | |
| Defendant. | |

This matter is before the court on Exmark's motions for enhanced damages and for attorney fees. Filing Nos. 646 and 648.[1]

This action was tried to a jury on September 8-11, 2015, and September 14-17, 2015, resulting in a compensatory award to the plaintiff for patent infringement in connection with Briggs's original mower deck in the amount of $24,280,330 and a finding of willful infringement. See Filing No. 599, Verdict.

I. FACTS

Facts recited in the court's opinions on other post-trial motions are incorporated herein and need not be repeated. See Filing No. 687, Memorandum and Order (laches) at 1-11; Filing No. 688, Memorandum and Order at 1-3 (judgment as a matter of law on damages and willfulness). The record supports the jury's finding of willful infringement.

There is evidence that suggests that Briggs copied Exmark's design. See, e.g., Filing No. 611, T. Tr., Vol. II at 210-12; T. Ex. 36 (Engineering change form); Filing No.

---

[1] Also pending is Briggs's motion for reconsideration, Filing No. 581, of the court's order granting Exmark's motion in limine, Filing No. 565. That motion was ruled on at trial and will be denied as moot. See Filing No. 615, T. Tr., Vol. VI at 1012.

614, T. Tr., Vol. V at 965. Testimony adduced at trial suggests Dale Baumbach, then Ferris's acting engineering manager, instructed its technician to modify its mower deck as shown in a sketch that is strikingly similar to Exmark's Lazer Z mower deck, shortly after he had observed flow control baffles on Exmark's mower. See Filing No. 615, T. Tr., Vol. VI at, 1073; Filing No. 616, T. Tr., Vol. VII at 1500-01; T. Ex. 521, Marshall Dep. at 54, 59, 62-64, 124-25; T. Ex. 9, Exmark deck; T. Ex. 42, Baumbach sketch. A change order was subsequently issued, ostensibly intended to "improve cut quality." Filing No. 611, T. Tr., Vol. II at 210; T. Ex. 36. There is no evidence to suggest that Baumbach obtained the idea from any other source than the Exmark Lazer Z, and Briggs had an Exmark Lazer Z in its possession in 1996. See Filing No. 615, T. Tr., Vol. VI at 1073.

The head of Briggs's commercial lawn mower business, Philip Wenzel, testified that its predecessor corporation, Ferris, had an Exmark mower in its possession in 1996 and Wenzel and his technical engineer personally drove the mower and observed the flow-control baffles on the mower. Filing No. 615, T. Tr., Vol. VI at 1073; Filing No. 616, T. Tr., Vol. VII at 1500. Shortly thereafter, its designer produced a sketch of a redesigned mower deck strikingly similar to Exmark's. See T. Exs. 9 and 42. The modification was implemented to improve cut quality. Filing No. 611, T. Tr., Vol. II at 210; T. Ex. 36. Even Briggs's own witnesses conceded it was "possible" there was copying. Filing No. 614, T. Tr., Vol. V at 965 (Philip Wenzel testimony); Filing No. 615, T. Tr., Vol. VI at 1072 (Philip Wenzel testimony); Filing No. 616, T. Tr., Vol. VII at 1508 (John Marshall testimony).

2

Though the '863 patent had not been issued in 1996, Wenzel testified that he knew that obtaining a patent can take years. Filing No. 615, T. Tr., Vol. VI at 1092. He stated that it is not enough for a company to check for a patent if it copies a design, it must also check for later-issued patents. *Id.* at 1092-93. Although Wenzel testified that Briggs (then Ferris) had a policy of performing patent clearances on new product designs prior to their introduction, it presented no evidence that it conducted any sort of patent clearance relative to its infringing flow control baffles or the mowers they were employed on. *Id.* at 1043-48. He characterized Ferris's patent clearing practices was flawed for not doing so. *Id.* at 1093.

