IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

EXMARK MANUFACTURING
COMPANY INC.,

        Plaintiff,

vs.

BRIGGS & STRATTON
CORPORATION,

        Defendant.

8:10CV187

MEMORANDUM AND ORDER

This matter is before the court on Plaintiff's motion to enforce the court's scheduling order. ([Filing No. 768](#)). Specifically, Plaintiff moves for an order prohibiting Defendant from enforcing allegedly improper third-party subpoenas served on MTD Products, Inc. ("MTD") and Husqvarna Professional Products, Inc. ("Husqvarna"). For the reasons stated below, Plaintiff's Motion will be granted.

BACKGROUND

The case was previously tried before a jury, with equitable defenses tried before the court. A verdict was entered against Defendant. Defendant appealed. The judgment was vacated by the United States Court of Appeals for the Federal Circuit, and the case was remanded for further proceedings consistent with the appellate decision.

Upon remand from the Federal Circuit, the court granted the parties' joint request and entered a scheduling order permitting limited additional discovery. ([Filing No. 709](#); [Filing No. 710.](#)) Specifically, as relevant to the pending motion, the scheduling order set an April 13, 2018 deadline for the parties to "supplement

document production and written discovery responses relevant to the Georgia-Pacific factors" as to "facts arising since the close of fact discovery." ([Filing No. 709, at CM/ECF p. 1-2](); [Filing No. 710.]()) It set a May 11, 2018 deadline to depose one 30(b)(6) witness per party regarding the supplemental discovery. ([Filing No. 709](), at CM/ECF p. 2; [Filing No. 710.]()) The Georgia-Pacific factors, which govern the permitted scope of the permitted supplemental discovery, include:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

[Georgia-Pacific Corp. v. U.S. Plywood Corp.,](#) 318 F.Supp. 1116, 1120 (1970).

Additionally, under the post-remand scheduling order, Plaintiff's Supplemental Expert Report of Melissa A. Bennis was due on or before June 1, 2018; Defendant's Rebuttal Expert Report of John R. Bone was due on or before

June 29, 2018; and the deadline for completing expert depositions was July 20, 2018. ([Filing No. 709, at CM/ECF p. 2](), [Filing No. 710.]())

Plaintiff and Defendant supplemented their Georgia-Pacific-related responses in April of 2018. Plaintiff's supplemental production included: 1) a January 1, 2018 Settlement Agreement and Cross-License Agreement and Covenant Not to Sue, entered into by Toro and Plaintiff with MTD; and 2) an April 1, 2018 Settlement Agreement entered into by Toro and Exmark with Husqvarna. The above-referenced agreements "settled separate lawsuits with each of those third parties." ([Filing No. 770, at CM/ECF p. 9]()).

On May 7, 2018 Defendant filed two notices of subpoena on MTD and Husqvarna demanding the following documents.

1. All communications with any Third-Party, including Exmark, regarding the '863 patent, the Settlement Agreement, the License Agreement, or Briggs, including any drafts of the Settlement Agreement and/or License Agreement that were exchanged between you and Exmark.

2. Documents sufficient to identify all Accused Products.

3. Documents sufficient to show the underside of the deck, including the baffle, of each Accused Product.

4. All documents and things constituting, reflecting, or referring or relating to any alteration, change, or modification that you made, are making, or considered making to the design of the lawn mower deck, including the baffles, of any Accused Product arising from the '863 patent or from any allegation of infringement by you of the '863 patent, the reason(s) for such alteration, change, or modification, and all costs of such alteration, change, or modification.

5. All documents and things constituting, reflecting, or referring or relating to customer feedback regarding the Accused Products,

4

including feedback regarding what features and/or technologies are important to consumers when purchasing lawn mowers.

6. All documents and things constituting, reflecting, or referring or relating to the reasonable royalty rate that you believe Exmark was owed as a result of the '863 patent and/or your alleged infringement of the '863 patent.

7. All documents and things constituting, reflecting, or referring or relating to any assessment, analysis, study, forecast, plan, report, valuation, projection, prediction, evaluation, expectation, presentation, proposal, or discussion of the actual or projected monetary value or other indicia of value of the invention(s) disclosed or claimed in the '863 patent.

8. All documents and things constituting, reflecting, or referring or relating to the construction and/or scope of any claims of the '863 patent.

([Filing No. 733-1, at CM/ECF 47-48](#); [Filing No. 733-2, at 25-26](#).) Further, Defendant demanded the following testimony from MTD and Husqvarna:

1. Communications with any Third Party, including Exmark, regarding the '863 patent, the Settlement Agreement, the License Agreement, or Briggs.

2. The Settlement Agreement and the License Agreement, including the parties, terms, and conditions of such agreements, the products subject to such agreements, and the royalties and/or payments made pursuant to such agreements.

3. The research, design, and testing of the lawn mower deck, including the baffles, of all Accused Products.

4. Any alteration, change, or modification that you made, are making, or considered making to the design of the lawn mower deck, including the baffles, of any Accused Product arising from the '863 patent or from any allegation of infringement by you of the '863 patent, the reason(s) for such alteration, change, or

5

modification, and all costs of such alteration, change, or modification.

5. Customer feedback regarding the Accused Products, including feedback regarding what features and/or technologies are important to consumers when purchasing lawn mowers.

6. The reasonable royalty rate that you believe Exmark was owed as a result of the '863 patent and/or your alleged infringement of the '863 patent and the reason(s) for such rate.

7. Any assessment, analysis, study, forecast, plan, report, valuation, projection, prediction, evaluation, expectation, presentation, proposal, or discussion of the actual or projected monetary value or other indicia of value of the invention(s) disclosed or claimed in the '863 patent.

8. The construction and/or scope of any claims of the '863 patent.

(Filing No. 733-1, at CM/ECF 6-7; Filing No. 733-2, at CM/ECF 6-7.)

On May 24, 2018, Defendant deposed Plaintiff's corporate witness, Judy Altmeier. The Plaintiff's above-referenced agreements with MTD and Husqvarna were included within the scope of that deposition (Filing No. 765-15, at CM/ECF p. 26-132.) The parties later deposed each other's expert witnesses and supplemented respective expert reports as to damages. (Filing No. 765-1-4.)

On September 7, 2018, Plaintiff filed a Motion to Enforce the Scheduling Order and for a Protective Order to prohibit Defendant's discovery by third-party subpoenas served on MTD and Husqvarna. (Filing No. 768.)

ANALYSIS

The federal courts enter and use Rule 16 scheduling orders to manage litigation and thereby promote the efficient, just, and timely administration of the judicial system. Fed. R. Civ. P. 1 & 16(b)(2). The scheduling order currently at issue (hereinafter "post-remand scheduling order") is narrow in scope and jointly proposed by the parties to govern post-remand discovery. It expressly and unambiguously delineates precisely what discovery is permitted to prepare this case for a new trial, and the deadlines for doing so.

It is well-accepted that a scheduling order may be modified only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The court considers the movant's level of diligence and the degree of prejudice to the parties when assessing whether good cause exists, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only following a requisite threshold finding of due diligence. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008); Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006).

The defendant has not asked the court to amend the scheduling order. Instead, it argues that an amendment is unnecessary because the defendant's third-party subpoenas comply with the current scheduling order. Defendant argues the post-remand scheduling order does not limit discovery sought from *third-parties*, such as MTD and Husqvarna, but only from the *actual* parties to this lawsuit. (See Filing No. 777, at CM/ECF p. 7-8.) In other words, Defendant claims third-party discovery was not expressly prohibited by the scheduling order, so it is allowed.

The court disagrees. Absent the post-remand scheduling order, fact discovery was closed, ([Filing No. 217](#)). A final pretrial conference order was entered which identified the witnesses and exhibits for trial, and the case was tried. As supported by its plain language, the post-remand scheduling order was entered for the limited purpose of updating prior discovery before re-trial. That order did not re-open discovery beyond its express terms. Rather, as the parties jointly suggested:

1) The court permitted one supplemental 30(b)(6) deposition per party; it did not permit Rule 45 subpoenaed depositions and document production requests from non-parties;

2) The parties were permitted to update discovery related to the Georgia-Pacific factors; while Defendant's third-party discovery seeks documents and testimony well-beyond those factors;

3) Any post-remand discovery was limited to facts arising after discovery closed in 2015; Defendant's third-party discovery is not limited to this time frame; and

4) The court permitted a single deposition per party, and although Defendant has already taken Plaintiff's 30(b)(6) deposition, it now seeks two additional Rule 45 depositions of MTD and Husqvarna.

For all these reasons, the court finds Defendant's subpoenas for information from third parties MTD and Husqvarna exceed the scope of discovery permitted under the court's post-remand scheduling order.

In addition, although well beyond the supplemental expert discovery deadline, Defendant intends to use the evidence obtained from the third-party subpoenas "to supplement its expert's rebuttal to Ms. Bennis's damages opinions." ([Filing No. 777, at CM/ECF p.18](#).). Defendant has not moved to amend the scheduling order, but even if it had, any after-the-fact effort to modify the

scheduling order would fail as a matter of law. See Estate of Petersen v. Bitters, No. 8:16CV183, 2018 U.S. Dist. LEXIS 75045 at *8 (D. Neb. May 3, 2018) (finding that the magistrate judge did not err in declining to rule on a purported "counter-motion" improperly contained within a response brief.). Defendant has failed to show due diligence: Defendant knew Plaintiff intended to rely on the MTD and Husqvarna agreements and their application to the damages analysis since at least May 7, 2018. (See [Filing No. 778-3](), where when questioned by Defendant whether Plaintiff's expert intended to rely on the above-referenced agreements, counsel for Exmark replied, "[w]e anticipate that Ms. Bennis will discuss these agreements in her expert report."). And even assuming a finding of due diligence, Plaintiff will be prejudiced by Defendant's late discovery attempts. The pretrial conference is scheduled for October 16, 2018, the parties must exchange exhibit lists by October 2, 2018, and motions in limine are due on October 11, 2018. Defendant's proposed additional discovery will not only unduly interfere with Exmark's trial preparation, it will disrupt the court's case progression order and calendar.

The parties' briefs include lengthy discussions on whether Plaintiff is entitled to a protective order as to the subpoenaed depositions and document production from MTD and Husqvarna. The court need not address that issue. The court has already entered an order which limits the scope of post-remand discovery and sets deadlines for completing that discovery. It need to enter yet another order to enforce its prior order. Rather, the court's order below, which grants Plaintiff's motion and prohibits further third-party discovery, enforces the court's prior Rule 16 scheduling orders (Filing Nos. [217](), [709](), and [710]()) pursuant to Rule 16(f)(1)(C), ([Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001)]() (denying discovery initiated after the deadline set in the Rule 16 case management order), and the expert disclosure requirements of Rule 26 pursuant to the self-executing sanction

of Rule 37(c)(1). See Vanderberg v. Petco Animal Supplies Stores, Inc., 2018 WL 4779017, at *6 (8th Cir. Oct. 4, 2018) ("Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a).").

IT IS ORDERED:

1) Plaintiff's motion to enforce the court's scheduling order, (Filing No. 768), is granted.

2) Defendant is prohibited from deposing or obtaining documents or other by third-party subpoenas served on MTD Products, Inc. ("MTD") and Husqvarna Professional Products, Inc. ("Husqvarna").

Dated this 5th day of October, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge