IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING COMPANY INC., <br><br> Plaintiff, <br><br> vs. <br><br> BRIGGS & STRATTON CORPORATION, <br><br> Defendant. | **8:10CV187** <br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on plaintiff Exmark Manufacturing Company, Inc.'s ("Exmark") motion for summary judgment to reaffirm the that the asserted claims of United States Patent No. 5,987,863 ("the '863 patent) are not invalid in view of the prior art, Filing No. 722.[1] This is an action for patent infringement that has been remanded from the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC,* 879 F.3d 1332, 1337 (Fed. Cir. 2018).

I.   BACKGROUND

The procedural history of the case is set forth in the Federal Circuit opinion and need not be repeated here. *Id.* at 1338-40. Briefly, Exmark and Briggs & Stratton Corporation ("Briggs") are competitors in the high-end commercial lawn mower industry.

---

[1] Also pending is Defendant's motion to file a sur-reply brief, Filing No. 751. The Court finds the motion should be granted and the Court has considered the brief. The brief states that the Court should be aware of "(i) Exmark's failure to offer a consistent construction of the term "flow control baffle" and (ii) the need for the Court to articulate a clear construction of this term that applies to all aspects of the case, including both invalidity and infringement. At the beginning of this case in 2011, Exmark and Briggs agreed to the following construction: "a flow control baffle is a structure within the walls of the mower deck that controls the flow of air and grass clippings." Filing No. 143, Transcript of *Markman* Hearing at 6, 105. This Court adopted that agreed-to construction. Filing No. 156, Memorandum and Order at 8. Contrary to Briggs's assertion, the Court has applied that construction throughout the case. The Appeals Court's directive with respect to claim construction is addressed later in this opinion.

Exmark sued Briggs for infringement of certain claims of the '863 patent. Only Claim 1 of the patent was the subject of the appeal and only Claim 1 remains at issue on remand. *Id.* at 1337 n.1.

The '863 patent is directed to a lawn mower having improved flow control baffles. Claim 1 recites in relevant part:

> 1. A multiblade lawn mower, comprising:
>
>> . . . said first side wall having a discharge opening formed therein; . . . a first flow control baffle positioned in said mower deck which extends downwardly from the interior surface of said top wall between said cutting blades and said front wall; said first flow control baffle extending substantially continuously from a first location adjacent the interior surface of said second side wall to a second location adjacent the interior surface of said first side wall and adjacent the forward end of said discharge opening; said first flow control baffle comprising a first arcuate baffle portion, having first and second ends, which extends from the interior surface of said second side wall partially around said first cutting blade, a first elongated and substantially straight baffle portion, having first and second ends, extending from said second end of said first arcuate baffle portion, a second arcuate baffle portion, having first and second ends, which extends from said second end of said first elongated and substantially straight baffle portion partially around said second cutting blade; said first elongated and substantially straight baffle portion being angularly disposed with respect to the said circle defined by the blade tip path of said second cutting blade in a chord-like fashion so that the cuttings from said first cutting blade will be deflected inwardly within the said circle defined by the blade tip path of said second cutting blade; . . . [2]

Filing No. 1, Ex. A, '863 Patent 5:60–6:50.

After a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), the Court construed the claims. *Exmark Mfg. Co. Inc. v. Briggs & Stratton*

---

[2] "Chord" is a geometry term. A chord is a line that goes across a circle in two spots.

*Power Prods. Grp., LLC*, No. 8:10CV187, 2011 WL 5976264, at *4 (D. Neb. Nov. 29, 2011) (*Markman* Order). The Court adopted the parties' agreed-to construction of "first flow control baffle" as "a front structure within the walls of the mower deck that controls the flow of air and grass clippings." *Id.* The Court found no construction was required for the phrase "said front flow control baffle extending substantially continuously from the front location adjacent the interior surface of said second side of wall to a second location adjacent the interior surface of said front side wall," or to the phrase "and adjacent the forward end of said discharge opening" finding the meaning is relatively clear in the context of the patent as a whole, with the word "adjacent" referring to parts that are near one another, but not touching. *Id.* at *5. Further, no construction of the phrase "a front arcuate baffle portion that 'extends from the interior surface of said second side wall'" was necessary since the language does not require that the first arcuate baffle portion contact or abut the second side wall. *Id.* The Court also found the phrase "substantially straight" needed no construction. *Id.* Similarly, the Court found no claim construction was necessary with respect to the phrase "a front elongated and substantially straight baffle portion, having first and second ends, extending from said second end of said front arcuate baffle portion" because the jury would be able to determine what "extends" means in this context. *Id.* at *6.

The Court found that the phrase "said front elongated and substantially straight baffle portion being angularly disposed with respect to the said circle defined by the blade tip path of said second cutting blade in a chord-like fashion" should be construed as "'the front elongated and substantially straight baffle portion is oriented such that the line corresponding to that baffle portion intersects the circle defined by the blade tip path of

the second cutting blade at two points." *Id.* The term "second flow control baffle" was construed as "a second rear structure within the walls of the mower deck that controls the flow of air and grass clippings." *Id.* at *7. The Court construed the phrase "semi-circular baffle portions" to mean "baffle portions that are shaped like a portion or part of a circle," rejecting the contention that a semi-circular baffle portion must be half of a circle. *Id.* The Court found no construction necessary for the term "said front and rear flow control baffles defining a plurality of open throat portions which are positioned between adjacent cutting blades," as reflected in the preferred embodiment. *Id.* at *8. Similarly, no claim construction was needed for phrases "a rear elongated and substantially straight baffle portion, having front and rear ends, extending from said rear end of said rear arcuate baffle portion." *Id.* The phrase "said rear elongated and substantially straight baffle portion being disposed with respect to the said circle defined by the blade tip path of said third cutting blade in a chord-like fashion" was construed to correspond similar language with respect to the front baffle. *Id.* For the most part, the Court rejected Briggs's proposed constructions, which essentially would have required that the first arcuate baffle portion contact or abut the second side wall. *See id.* at *4-*8.

Prior to trial, Exmark moved for a summary judgment that Claim 1 was not invalid as anticipated or obvious, Filing No. 326, and Briggs moved for a summary judgment that Claim 1 was invalid as indefinite. Filing No. 309. After briefing on the motions and oral argument, this Court found as a matter of law that Claim 1 of the '863 Patent was not invalid as anticipated by prior art, finding that undisputed evidence showed the defendants could not meet their burden of proving anticipation by clear and convincing evidence. Filing No. 476, Memorandum and Order at 24-25. The Court also found the

4

patent was not invalid as indefinite.³  *Id.* at 25-27.  Further, the Court granted Exmark's motion for summary judgment of infringement, with respect to the Briggs's original accused mowers, but found genuine issues of material fact with respect to whether or not Briggs's modified designs infringed the patent and on whether the defendants' infringing conduct was willful.  *Id.* at 27-29.

The action proceeded to a trial before a jury and the jury found that Briggs willfully infringed Exmark's patent.  Filing No. 599, Jury Verdict.  The jury awarded over 24 million dollars in compensatory damages, and this Court later doubled that amount for Briggs' willful infringement.  Filing No. 689, Memorandum & Order at 10.  This court denied Briggs's motions for new trial.  Filing No. 688, Memorandum & Order at 16.

Among other things, Briggs appealed the district court's summary judgment on invalidity based on anticipation and obviousness.⁴  The Federal Circuit found that this Court "erred by basing its summary judgment of no invalidity solely on the fact that Claim 1 survived multiple reexaminations" and remanded to this court "for it to make an independent determination of whether genuine issues of material fact preclude summary judgment" on the anticipation and obviousness issues.⁵  *Exmark*, 879 F.3d at 1337.

The Federal Circuit also found that some of the disputed issues (such as whether the claimed "flow control baffle" needed to be spaced from the front wall) were legal issues

---

³ That finding was affirmed on appeal.
⁴ Briggs also appealed the Court's denial of a new trial on damages, evidentiary rulings related to damages, denial of a new trial on willfulness, and denial of Briggs' laches defense.  The Federal Circuit's reversal and remand on damages and willfulness is addressed in other orders.
⁵ Contrary to the Appeals Court's assertion, this court did not base its finding *solely* on the PTO reexaminations.  Though not discussed at length, the Court's decision was based on a thorough review of the expert testimony and was informed by extensive briefing and a lengthy and comprehensive oral argument on the related motions for infringement and invalidity.  Also, the Court's opinion conformed to and was based on the claim construction.  Nevertheless, the court will further elucidate its thinking as directed by the Federal Circuit.

5

of claim construction that should be resolved by this court on remand. *Id.* at 1344. The Appeals Court suggested that this court had "adopted a broader construction than the PTO's construction" of the "'baffle' and 'flow control baffle' as 'an element that "controls" the flow of air and grass clippings within the mower deck *in a 'meaningful way*,'" and concluded that Briggs had been precluded from arguing that the prior art anticipated the claims or rendered them obvious under the district court's broader construction of the claims. *Id.* at 1343 (emphasis added) (noting that "[t]he fact that the Board held that the asserted anticipating prior art reference did not disclose the claim requirements (entire baffle and meaningful effect) as construed by the Board, does not foreclose the possibility that a jury may find otherwise under a broader construction not requiring those aspects"). The Federal Circuit directed this court on remand to "consider how its claim construction, to the extent it is the same or different from the Board's construction, impacts its anticipation and obviousness analysis." *Id.* at n. 3.

Exmark now moves to reaffirm the Court's summary judgment decision on invalidity. In opposition, Briggs argues that genuine disputes of fact exist with regard to alleged anticipation by prior art references. Specifically, in reliance on the testimony of expert witnesses Fronczak, Del Ponte, and Strykowski, it argues that the Walker and Kidd references and the Simplicity mower anticipate the invention.[6] Similarly, Briggs argues that the asserted claim is obvious in that a person of ordinary skill in the art would have been motivated to modify Walker alone, or in combination with numerous other prior art

---

[6] In moving for summary judgment on the defenses of anticipation and obviousness prior to trial, Exmark addressed the defendants' cited prior art. Both Kidd and Walker were considered by the PTO.

6

references, to achieve the same function as the '863 Patent.[7] These are essentially the same arguments presented in opposition to Exmark's invalidity summary judgment motion.[8] Both parties relied on expert testimony to support and oppose the validity motion.

The evidence at trial established that the significance of the front baffle being away from the front wall is that it inhibits the exhaust of air under the front of the deck thereby reducing blowout and improving air flow towards the side discharge opening. Exmark's engineer, Garry Busboom, added a flow control baffle that extended across the entire front of the deck and shaped that baffle with a combination of arcuate baffle portions and substantially straight baffle portions that improved the quality of cut and grass discharge while at the same time reduced "blowout." Relative to the flow control baffles, the "object of the invention" is to improve the efficiency by which air and grass clippings are directed across the deck and out of the side discharge opening. Filing No. 1-1, Ex. A, '863 patent at 2:23-29. Similarly, the "summary of the invention" section states that the "flow control baffles, and especially the first flow control baffle, efficiently direct the grass clippings and air to the side discharge opening." *Id.* at 2:66-3:4.

The structure of the Walker invention shows only a small front baffle structure between the blades and the front wall of the mower deck. Undisputed evidence shows the baffle structure of the Walker prior art is based on the portions of the deck wall on

---

[7] Briggs relies on the same prior art and arguments that were the subject of the third reexamination. It is undisputed that Exmark submitted copies of the defendants' Prior Art Statements, the prior art identified by Defendants, and the 2012 expert reports of Fronczak and Del Ponte to the PTO.

[8] In opposing Exmark's motion prior to trial, Briggs based its invalidity defense on two theories: that the Walker prior art anticipated claim 1 of the 863 patent and that the claims of the '863 patent are not entitled to the filing date of Exmark's original '575 application and, therefore, are anticipated by Exmark literature showing the commercial embodiment of the '863 patent. *See* Filing No. 381, Defendant's Brief. Briggs relied on expert testimony pointing to Walker and Kidd as examples of prior art side-discharge mowers having flow control baffles that directed grass into the adjacent blade.

7

either side of the structure being both a front wall and flow control baffle. Similarly, the structure of the Simplicity mulching mower is undisputed and shows a mower deck with a mulch kit installed in the deck. The mulch kit has three V-shaped baffles that are mounted to the front wall by long thin mounting plates that run along and contact the front wall of the deck, and also has a curved piece that closes the discharge opening. The '863 patent requires a "discharge opening" in the side wall. *Id.* at 5:66–6:2, 15-19; 7:10-13, 27-31, 45-48. With the mulching kit installed, the Simplicity mulching mower does not have a "discharge opening."[9] Thus, even if it were obvious to modify the Simplicity mulching mower exactly as proposed by Briggs, it still would not meet all limitations of the claims.

Prosecution history shows the focus of prosecution in front of the Patent and Trademark Appeals Board ("PTAB") was the patentability of the '863 claims over United States Patent No. 4,055,036 to Kidd. The baffle disclosed in the Kidd patent is different than the front baffle of the '863 patent. The '863 Patent discloses substantially straight portions that point inwardly as to direct grass clippings from one chamber into the blade path of an adjacent blade. *See* Filing No. 1-1, Ex. A, '863 Patent, Fig. 4. Exmark amended Claim 1 to add the limitation "angularly disposed . . . in a chord-like fashion" in order to overcome Kidd. Exmark's '575 application shows a mower deck having the exact structure that was later claimed in the '863 patent in that air and grass clippings are

---

[9] The Appeals Court approved this court's exclusion of prior art directed to mulching mowers in connection with damages. *Exmark*, 879 F.2d at 1352 (stating that because "[t]he only asserted claim of the '863 patent requires a side-discharge mower[,]" . . . it was reasonable and within the district court's discretion to exclude prior art mowers that were not side-discharge mowers, commensurate with the scope of the asserted claim).

8

directed in a chord-like fashion into the path of the next blade, as recited in the '863 patent claims.

II. LAW

"[A] prior art reference will anticipate if it discloses each and every element of the claimed invention." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1341 (Fed. Cir. 2016) (internal quotation marks, brackets, ellipsis, and citation omitted). "To show that a patent claim is invalid as anticipated, the accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention." *Silicon Graphics, Inc. v. ATI Tech., Inc.*, 607 F.3d 784, 796 (Fed. Cir. 2010). "[E]very element of the claimed invention [must be described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009). As with infringement, the court construes the claims and compares them against the prior art. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010). "While anticipation is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc.*, 609 F.3d 1345, 1349 (Fed. Cir. 2010).

Under 35 U.S.C. § 103(a), "[o]bviousness is a question of law based on underlying findings of fact." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010) (citation omitted).

> The underlying factual inquiries include: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as

9

> commercial success, long felt but unsolved needs, and the failure of others.

*Id.* Where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). A combination of prior art that fails to meet all of the limitations of the claims does not render the invention obvious. *CFMT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) (obviousness requires a suggestion of all limitations in a claim).

"[A] patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008). Section 112 in turn requires "written description" support. 35 U.S.C. § 112(a). To meet the written description requirement, "the prior application must indicate to a person skilled in the art that the inventor was 'in possession' of the invention as later claimed." *PowerOasis*, 522 F.3d at 1305-06. A claim is indefinite if, when read in light of the specification and prosecution history, it fails to inform those skilled in the art about the scope of the invention with reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 134 S. Ct. 2120, 2129 (2014); *Exmark*, 879 F.3d at 1344-45. The district court's ultimate determination that a patent claim is not indefinite under § 112 is a question of law. *Exmark*, 879 F.3d at 1345.

"[A] district court 'is never bound by an examiner's finding in an *ex parte* patent application proceeding.'" *Exmark*, 879 F.3d at 1341 (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007) (emphasis added); *see Fromson v. Advanced*

10

*Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) ("The Examiner's decision, on an original or reissue application, is never binding on a court."). "While the PTO's findings during reexamination are 'evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence,' they are not dispositive." *Exmark*, 879 F.3d at 1341 (quoting *Fromson*, 755 F.2d at 1555).

III.    DISCUSSION

As a threshold matter, the Court will address the Federal Circuit's directive on claim construction. The Federal Circuit suggested that in granting a summary judgment of validity over the prior art, this court applied a broader claim construction than the PTAB, and directed the Court on remand to address issue of claim construction in the context of determination of anticipation or obviousness. In its earlier opinion on summary judgment, the Court noted in a footnote that it would *not* adopt language from the PTAB construction regarding a flow control baffle having a "meaningful effect" on the flow of air and grass clippings. Filing No. 476, Memorandum and Order at 24 n.8. To clarify, the Court did not apply a different claim construction — it merely noted that the parties agreed construction was easily understood and there was no need for the "meaningful effect" language. The Court noted that the meaningful effect language used by the PTAB was meant to explain why the mounting plates in the Simplicity mulch kit that run along, contact and conform to the front wall are not "flow control baffles." *Id.*

The evidence before the Court establishes that the significance of a separate, spaced baffle is that "[t]he placement of the front baffle away from the front wall of the deck inhibits the exhaust of air under the front of the deck thereby reducing blowout and improving air flow towards the side discharge opening." Filing No. 353-3, Ex. 3,

11

Stykowski testimony at 141. The baffle thus controls the air flow as a matter of fluid mechanics. *Id.* at 41. A thin piece of metal that runs along the wall of the deck and conforms to it would not change the flow within the mower deck to any greater extent than the deck walls themselves. *Id.* at 39-46.

As understood in context, there is no substantive difference between the PTAB's construction and the parties' original agreed-upon construction. In context, to a person of ordinary skill in the art, a baffle is separate from and spaced away from the front wall in order to constitute a "flow control baffle." The two phrases effectively convey the same basic point — under the Court's claim construction, the claim term "flow control baffle" does not cover thin mounting plates that run along, contact, and conform to the front deck wall as in the Simplicity mulching mower. The concept of a "meaningful effect" is subsumed within the notion of "control" of the flow of clippings.

The evidence presented to the Court in support of Exmark's summary judgment motion establishes that the claimed invention of the '863 patent was a substantial and non-obvious advancement over the prior art and, that at the time of the '863 invention, it was unusual to add a front baffle of any shape to a multi-bladed side discharge mower. Generally, at that time, in side-discharge mowing, the space in front of the blades was as open as possible to allow grass clippings to flow along the front of the deck. None of the prior art showed a three-bladed mower with a separate baffle extending across the entire front of the deck in a side discharge configuration.

The testimony of Briggs's expert, Dr. Fronczak, establishes that the small V-shaped front structure between the blades and the front wall of the Walker mower deck functions as a baffle based on considering the portions of the deck wall on either side of

12

the baffle to be both a front wall and flow control baffle. Filing No. 378-2, Ex. 5, Fronczak Dep. at 231. However, the claim limitations at issue do not allow the same structure to be both deck wall and flow control baffle. The claims of the '863 patent expressly require two distinct structures: a "front wall" and a front "flow control baffle." The fact that there are two structures implies some space between them. The claim language indicates that the claimed "flow control baffle" of the '863 patent requires some "spatial separation." The Walker reference can only anticipate Claim 1 of the '863 patent if parts of the mower deck are said to constitute parts of the baffle, in effect, by counting the same structure in the prior art as both the "deck wall" and "baffle" to satisfy the Claim 1 limitations. Under the Court's claim construction, the claim limitations do not allow the same structure to be both deck wall and flow control baffle.

The '863 patent also requires that the front wall have an "interior surface" and it states that the flow control baffle extends downwardly from the top wall "between said cutting blades and said front wall." The prosecution history shows that the "chord-like" limitation was added to the patent in response to the PTO's rejection based on Kidd. Exmark pointed out to the PTO that the front baffle in Kidd is tangential, whereas the '863 requires that the substantially straight portion is "angularly disposed" (i.e., angled, pointing to, aiming at, or tipped toward) the blade path circle so as to cross that circle at two points. The specification refers to the importance of deflecting the cuttings inwardly into the path of the cutting blade.

The defendants also rely on the Simplicity mower with a mulch kit accessory installed as prior art, but that mower is not relevant to the claims of the '863 patent because the claims are directed to an improvement in side discharge mowing and when

the mulching kit is installed in the Simplicity deck it is no longer a side discharge mower, it becomes a mulching mower. Thus, even if it were obvious to modify the Simplicity mulching mower exactly as proposed by Briggs, it still would not meet all limitations of the claims. Also, to be a "discharge opening," the opening must be one through which grass will actually discharge when grass is cut. This means that neither the Walker reference nor the Simplicity mower are properly prior art that anticipates the invention, nor was it obvious, to a person skilled in the art, to make the alterations found in the '863 patent.

The Court reaches this conclusion independent of the PTO. The Court has considered the PTO's findings during reexamination of evidence to consider in determining whether Briggs has met the statutory burden of overcoming the presumption of validity by clear and convincing evidence but has not afforded the PTO's findings dispositive weight. Nevertheless, the PTO's findings bolster the court's independent conclusion and support the court's claim construction and its understanding of the limitations of the claims.

The Court finds, as a matter of law, Briggs has not overcome its high burden of proving the factual elements of invalidity by clear and convincing evidence. In making this determination, the Court applies the claim construction adopted early in the litigation, specifically, the terms agreed to by the parties. To adopt Briggs's arguments would be to rely on a claim construction that is at odds with the *Markman* order and, importantly, with the parties' agreed construction of the term flow control baffle. The claim language, specification, and prosecution history all support Exmark's argument that the flow control baffle was not anticipated or obvious.

The Court has considered all the record evidence, including the prior art and expert testimony. Viewing the evidence in the light most favorable to Briggs, and has drawn all justifiable inferences in its favor, and concludes, in view of the Court's claim construction, that there are no genuine issues of material fact as to whether a prior art reference anticipates or renders Claim 1 of the '863 patent obvious. Accordingly, the Court reaffirms its previous holding on Exmark's motion for summary judgment on invalidity.

IT IS ORDERED:

1. Briggs & Stratton's motion to file a sur-reply brief (Filing No. 751) is granted.

2. Exmark's motion for summary judgment to reaffirm that the asserted claims of the '863 patent are not invalid in view of the prior art (Filing No. 722) is granted.

DATED this 12th day of October, 2018.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge