IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING COMPANY INC., <br><br> Plaintiff, <br><br> vs. <br><br> BRIGGS & STRATTON CORPORATION, <br><br> Defendants. | **8:10CV187** <br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on plaintiff Exmark Manufacturing Company, Inc.'s ("Exmark") motion to reaffirm the jury's verdict that Briggs & Stratton Corporation's ("Briggs") infringement was willful, Filing No. 723. This action was remanded from the United States Court of Appeals for the Federal Circuit. *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1338 (Fed. Cir. 2018).

I.     BACKGROUND

A.     Issues on Remand

The Federal Circuit vacated this Court's enhanced damages award and remanded the action for the court to determine whether a new trial on willfulness is necessary. *Id.* at 1353. The Appeals Court also reversed the Court's finding on summary judgment that the patent was not invalid as anticipated or obvious, remanding for a determination of whether there was a genuine issue of material fact on the invalidity defense. *Id.* at 1341-42. This court has now determined that there is not and has reaffirmed its finding of no invalidity. Filing No. 800.

With respect to willfulness, the Appeals Court found error "to the extent [the court] excluded [evidence of prior art] without also determining whether it was relevant to Briggs' state of mind at the time of accused infringement." *Id.* The Appeals Court stated:

> In *Halo* [*Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)], the Supreme Court held that "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* Thus, under *Halo*, the district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable. Rather, the entire willfulness determination is to be decided by the jury. In this case, the sole basis for excluding the prior art from the willfulness trial was the district court's determination that Briggs' litigation defenses were unreasonable.

*Exmark*, 879 F.3d at 1353. It found "[t]o the extent that decision excluded evidence relevant to Briggs' state of mind at the time of the accused infringement, however, it does not comport with the standard articulated in *Halo*, which mandates that willfulness is an issue for the jury, not the district court." *Id.* The Appeals Court directed this court on remand to "reconsider its decision to exclude evidence of the prior art during the jury trial on willfulness to determine whether Briggs had developed any views about the prior art at the time of accused infringement or whether the evidence only relates to Briggs' litigation-inspired defenses." *Id.* (noting "[a]s the Supreme Court explained in *Halo*, timing . . . matter[s]. [A party] cannot insulate itself from liability for enhanced damages by creating an (ultimately unsuccessful) invalidity defense for trial . . . .") (quoting *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 n.13 (Fed. Cir. 2016)). On remand, this Court is to determine in the first instance "[w]hether there is a genuine issue of material fact about when Briggs knew of its prior art defenses, and thus whether a new jury trial is required." *Exmark*, 879 F.3d 1353.

Exmark moves the Court to reaffirm the jury's finding that Briggs's infringement of the patent was willful. It argues that it asserted willful infringement only for the time period

prior to the filing of this action in 2010 and contends that it is undisputed that Briggs did not form any belief prior to suit that the '836 patent was invalid.

Briggs opposes the motion, it argues that it had actually formed a belief that the baffles it saw on the Exmark mower in the late-1990s were not inventive because of its knowledge of prior art. It contends that the prior art, which had been excluded at trial, is relevant to Briggs's subjective state of mind at the time of infringement and a new trial on willfulness is necessary.

B. The 2015 Trial

1. Prior Art Evidence

The facts are set forth in the Federal Circuit opinion and will be repeated herein only as necessary to this opinion. Before the trial of this action in September of 2015, the court had determined as a matter of law that: 1) the patent was not invalid as anticipated, obvious, or indefinite; 2) Briggs had infringed the patent with respect to the original design; 3) Briggs's defenses (invalidity, obviousness, and indefiniteness) were objectively unreasonable for purposes of the willfulness determination. In response to Exmark's motion for a summary judgment of no invalidity as to the original Briggs designs, Briggs had argued there were genuine issues of material fact on anticipation in light of the Walker reference and on obviousness based on the Simplicity prior art mower combined with the Kidd patent's or the Koehn patent's (or others') teaching of a front flow control baffle that is spaced apart from the front wall. Filing No. 381, Briggs's Brief at 7-8. The court rejected that contention, based, in part, on the court's claim construction. Filing No. 476, Memorandum and Order at 26-27.

The court had also ruled on several motions in limine before the trial. *See* Filing No. 496, Exmark Motion; Filing No. 565, Memorandum and Order. Exmark moved to

3

preclude evidence on, *inter alia*, issues over which Briggs had claimed privilege, third-party mowers, patent invalidity, and irrelevant prior art.[1] *Id.* Exmark's prior art argument related to the potential offer of several dozen pieces of prior art exhibits at trial. Exmark argued that Briggs should not be allowed to relitigate the invalidity defense the court had earlier rejected on summary judgment.[2] In opposition to the motion, Briggs argued that prior art was relevant to damages as evidence relating to whether Briggs knew or should have known the '863 patent was valid in connection with damages. Filing No. 514, Briggs's Opposition to Exmark's Fourth Motion in Limine at 5-6. Briggs argued that evidence underlying the invalidity and non-infringement defenses went to the heart of the issue of whether its infringement was "so obvious" that Briggs should have known about it. *Id.* It also contended that the prior art reflected "old modes" for doing the same thing as the patented invention, which is one of the damages factors set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). *See* Filing No. 565, Memorandum and Order at 5-6.

The Court granted Exmark's motion to exclude "to the extent the evidence relates to the invalidity defense but denied [it] with respect to evidence related to damages, without prejudice to its reassertion via timely objection at trial." *See id.* The Court stated that prior art was not relevant to willfulness for the reasons stated in its earlier order addressing willfulness under *In re Seagate Tech.*, LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*). *Id.* In the earlier order, the Court had addressed the then-applicable willfulness analysis under *In re Seagate,* 497 F.3d at 1371. Filing No. 564, Memorandum

---

[1] The motion was addressed to Briggs's potential offer of several dozen pieces of prior art as exhibits at trial. Filing No. 565 , Memorandum and Order at 5.

4

and Order at 3. The Court found that Briggs "[could] not credibly argue that it relied on reasonable defenses to infringement" (including invalidity by anticipation) and it had acted "despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 3. The Court noted:

> The evidence presented in connection with the summary judgment motions also establishes that Briggs's defenses, and any reliance thereon, were not reasonable. The court finds as a matter of law that no reasonable litigant could realistically expect those defenses to succeed. Notably, Briggs has asserted attorney-client privilege with respect to the details of its lawyers' involvement and advice in connection with the issue of infringement of the redesigned mowers and it *does not rely on advice of counsel in defense of the willfulness allegations in connection with the original designs*.

*Id.* (emphasis added). The Court determined that the "issue of Briggs's subjective state-of-mind—whether the objectively-defined risk 'was either known or so obvious that it should have been known to the accused infringer' remained to be determined by the jury." *Id.*

The Court based its finding that Briggs had proceeded in the face of an objectively high likelihood of infringement on evidence that Briggs was aware of the '863 patent at least as of 2002 because Philip Wenzel, the president of Briggs' predecessor in interest, Ferris Industries, had been deposed in the *Toro v. Scag Power Equip.* case in 2002. *Id.* at Filing No. 564 at 2-3. In 2001, Exmark and its parent, The Toro Company ("Toro"), sued Scag Power Equipment, Inc. ("Scag"), et al. for infringement of the '863 patent and three other patents. *Toro Co. v. SCAG Power Equip., Inc.*, No. 8:01-CV-279, Filing No. 1, Complaint (D. Neb. May 16, 2001). The '863 patent is a continuation of the '475 patent. Filing No. 193, Memorandum and Order at 2 (Jan. 27, 2003). The *Toro* action was heard in this Court. Scag asserted an inequitable conduct defense, contending that Exmark employee Garry Busboom, one of the inventors of the '863 patent, had intentionally

misled the USPTO by failing to disclose the Walker mower as prior art.  *See Toro,* Filing No. 185, Memorandum and Order at 6 (D. Neb. Jan. 15, 2003).  This Court rejected Scag's argument, finding that the Walker reference had been disclosed to the USPTO during the original examination of the '863 patent.  *Toro*, Filing No. 185, Memorandum and Order at 6-7; Filing No. 188, Memorandum and Order at 6-7 (D. Neb. Jan. 22, 2003). The Court also denied the defendants' motion for a summary judgment of invalidity of the the '475 patent.  *Toro*, Filing No. 193, Memorandum and Order at 6 (Jan. 27, 2003). Shortly thereafter, on the eve of trial, the case settled.  *See Toro*, Filing No. 195, Settlement Agreement (Sealed).  On November 16, 2004, an Ex Parte Reexamination certificate was issued by the USPTO which affirmed the patentability of claims 1 – 10 of the '863 patent and required no changes to the patent.  *See Toro,* Filing No. 322, Ex. 36.

At trial in the present case, the court allowed evidence of prior art as relevant to damages with respect to Briggs's argument regarding *Georgia-Pacific* factor 9, but found the evidence was only relevant to the extent the patent was commercialized.  Filing No. 565 at 6.  Accordingly, the court stated that Briggs was "entitled to introduce side discharge mowers that were actually used prior to Exmark's invention."[3]  *Id.*

Briggs was allowed to argue and to present evidence on the Walker prior art.  Filing No. 615, Trial Transcript ("T. Tr.") at 1193; Filing No. 724-3; Ex 179.  Jim Marshall, Ferris's engineering technician, testified that he had seen a similar baffle before on a single-

---

[3] The Court of Appeals reversed this court's finding that prior art was relevant only to the extent it was used in a product.  *Exmark*, 879 F.3d at 1352.  Although the Appeals Court found error in the court's limitation of damages evidence to commercialized products, that finding is of no consequence since the uncommercialized prior art references were not side-discharge mowers and thus were not relevant.  The significance of the commercialization is that it is probative of the accused infringer's knowledge of the inventive qualities of an improvement vis-à-vis other products on the market.  It also is critical to understanding the market value of the infringed invention.

bladed walk-behind mower.  Filing No. 616, T. Tr. at 1486.  The jury was presented with a sketch of that baffle.  Id.; Filing No. 739-2.  The Court excluded prior art evidence directed to mulching mowers (including the Koehn, Simplicity, and Samejima references) because they were not relevant to the Asserted Claims, which required a side-discharge mower.[4]

Briggs challenged the Court's exclusion of prior art evidence in connection with willfulness at a conference outside the presence of the jury.  Filing No. 615 at 1211-14. The following colloquy between the court and Briggs's counsel ensued during the testimony of Briggs CEO Philip Wenzel, who had formerly been the CEO of Briggs's predecessor in interest, Ferris Industries.  Wenzel had just testified that he relied on advice of counsel concerning the baffle redesign despite Briggs's assertion of attorney client privilege.  Id. at 1204.

> MR. WOLF:  Very briefly, Your Honor.  And it's tricky and I invite your guidance.
>
> THE COURT:  Good luck.
>
> MR. WOLF:  Yeah. That was actually sincere in that particular instance.  So as Your Honor's aware, there is a willfulness allegation against the old design but not the new design.  For the first time that at least I'm aware of, we heard allegations in—or argument in this cross that somehow that stub period after the filing of the lawsuit, when there was the wind-down of the old product, that that's somehow evidence of willfulness.  Now, here's the –
>
> THE COURT:  Well, here's the way I took the evidence.
>
> MR. WOLF:  Okay.
>
> THE COURT:  Mr. Wenzel is coming across as the lamb that has been led to the shearer, okay?

---

[4] The Court of Appeals affirmed the exclusion of evidence of prior art directed to mulching mowers.  Exmark, 879 F.3d at 1352.

MR. WOLF:  Yes.

THE COURT:  He's not the lamb that's been led to the shearer.  He's like my old boss's secretary.  She's crazy like a fox.  Okay?  So he says that he would have—if he would have been contacted originally, he would have done X.  And the answer was he was contacted originally on the redesign and he did Y. (emphasis added)

MR. WOLF:  Well, here's the problem—

THE COURT:  Whether that goes to willfulness, I see your point.  But now you want to do what?

MR. WOLF:  Well, here's the problem.  Almost immediately—and we've kept this out entirely—almost immediately there were discussions of the invalidity of the patent.

THE COURT:  Yeah.

MR. WOLF:  And so I—we have studiously avoided that topic.

THE COURT:  Well, he—yeah.  And—and during cross-examination stuff comes up and he's already testified.  We've had numerous opinions that the patent is invalid and you have studiously tried to keep attorney-client privilege out of the redesign process and he brought it in, okay?  He did.  Not me, not the defendant's lawyer, but your CEO of this mark, okay?  Now, it's my intention not to let [plaintiff] pursue that because it happened during cross-examination.  So, you know, I'm not sure where you're going.  What do you want to do?

MR. WOLF:  Your Honor, I actually don't want to do anything.  What—I think at the end of the day what I'd like is an instruction that the stub period doesn't weigh into the willfulness analysis.

THE COURT:  Well, [the jury is] not going to be asked about willfulness with respect to the redesign.  Your client's conduct before the redesign and then his conduct after the redesign is by the same person, and his conduct in total helps decide what his thinking was before the redesign.  And that's just unfortunately the way it is, Mr. Wolf.  If you had two different executives, maybe you could get away with it, but you don't.

MR. WOLF:  Well, Your Honor, we'll—we'll leave it for today, but we may come back at you to request that instruction.

THE COURT:  And I have no problem with that at all.  I—it's just that, you know, there's overlap on all of these issues—

MR. WOLF: Understood.

8

THE COURT: —and the question is how far do you get into the overlap before you really are inquiring about something the jury ought not to be inquiring. And I—I—at this juncture, I don't think we've gone over the threshold. And that's why I would be reluctant to allow anyone to continue to probe these issues any more deeply, certainly to cover them, but not to probe them any more deeply.

MR. WOLF: All right. Well –

THE COURT: So that would be my general direction. If there's something specific you want to do and you want to ask me in advance how I'm likely to rule on it, I'm certainly willing to do that.

MR. WOLF: I don't think there's anything with this witness we're going to do but it may come up with a later witness and we'll talk about it in advance.

THE COURT: Thank you very much.

*Id.* Briggs never asked for a limiting instruction. Nor did it make any proffer of evidence with respect to prior art in the context of willfulness.

Shortly before the case was submitted to the jury, Briggs's counsel brought up the prior art as relevant to damages in another conference outside the presence of the jury. Briggs argued that prior art evidence should be admitted to refute testimony to the effect that it would have been an "incredible coincidence" or highly unlikely for someone else to conceive of the same invention at the same time. Filing No. 616 at 1527-34; Filing No. 617 at 1535-39. Briggs sought admission of several old patents that ostensibly showed similar baffles to show the ideas were "in the air" at the time Briggs designed its original mowers. Filing No. 617 at 1535-39. Exmark argued that the patents were "red herrings" because there was no evidence that Dale Baumbach, Ferris's engineering manager at the time the infringing models were developed, would have been aware of the patents at the time he came up with his idea. *Id.* at 1538. The Court stated: "Well, if there was any evidence that any of these three were in production or that that any of these — some of

these don't even fit what we're talking about today.  I think that it opens up a can of worms."  *Id.*

      2.     Willfulness Evidence

The record shows that in 1995, Exmark introduced its mid-mount, zero-turn riding mower, the Exmark Lazer Z.  Filing No. 476, Memorandum and Order at 3.  Gary Busboom, the inventor of the '863 Patent, testified he conceived of his invention in 1994. Filing No. 615 at 1073.  The '863 patent is part of a family of patents that can be traced back to a parent patent application, Serial. No. 08/559,575, that was filed November 16, 1995.  Filing No. 1-1, Ex. A, '863 Patent at 1.  The patent issued on November 23, 1999. *Id.*

The first Briggs mower that has been found to infringe the '863 Patent, the Procut Z, was first sold in the summer of 1998.  Filing No. 614 at 967.  The baffle design remained the same for practical purposes from the introduction of the ProCut Z to Briggs's redesign in 2010.  *Id.*

Wenzel testified he was not aware of the patent at issue until this lawsuit was filed. *Id.* at 960; Filing No. 615 at 1227.  Wenzel also stated that between the time Ferris started working on the baffle in roughly 1996 and the time Exmark's patent issued in 1999, Wenzel had seen no indication that there was a patent pending on the design.  Filing No. 615 at 1223-24.  Ferris, and later Briggs, had in its possession Exmark brochures that showed there was a patent pending.  *Id.* at 1116-17.  The evidence showed Briggs had numerous Exmark mowers in its possession after 1999 that were marked with this patent number.  *Id.*  Wenzel admitted that he had seen the stickers on Exmark mowers in Briggs's possession.  *Id.* at 1099.

Wenzel testified that he was deposed in the Scag litigation in 2002. Filing No. 614 at 978-984. Scag and Exmark were then Briggs's largest competitors. Wenzel stated that he did not learn about the '863 patent or its import to baffle design in the deposition he gave in the Scag litigation. Id., T. Tr. at 974-78. He also stated he was not aware of the patents involved in the Scag litigation. Id. at 979-80; Filing No. 615 at 1139-44. There was evidence that Briggs had disassembled Exmark mowers in order to learn Exmark's designs and to solve problems with Briggs's mowers. Filing No. 615 at 1101-05.

Wenzel also testified that from 1999 to 2010, when this lawsuit was filed, he relied on patent attorneys to tell him if there was a risk of infringement. Id. at 1049. He stated that there was a patent review process in place at Ferris. Id. at 1044-48. In that process, a patent attorney looked at existing patents at the time, but after the product was in production, no one looked back to see if there might be a patent issued that had not been available at the time the product was developed. Id. at 1047-48. In that situation, he expected the holders of the patents to notify Ferris. Id. at 1227. He testified that if he was aware that there was a risk of infringement, he would contact his patent attorney, would stop infringing or would seek a license. Id. at 1035-36.

Briggs had an Exmark Lazer Z that included the '863 design in its possession in the Fall of 1996. See id. at 1073. There is evidence that suggests that Briggs copied Exmark's design. See, e.g., T. Ex. 36 (Engineering change form); Filing No. 614, at 965-66. Testimony adduced at trial suggests Dale Baumbach, then Ferris's acting engineering manager, instructed its technician to modify its mower deck as shown in a sketch that is strikingly similar to Exmark's Lazer Z mower deck, shortly after he had observed flow control baffles on Exmark's mower. See Filing No. 615 at 1073; Filing No. 616, T. Tr. at 1500-01; T. Ex. 521, Marshall Dep. at 54, 59, 62-64, 124-25; T. Ex. 9,

Exmark deck; T. Ex. 42, Baumbach sketch. A change order was subsequently issued on November 19, 1997, ostensibly intended to "improve cut quality." Filing No. 611, T. Tr. at 210; T. Ex. 36.

Baumbach did not testify at trial. In opening statements, Exmark's counsel suggested that Briggs knew where Baumbach was, but did not put him on to testify. Filing No. 610 at 122. Baumbach was involved in the development of the baffle design, together with Briggs's shop technician, Jim Marshall. Filing No. 614 at 961. Wenzel testified that Baumbach left Ferris between 2000 and late 2001, and Briggs had not been able to locate him. *Id.* He testified, however that he had been shown a document recently that reflected that Exmark had located Baumbach in 2011 and had spoken to him. *Id.* at 963-64.

Marshall testified he had been handed a sketch by Baumbach in Fall of 1996. Filing No. 615 at 1073. He also testified that there was an Exmark Lazer Z in a barn at Ferris at about the same time. Filing No. 616 at 1500-04. Marshall testified he had seen a Baffle similar to that in the mower in the barn, testifying as follows.

> Q. Okay. Now, when you saw the baffle, did it strike you
> as—as anything innovative?
> A. I—I—I just noticed it there. It was different than
> something that we had.
> Q. Did—did it look like something that was new to you,
> that you hadn't seen on a mower before?
> A. I seen it before.
> Q. Where had you seen it before?
> A. On walk-behind push mower.
> Q. How many blades on those mowers?
> A. It would be one.
> Q. Okay.
> MR. COHN: Your Honor, may I approach?
> THE COURT: Yes, you may.
> MR. COHN: Approach the witness. With Your Honor's indulgence, I'd like
> to ask the witness to draw what he's referring to as the single-bladed mower.
> THE COURT: He may.
> MR. COHN: Thank you.
> BY MR. COHN:

Q. Mr. Marshall, can you draw what you were just describing?

*Id.* at 1486-87. Under cross-examination, he was shown the sketch that Busboom had

given him and testified:

> Q. And you'd never seen a baffle design like this before,
> correct?
> A. The—like the sketch you mean?
> Q. Correct.
> A. I—other than that walk-behind that has that shape.
> Q. The walk-behind that you drew for us?
> A. Yes.
> Q. And we'll talk about that. And what you drew was a—was
> a single-bladed deck, correct?
> A. That's correct.
> Q. You had never seen a baffle design like this in a
> three-bladed deck; is that right?
> A. I—I did not.

*Id.* at 1507.

The record shows that Briggs's original accused products are virtually identical to

the preferred embodiment shown in Figs. 2 & 4 of the '863 Patent. *See e.g.*, Filing No. 1,

Complaint, Ex. A, '863 Patent at Figs. 2 & 4; Filing No. 299-6, Ex. 8, Declaration of Philip

Wenzel at 5, 13. At trial, Philip Wenzel, who had been in charge of manufacturing at

Ferris at the time, testified that he agreed the shape of the front flow control baffle that

was added by Ferris in 1997 was very similar to the shape of the baffle in the mower.

Filing No. 615 at 1079.

Ferris put a front baffle in its mowers to improve cut quality in roughly 1997. *Id.* at

1074. The baffle was added in an engineering change form dated November 19, 1996.

Briggs continued to sell inventory of mowers with the original baffle design even after this

lawsuit was filed. Filing No. 615 at 1190, 1201.

In closing argument, Exmark focused on evidence of Briggs' pre-suit conduct and strenuously argued that Briggs had copied Exmark's invention in 1997, resulting in a mower with a baffle design virtually indistinguishable from Exmark's. See, e.g., Filing No. 617, T. Tr. at 1695-1707. Further, Exmark pointed out that Briggs was a patent savvy company that, after copying Exmark's invention in 1997, should have known to look for a patent on that invention. It also had seen Exmark brochures that prominently referred to its patented flow control baffles. Exmark also questioned the credibility of Phil Wenzel's testimony that he did not learn about Exmark's '863 patent when he had been deposed in the *Scag* litigation in 2002. Briggs relied heavily on Wenzel's asserted lack of awareness of the patent, arguing that the willfulness factor of whether there was a reasonable basis to believe the patent was invalid did not weigh one way or the other on the scales because Briggs did not know about the patent. *Id.* at 1763.

The jury was instructed on willfulness as follows:

> In this case, it has been determined that Briggs's products with the original mower deck design (versions 1-4) infringe the '863 patent. You must address the additional issue of whether or not this infringement was willful.

> To prove that Briggs acted willfully, Exmark must prove, by clear and convincing evidence, that Briggs was reckless. You must determine whether Exmark has shown by clear and convincing evidence that an unjustifiably high risk of infringement was known to Briggs or was so obvious that it should have been known to Briggs. This determination depends on Briggs's state of mind.

> In deciding Briggs's state of mind, you should consider all facts surrounding the alleged infringement including, but not limited to, the following:

> > (1) Whether or not Briggs acted in accordance with the standards of commerce for its industry;

> > (2) Whether or not Briggs intentionally copied a product of Exmark that is covered by the '863 patent;

14

(3) Whether or not there is a reasonable basis to believe that Briggs did not infringe or had a reasonable defense to infringement; and

(4) Whether or not Briggs made a good-faith effort to avoid infringing the '863 patent, for example, whether Briggs attempted to design around the '863 patent; and

(5) Whether or not Briggs tried to cover up its infringement.

If you decide that the infringement with respect to Briggs's lawnmowers with the original cutting deck designs was willful, that decision should not affect any damages award you give. I will take willfulness into account later. You will record your determination in an answer to a special interrogatory on the verdict form.

Filing No. 605, Final Jury Instructions at 34-35.

The jury found the redesigned mowers did not infringe the '863 patent. Filing No. 599, Verdict. The jury also found that Exmark had proved by clear and convincing evidence that Briggs's infringement was willful with respect to the original mowers. Id. Exmark did not seek willfulness damages with respect to the redesigned mowers. This Court later denied Briggs's motion for a new trial on willfulness finding that the evidence supported the jury's finding. Filing No. 688, Memorandum and Order at 12-15. Based on the jury's willfulness finding, this Court doubled the damages award under 35 U.S.C. § 284, but declined to award attorneys' fees under 35 U.S.C. § 285. *See generally* Filing No. 689, Memorandum and Order.

Briggs appealed the jury's finding of willfulness and the court's enhanced damages award, arguing the court erred in excluding prior art that was relevant to willfulness. *Exmark*, 879 F.3d at 1351. Briggs contended the prior art is relevant and would demonstrate that it faced a low risk of infringing. Briggs also challenged several evidentiary rulings related to damages. Specifically, it challenged this court finding that prior art is relevant to damages only to the extent the patent was used in a product. *Id.*

## B.    Current Proceedings

A pretrial conference was held on October 16, 2018.  At that conference, the Court and parties discussed the willfulness issues.  Exmark later moved to submit additional evidence in support of its position to address concerns expressed by the Court in connection with the issue.  Filing No. 803.  The Court granted the motion subject to objections by Briggs.  Filing No. 810.  Briggs opposes the motion, objecting to the argument that Briggs's defense to willfulness is not supported by the record.  Filing No. 844.  It argues that Exmark moved to exclude the evidence that Exmark now contends is missing from the record, arguing that if the Court denies Exmark's motion to reaffirm willfulness, "Briggs's witnesses will testify that they also knew of other prior art and contemporaneous mowers that had baffles similar to the claimed baffle, which led Briggs to believe that its actions were not 'unreasonably risky.'"  Filing No. 844, Briggs's Response Brief at 3 (quoting *Halo*, 136 S. Ct. at 1933).  Briggs does not identify any such witnesses or testimony.  The Court finds Briggs's objections should be overruled and has considered the evidence submitted by both parties.

The supplemental evidence submitted by Exmark shows that during the discovery phase of the litigation, in response to a contention interrogatory asking Exmark to "[i]dentify all facts, evidence, and documents supporting any contention that You have not willfully infringed Exmark's '863 patent, including but not limited to identification of all opinions of counsel . . . ," Exmark did not state it believed the baffle design at issue was not inventive during the period of time for which willfulness damages were sought (1999 to 2010).  Filing No. 806-1, Index of Evid., Ex. 1 at 22-23, Interrogatory No. 18.  Exmark relied instead on its alleged lack of awareness of the patent, and also stated "Briggs had designed mowers with a deck having similar baffles to the deck in its existing mowers

since before the '863 patent issued and had been selling such mower decks since at least 2000, but Exmark did not allege infringement until 2010." *Id.* at 23. In its supplemental response, Briggs identified the deposition testimony and related exhibits of Phil Wenzel, Robert Laurin, and James Marshall as responsive to the interrogatory. *Id.* Although Exmark challenged Briggs to point to the deposition testimony that showed Briggs "both (1) asserted that it formed [a belief that Exmark's baffles were not inventive] *during the willfulness period* (1999 to May 2010 when it was sued); and (2) identified the prior art that formed the basis for that belief[,]" Briggs did not identify the deposition testimony on which it relied in response to Interrogatory No. 18. Filing No. 839, Exmark's Brief in support of its motion for leave to submit supplemental evidence at 2-3 (emphasis in original); *see* Filing No. 844, Briggs's responsive brief.

II.    LAW

After the verdict was entered, the United States Supreme Court decided *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923 (2016). In that case, the Supreme Court abrogated the willfulness test set forth in *In re Seagate Technology, LLC.,* 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*). Under *In re Seagate*, the willfulness inquiry included an "objective prong" and a "subjective prong. *Id.* at 1371.

The Supreme Court stated that, in the context of deliberate wrongdoing, "it is not clear why an independent showing of objective recklessness—by clear and convincing evidence, no less—should be a prerequisite to enhanced damages." *Halo*, 136 S. Ct. at 1932. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933.

Subjective willfulness is characterized by recklessness, or "knowing or *having reason to know* of facts which would lead a reasonable man to realize his action is unreasonably risky." *Id.* Also, culpability is to be "measured against the knowledge of the actor at the time of the challenged conduct" and nothing in the law "suggests that [the court] should look to facts that the defendant neither knew nor had reason to know at the time he acted." *Id.*

Also, the Supreme Court lowered the standard of proof required to show willful infringement from "clear and convincing" to "preponderance of the evidence." *Id.* at 1934. Post-*Halo*, the Federal Circuit has held that a jury's finding of willful infringement under the subjective prong of the pre-*Halo* law is sufficient for a predicate finding of willful infringement. *See, e.g., WesternGeco LLC v. ION Geophysical Corp*, 837 F.3d 1358, 1362 (Fed. Cir. 2016); *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016); *Innovention Toys, LLC v. MGA Entm't, Inc.*, 667 F. App'x 992, 993-94 (Fed. Cir. 2016) (noting that there is "no basis for a new trial" on willful misconduct when the jury found willfulness under the subjective prong of *Seagate*). Enhanced damages "should generally be reserved for egregious cases typified by willful misconduct." *Halo*, 136 S. Ct. at 1934. "Under *Halo*, the district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable." *Exmark,* 879 F.3d at 1353. "The entire willfulness determination is to be decided by the jury." *Id.*

Under 35 U.S.C. § 284, "[d]istrict courts enjoy discretion in deciding whether to award enhanced damages, and in what amount." *Halo*, 136 S. Ct. at 1932.

III.    DISCUSSION

The Court must determine "[w]hether there is a genuine issue of material fact about when Briggs knew of its prior art defenses, and thus whether a new jury trial is required."

*Exmark*, 879 F.3d at 1353.  The Court finds there is no genuine issue of material fact about when Briggs knew of its prior art defenses.  Briggs consistently asserted that it was not aware of Exmark's patent until this lawsuit was filed.  Contrary to Briggs's contention, there is no evidence in the record that indicates that "Briggs actually formed a belief that the baffles it saw on the Exmark mower in the late 1990s were not inventive because of its knowledge of prior art."  Filing No. 737, Brief at 1.

A claim of willful infringement was asserted only as to Briggs's original mower design and the willfulness inquiry relates only to those products.  The record shows Briggs introduced the baffle in the summer of 1998.  There was strong evidence of copying as reflected in the change order that issued shortly after Dale Baumbach saw Exmark's mower at a trade show.  The '863 patent issued in 1999.   Briggs's CEO, Philip Wenzel testified in the Scag litigation in 2002.  Exmark sued Briggs in 2010, seeking damages for six years prior to that date.

The Court found as a matter of law that Briggs infringed the patent up to the time of the redesign.  Briggs did not assert an advice of counsel defense with respect to allegations of infringement directed at the original mower designs and it asserted privilege with respect to evidence related to conversations with counsel.

The record, then and now, shows that the prior art evidence was not relevant to Briggs's culpability as reflected in its knowledge at the time of the challenged conduct.  The conduct challenged as willful is the design, marketing, and sale of the infringing products—Briggs's original mowers.  Though Briggs continued to sell the infringing products after the start of this litigation, that fact is of no consequence because the evidence shows that Briggs almost immediately began to work on a design-around.

The Court granted Exmark's motion for summary judgment on validity based on the finding that Briggs's arguments in opposition to the motion did not comport with the court's claim construction. Under the Court's claim construction, the cited prior art references did not anticipate the asserted claim. The Appeals Court reversed and remanded that finding for a determination of whether there was a genuine issue of material fact on invalidity. This court has now followed the Appeals Court's mandate and reaffirmed its earlier finding. Had the court found genuine issues with respect to invalidity, Briggs's arguments with respect to willfulness might be more cogent.

The Court finds the prior art's relevance to damages for willfulness is largely a red herring. The evidence, in the context of the whole trial, shows that the jury determination of willfulness rested largely on evidence of outright copying by Briggs's predecessor, Ferris. There is continuity in management between the companies. Post-*Halo*, a jury finding of willfulness can rest solely on a finding of subjective intent, without regard to any objective reasonableness. Consequently, the Court's earlier finding as a matter of law that Briggs's defenses, including invalidity based on anticipation by prior art, were objectively unreasonable is meaningless and falls out of the case. The jury was asked to, and did, resolve the question of Briggs's subjective intent. It was instructed to consider whether "an unjustifiably high risk of infringement was known to Briggs or was so obvious that it should have been known by Briggs." Filing No. 605 at 34. The jury was instructed in accordance with *Halo*.

There was substantial evidence that Exmark's mower deck was a large improvement over prior art with respect to cut quality. Moreover, the jury was in fact presented evidence of prior art, limited to side-discharge mowers. The jury heard testimony on the Walker prior art testimony and on supposed baffles that Marshall had

seen before. The Appeals Court affirmed the court's exclusion of other prior art (i.e., mulching mowers) as irrelevant to the Asserted Claims.

The purported relevance of other baffle designs is arguably to show that Briggs did not view the improvements in Exmark's the baffle structure to be novel or inventive and therefore had a legitimate or credible defense to infringement, so as to demonstrate a lack of recklessness. If that were so, if the design were unremarkable, why copy it? The evidence at trial effectively established that Briggs and its predecessor, Ferris, either knew that it infringed the patent, or the infringement was so obvious that it should have known it was infringing. Briggs cannot credibly argue that it did not copy Exmark's baffle design. Further, any contention that it did not regard the improvement to be novel is belied by the fact that Briggs built its marketing campaigns on the improved cut quality of the infringing products. Although Briggs had other patents, it did not seek a patent on the baffle design. Briggs's assertion of privilege barred inquiry into evidence that could have shed light on its state of mind.

Most importantly, Briggs made no offer of proof or proffer on what the excluded evidence might have shown. The Court has not been presented with even a suggestion that such evidence exists. Simply put, the case was never about Briggs's belief that Exmark's invention was not novel. Briggs made vague allusions to things it had seen before and ideas that were "in the air," but the Court has not been presented with a shred of evidence that shows its invalidity defense was anything but a litigation-inspired defense. The infringement with respect to the original mowers was shown to be outright and deliberate copying and the jurors found as much in delivering a verdict that the infringement was willful. Briggs's assertions of anticipation by prior art were clearly developed in litigation, after the action was filed, and as part of the design-around.

Overall, the significance of the invention was improved cut quality in a three-bladed, side discharge mower.  None of the purported prior art sources had achieved that accomplishment, as the patent office and this Court have both determined.  The fact of the matter is that the prior art, if admitted, would not have made a difference to the jury in the face of strong evidence of copying as well as evidence that Ferris, later Briggs, knew and appreciated the inventiveness of the improvement reflected in the '863 patent and acted recklessly in the face of evidence showing: (1) that the improvement (the baffle design) would likely be patentable and would be patented; (2) that Exmark's products were, for a time, marked with "patent pending" notices; and (3) Briggs admittedly owned and disassembled Exmark mowers that were marked as patented after 1999.  Considering those factors, Ferris's and Briggs's failure to look for the patent and or seriously consider its validity was reckless.

In opposition to Exmark's motion in limine to exclude the prior art evidence, Briggs argued that "[t]he evidence that Exmark seeks to exclude demonstrates that other lawnmower manufacturers have been utilizing baffles in their products for decades," and that "[p]ut simply, Exmark was not the first to utilize the type of baffle at issue."  Filing No. 514, Briggs's Brief in Opposition to Motion in Limine at 6.  It contended that the existence of similar baffles shows Briggs had no reason to know any patent would have covered Briggs's products.  That is simply not the case.  The evidence shows that Exmark was the first to utilize the type of baffle at issue, at least with respect to a three-bladed, side-discharge mower.  Philip Wenzel, an inventor himself, obviously appreciated the value of the patented improvement enough to copy it.  Ferris's and Briggs's limited patent review policy does not provide a reasonable defense, especially in light of its assertion of privilege with respect to evidence that could potentially have explained its actions.  Prior

art relating to "similar" baffles is not relevant to the '863 patent damages or willfulness. Evidence of decades-old use of other baffles would only have confused the jury.

Also, Briggs relied extensively on its laches argument—that Exmark ostensibly slept on its rights in not asserting its claim earlier. The Appeals Court affirmed this court's exclusion of evidence of Exmark's purportedly delayed decision to sue for infringement, holding the evidence was irrelevant to damages, noting that the record supports scarcity of resources for doing so. The record presents a picture of subjective intent to infringe, with the infringer aware of a small competitor's inability to assert its rights through litigation. Briggs makes much of the fact that Exmark did not inform Briggs, via letter or phone call, that Exmark regarded the accused products as infringing its patent. That fact is of no consequence because Exmark had no obligation to do so. Further, Exmark's continued assertion that the redesigned baffles infringed its patent did not appear to have the desired affect (to stop infringing or agree to pay a licensing fee) on Briggs.

The Court finds the jury's determination comported to *Halo*. The jury determined the entire willfulness issue. The jury was instructed in accordance with *Halo* and the court's determination as a matter of law that there was an objective risk of infringement is of no consequence to that determination. The jury found that Exmark proved, under a higher burden than that now required under *Halo*, "an unjustifiably high risk of infringement was known to Briggs or was so obvious that it should have been known to Briggs." The jury's decision was based on a finding of subjective intent to infringe, amply supported by the evidence. The jury was not told, nor could it reasonably infer that it could find willful infringement based solely on a finding that Briggs knew or should have known of the existence of the patent.

The jury instructions, in the context of the litigation, indicate that willfulness is based on an infringer's knowing or having reason to know its conduct is infringing a valid patent. Briggs maintained throughout the litigation that it was unaware of Exmark's patent until it was sued. The jury obviously rejected that argument. Even assuming the jury credited the testimony that Briggs was not aware of the patent until 2010, it stands to reason that a party who is not aware of a patent would not have considered whether it had defenses to infringement of the patent. Briggs has not shown or suggested that it had any position on invalidity prior to those developed in litigation.

The evidence shows that Briggs acquired an Exmark Lazer Z in 1996, copied Exmark's flow baffles, began selling its infringing product in 1998, and never inquired as to a patent. Wenzel admitted that he should have known of the patent. In consideration of that evidence, no reasonable jury could find that Briggs did not recklessly disregard Exmark's patent rights, irrespective of any purported invalidity defense based on marginally relevant prior art. Briggs has not shown that any such evidence was either relevant or would have made a difference in the outcome of the case.

Briggs's argument that it was prejudicial to allow Exmark to compare Claim 1 to the accused product without allowing Briggs to compare it to prior art is unavailing. Comparing Claim 1 to the accused product is directly relevant to, and probative of, copying, whereas comparison to prior art, especially in light of the finding that the prior art did not anticipate the asserted claim under the court's claim construction, would equate to allowing the alleged infringer to present an alternate claim construction to the jury and allowing re-litigation of a disallowed defense.

Pursuant to the Federal Circuit's remand, the Court determines there is no need for retrial of the willfulness finding. Accordingly, Exmark's motion to reaffirm the jury's

finding of willfulness will be granted and there will be a new trial only on the amount of compensatory damages.

IT IS ORDERED:

1.      Exmark's motion to reaffirm the jury verdict that Briggs's infringement was willful (Filing No. 723) is granted.

2.      On remand, the Court finds there is no need for a new trial on willfulness.

DATED this 26th day of November 2018.

BY THE COURT:

 s/ Joseph F. Bataillon_____
Joseph F.  Bataillon
Senior United States District Judge