Briggs later possessed at least four Exmark mowers that were marked with patent numbers, as well as Exmark brochures referring to "patented flow control baffles. Filing No. 615, T. Tr., Vol. VI at, 1093-98, 1123-34. Wenzel stated that Briggs knew that companies in the industry mark their products with patent numbers and that the reason they do so is to notify competitors of their patent rights. *Id.* at 1090-91. Two Briggs employees—Mr. Wenzel and Mr. Marshall—admitted seeing Exmark patent markings on Exmark mowers in Briggs' possession. Filing No. 615, Trial Tr. vol. VI at 1099; T. Ex. 521, Marshall Dep. Tr. at 139-41. Wenzel testified that Briggs should have known about Exmark's '863 patent. *Id.* at 1138-39.

Wenzel was deposed in the Scag case in May, 2002. Filing No. 615, T. Tr., Vol. VI at 1139-40; 1147-49; Filing No. 392-20, Index of Evid., Ex. 32, *Toro V. Scag,* No. 01cv279 ("Scag litigation"), Wenzel Dep. Tr. One of Scag's lawyers represented Wenzel at the deposition. Filing No. 615, T. Tr., Vol. VI at 1147-49. He also stated he

3

was shown drawings from one of the patents in the lawsuit before his deposition. Filing No. 614, T. Tr., Vol. V at 974-79.

Briggs continued to market and sell infringing mowers until 2014, four years after this suit was filed.

This court found Briggs's noninfringement arguments with respect to the original mower designs were "meaningless, contrary to the court's claim construction, and presented a strained and nonsensical reading of the asserted claims." Filing No. 476, Memorandum and Order at 28. In opposition to Exmark's motion for summary judgment on the infringement issue, Briggs admitted that the infringing products met every limitation of claim 1 except for the requirement that the front flow control baffle "extends away from" the closed side wall. Filing No. 374, Briggs's Brief at 16-19.

The record shows the patent was examined and found valid three times after it was issued in 1999. *See* T. Ex. 1, "863 Patent at 12-14. Briggs continued to contest validity and contests validity to this day. Filing No. 644, Laches Proc. Tr., Vol. II at 273. It continued to sell out its infringing inventory well into 2014. Filing No. 615, T. Tr., Vol. VI at 1189-90; T. Ex. 523; Filing No. 644, Laches Proc. Tr., Vol. II at 277.

There is evidence that Briggs used Exmark's patent to sell mowers and take business away from Exmark. Filing No. 613, T. Tr., Vol. IV at, 688-91; T. Exs. 299, 311, 313, 314, 323. Wenzel told Briggs's distributors not to make a big splash" regarding mulching products because "Toro is aggressively pursuing legal action on . . . 'questionable patents'" referring to the Scag litigation). Filing No. 615, T. Tr., Vol. VI at 1077-78.

Exmark has presented evidence that Briggs and Stratton Power Products Group LLC has annual revenues of over $700 million, and an annual gross profit in excess of $85 million. Filing No. 647-2, Affidavit of Alexander S. Rinn, Ex. 1, 2015 Briggs and Stratton Annual Report at 18. The defendant is a wholly owned subsidiary of the Briggs and Stratton Corporation that publicly reports annual revenues in excess of $1.85 billion and gross profit in excess of $345 million. *Id.*; *see* Filing No. 60, Corporate Disclosure Statement.

II. LAW

A. Enhanced damages

In a patent infringement case, the Court "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The decision whether to grant enhanced damages as allowed under 35 U.S.C. § 284 requires a two-step process. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 37 (Fed. Cir. 2012). "'First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances.'" *Id.* (quoting *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996)).

A finding of willful infringement satisfies the culpability requirement and is sufficient to meet the first requirement to increase a compensatory damages award. *Id.*; *see Johns Hopkins Univ. v. Cellpro, Inc.,* 152 F.3d 1342, 1364–65 (Fed. Cir. 1998). "A finding of willfulness does not require an award of enhanced damages; it merely permits it." *In re Seagate Technology, LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc)

5

(noting that "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness.")  However, once willful infringement is found, it is an abuse of discretion to deny an award of enhanced damages without providing a justification for doing so.  *Whitserve,* 694 F.3d at 37.

Enhanced damages for willful infringement are punitive in nature, not compensatory.  *Whitserve,* 694 F.3d at 37.  Hence, the fact that the patentee may have received "complete compensation" from the jury for the infringement should not influence the decision of whether to award enhanced damages.  *Id.*

In deciding how much to enhance damages, a court considers the factors outlined in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826–28 (Fed. Cir. 1992).  These factors include:  (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of defendant's misconduct; (7) the remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.  *Id.* at 827.

### B. Attorney fees

Under patent law, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Courts may, but are not required to, award reasonable attorney fees in "exceptional" cases.  *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014). "An

'exceptional' case is one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. Litigants need only establish their entitlement to fees by a preponderance of evidence. *Id.* at 1758. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 1756. Though there is no precise rule or formula for making these determinations, courts can consider a nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* at 1756 & n.6.

III. DISCUSSION

A. Enhanced Damages

Exmark seeks an award of enhanced damages under 35 U.S.C. § 284. It seeks a meaningful or substantial enhancement and an award of its reasonable attorney fees. It argues that enhancement is necessary so as not to reward Briggs for its willful infringement and for causing years of expensive and time-consuming litigation. In opposition, Briggs first contends the court should find no willfulness as a matter of law as set forth in its motion for judgment as a matter of law on willfulness. *See* Filing No. 656, Motion; Filing No. 657, Brief. Next, Briggs argues that an award of enhanced damages would be unwarranted and manifestly unjust.

The court finds that application of the *Read* factors shows that enhanced damages are warranted. Exmark presented strong evidence of deliberate copying. And

7

Briggs presented no evidence as to where, other than in Exmark's product, it would have obtained the idea for such a flow control baffle. Wenzel also testified that he knew that obtaining a patent could take years, and testified that Ferris's alleged patent-checking process was flawed for failing to check for later-obtained patents. He admitted it was possible there had been copying.

There is evidence that Briggs knew of the patent by virtue of the patent numbers on the Exmark mowers and language in Exmark brochures in its possession. There is no evidence that Briggs conducted any good faith investigation into the scope of the '863 patent or formed any good faith belief regarding alleged invalidity or noninfringement. Most importantly, the court finds Briggs was aware of the '863 patent including the claims relating to flow-control baffles by virtue of Wenzel's participation in the Scag litigation. Wenzel testimony to the effect that he was not aware of the '863 patent although he was deposed in the Scag litigation defies credulity. He admitted that Scag's lawyers represented him and that he was shown drawings from one of the patents in preparation for his deposition.

The evidence suggests that Briggs actually knew of the patent or was at least willfully blind to its existence. There is no question that Briggs's original baffle design presented an objectively high risk of infringement and the evidence shows that Briggs continued to sell the mowers for years after suit was filed. For the reasons stated in its order denying Briggs's motion for judgment as a matter of law or a new trial on willfulness, the court finds the jury's finding of willful infringement is amply supported by the evidence. Briggs's conduct has been shown to be reckless at the least.

The factor of litigation behavior also favors enhancement. In this litigation, Briggs vigorously disputed that its original designs infringed the patent, despite the fact that the designs are strikingly similar to the preferred embodiment in the patent. Briggs proposed strained claim constructions and argued meaningless distinctions in an attempt to avoid a finding of infringement. Briggs continued to assert that the original baffle design did not infringe—a position that became particularly untenable after the Court's claim construction order on November 29, 2011.

Briggs contested the validity of Exmark's patent throughout the litigation in spite of several PTO reexaminations finding it was valid. Briggs's conduct also prolonged the litigation. Briggs chose to wait more than two years after suit was filed, until fact discovery and expert reports were completed, to challenge Exmark's patent in reexamination. The reexaminations that resulted in a stay of this case took an additional two years, after which Briggs insisted on presenting new invalidity theories, resulting in additional delay. Briggs continues to maintain that the patent is invalid. The court finds that neither the validity issue nor infringement with respect to the original product design were close questions.

The duration of the infringement also favors the enhancement. The infringement began in 1999, when the patent was issued and continued until 2014—four years after this action was filed. In the interim, Wenzel had been deposed in the Scag case and must have been aware of the objective risk of infringing. Exmark is statutorily precluded from recovering damages prior to May 2004. Briggs has received the benefit of the statutory six-year limitation period.

Also, although Briggs ultimately changed its infringing design, it did so reluctantly and belatedly. Moreover, although the jury found that it did not infringe, Briggs's redesign was not unquestionably outside the scope of the patent, like Scag's redesign had been. The issue of alleged infringement with respect to the redesign presented a close question that had to be resolved by a jury.

There is also some evidence, though weak, that Briggs attempted to "conceal" its behavior by instructing distributors not to "make a big splash" regarding mulching products. Briggs's size and financial condition also favors an award of enhanced damages. The evidence shows that the named defendant is able to pay an enhanced award.

On the whole, the court finds that an analysis of the *Read* factors favors enhancing damages in this case. Generally speaking, Briggs's defenses to the claims of infringement were not reasonable and it has been found to be a willful infringer. Although the court is authorized to award damages of up to triple the amount of the compensatory award, the court finds that an award equal to the jury's award of damages is sufficient to serve the purposes of the enhanced damages provision of the statute. This award doubles the plaintiff's recovery. In connection with this determination, the court notes that Briggs was successful on the infringement allegation with respect to the redesigned mowers.

  B. Attorneys' Fees

Exmark requests that the Court award it 50% of its attorney fees incurred prior to June 1, 2015, and 90% of its attorney fees incurred thereafter. It estimates that the value of such a fee award at the present time would be approximately $3.5 million,

which is about 60% of the roughly $5.9 million in total fees it incurred, and states it will provide documentation to support any award under Local Rule 54.3 (a) at a later date.

Briggs argues that attorney fees should not be awarded because this is not an exceptional case. Alternatively, it proposes that, if fees are awarded, the award should be limited to half of what Exmark has allotted to this case versus the *Schiller* case—*i.e.,* 25% of its fees before July 1, 2015 and 45% thereafter. It also argues that any such award should exclude fees for prosecuting the reexamination, responding to Briggs's laches defense, and defending the second Rule 30(b)(6) deposition of Mr. Benson. It contends such an award would reflect the degree to which Exmark prevailed at trial.

The court finds Exmark has not shown by a preponderance of evidence that this case is exceptional so as to warrant an award of fees. Although Briggs's continued denial of infringement with respect to its original designs and continued assertions of invalidity undoubtedly contributed to delay and added to the costs of litigation, such conduct in a patent or commercial litigation case does not stand out from other cases with respect to the substantive strength of litigating position in terms of the law and the facts, or the manner of litigating. In this court's experience, unreasonable claim constructions, prolix pleadings, positions that strain credulity, flawed theories, and incorrect or unsupported arguments are the norm and not the exception in a hotly contested, high-stakes patent or commercial litigation case. The court cannot say that Briggs's contentions were vexatious, frivolous, offensive, or improper. Losing a case does not make the case exceptional. Both parties contributed to delaying and overcomplicating the litigation and both parties succeeded on some of their claims.

Accordingly, under the totality of circumstances, the court finds Exmark's motion for attorney fees should be denied.

IT IS ORDERED:

1. Exmark's motions for attorney fees and enhanced damages ([Filing No. 646](#)) is granted with respect to enhanced damages and denied with respect to attorney fees.

2. A judgment for enhanced damages in the amount of $24,280,330.00 will issue this date.

DATED this 11th day of May, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge