## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| EXMARK MANUFACTURING CO., INC., | ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) Civ. Action No. 8:10-cv-00187-JFB-CRZ |
| BRIGGS & STRATTON CORP. | ) ) ) |
| *Defendant.* | ) ) |

### EXMARK'S ADDITIONAL PROPOSED AND AMENDED JURY INSTRUCTIONS

Exmark respectfully requests that the Court adopt Exmark's proposed jury instructions as set forth below.

**I.  EXMARK'S REVISED INSTRUCTION NO. 23: ACCEPTABLE NON-INFRINGING ALTERNATIVES**

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. An acceptable substitute must be a product that does not infringe the patent.

If an acceptable substitute was not sold on the market at the time of the hypothetical negotiation, you may infer that it was not available as a noninfringing substitute at that time. If the acceptable substitute was not sold at the time of the hypothetical negotiation, then Briggs must show by a preponderance of the evidence that, at the time of the hypothetical negotiation, the substitute was available in some form and that Briggs had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute. In deciding whether a substitute was available at the time of the hypothetical negotiation, you may consider the amount of time that would have been necessary to make the substitute ready for

1

commercial use. Mere speculation or conclusory assertions are not sufficient to demonstrate that a substitute was available.

**Support and Rationale:** The American Intellectual Property Law Association's Model Patent Jury Instruction upon which Briggs' proposed instruction is based is written for cases in which lost profits damages are at issue. AIPLA Model Patent Jury Instructions (2018) at 47 (titled "Lost Profits—Panduit Factors—Acceptable Non-Infringing Substitutes"). Exmark's proposed jury instruction is appropriately adapted to the reasonable royalty context and comports with Federal Circuit case law, while addressing the specific evidentiary issues this case presents.

Nearly every alternative Briggs has introduced was commercialized years after the hypothetical negotiation. Given the *post hoc* nature of this evidence, the jury instructions should make clear that such alternatives cannot be considered "available" where there is no evidence they existed in any form anywhere near the time of the hypothetical negotiation. Further, where there is no evidence that an alternative was on the market at the time of the hypothetical negotiation, it is important that the jury understand how to properly evaluate and weigh evidence pertaining to such later-developed alternatives. *See Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) ("When an alleged alternative is not on the market during the [relevant time] period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time. . . . Mere speculation or conclusory assertions will not suffice to overcome the inference.").

The evidence has shown, and will show, that modifying a baffle requires testing over a full season to account for different grass types and conditions. *E.g.*, Trial Tr. 270:1-10. An instruction is required to help the jury properly consider such evidence in their analysis. *See, e.g., Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013) (affirming district

court exclusion of evidence of an alternative where it "took Defendants nearly a year . . . to make the [alternative] available for commercial use"); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123-24 (Fed. Cir. 2003) (alternative not available where defendant expended hundreds of hours on design and testing). The nature of the evidence in this case requires a departure from the language of the model instruction to properly adapt the instruction to the reasonable royalty context and to address the unique factual issues this case presents.

Exmark objects to Briggs' proposed instruction, which fails to account for the fundamental differences between lost profits and reasonable royalty analyses. Briggs' references to the accounting period, which begins nearly five years after the hypothetical negotiation will confuse the jury and prejudice Exmark. In arguing that availability should be assessed throughout the infringement period, Briggs ignores Federal Circuit precedent as well as key distinctions between lost profits and reasonable royalty damages cases. The Federal Circuit has stated that in the reasonable royalty context the key time point for assessing the availability of noninfringing alternatives is the time of the hypothetical negotiation. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("There was, therefore, no available and acceptable noninfringing alternative to which [defendant] could have switched *at the time of the hypothetical negotiation* . . . .") (emphasis added). This Court has also acknowledged that the appropriate time to assess availability is at the time of the hypothetical negotiation. (Dkt. 688-1 at 9 ("Briggs did not show that it had a non-infringing alternative available at the time of the hypothetical negotiation, which would have occurred in 1999. The fact that Briggs redesigned its mowers in 2010 has little relevance to the damages analysis, which revolves around a hypothetical negotiation that would have occurred in 1999.")

3

In arguing to the contrary, Briggs misleadingly relies on lost profits cases such as *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999). "Lost profits" is a different form of damages remedy than reasonable royalty damages. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 09-290, 2012 U.S. Dist. LEXIS 120556, at *12 (W.D. Pa. Aug. 24, 2012) ("*Grain Processing* is not entirely relevant to the matter at hand because that case involved a damages theory premised on lost profits, rather than a reasonable royalty."). To be entitled to lost profits, the plaintiff must prove that "but for" the defendant's infringement, the plaintiff would have made the defendant's sales. *Grain Processing*, 185 F.3d at 1349. If the "but for" condition ceases to exist at any time during the infringement period (because, for example, a noninfringing alternative enters the market), then lost profits damages are no longer appropriate. Thus, it makes sense to consider the availability of noninfringing alternatives throughout the accounting period in a lost profits case. But this is not a lost profits case. Both parties' experts agree (consistent with the case law cited above) that the relevant date for analyzing the presence of acceptable noninfringing alternatives is at the time of the hypothetical negotiation. *See* Dkt. 765-2 (Bone Report) ¶ 15; Dkt. 760-2 (Bennis Report) at 72. While Briggs' proposed instruction is, admittedly, closer to the text of the lost profits model instruction than Exmark's proposed instruction, Briggs has failed to adapt its proposed instruction to the reasonable royalty scenario.

Finally, the cases Briggs cites to support its arguments are of little relevance to this case. Briggs cites *Rosco, Inc. v. Mirror Lite Co.*, 626 F. Supp. 2d 319, 336 (E.D.N.Y. 2009) for the proposition that "non-infringing alternatives developed during the life of the patent, but after the date of first infringement, [are] ***relevant to reasonable royalty negotiation***." (Briggs' emphasis). But the full sentence in *Rosco* says "although a non-infringing alternative was developed during

4

the life of the patent, there is insufficient proof that the non-infringing alternatives were available *at the date of first infringement*." *Id.* (emphasis added).

Briggs also cited *Linear Tech. Corp. v. Micrel, Inc.*, No. C-94-1633 MHP, 2006 WL 8425047, at *38, 2006 U.S. Dist. LEXIS 96860, at *114 (N.D. Cal. June 9, 2006), *amended*, 2006 WL 2130736 (N.D. Cal. July 27, 2006), which presents a distinguishable fact scenario that illustrates why a detailed instruction is needed in this case. In *Linear Tech. Corp.* the design-around took "approximately three-day periods of an engineer's time," cost $6,800, and the court found the design change could have been accomplished at the time of the hypothetical negotiation (four years earlier) because the defendant had "disabled another allegedly infringing component in the Accused Products back in 1992 [years before the hypothetical negotiation] in the same manner." *Id.* at *113-14. Here, Briggs' alleged alternatives did not exist in any form until *years after* the hypothetical negotiation, and there is no corroborating evidence that such alternatives *could have* been commercialized any earlier. Where, as here, the alleged alternatives are so far removed from the time of the hypothetical negotiation, and there is no evidence to corroborate their availability at the time of the hypothetical negotiation, a more detailed instruction describing how such evidence should be evaluated is warranted.

## II. EXMARK'S PROPOSED LIMITING INSTRUCTION: BRIGGS' 2010 DESIGN

You have been told that the 2010 Briggs redesign does not infringe the patent in suit.

However, for purposes of your damage assessment, the relevant question is what the parties would have believed in 1999 as to whether the 2010 Briggs redesign infringed and whether that redesign was available to Briggs in 1999.

Your assessment of damages should consider all of the relevant factors that I have instructed you about.

**Support and Rationale:** In light of the Court permitting the jury to be told that Briggs' 2010 redesign did not infringe, it is important that the jury not take that fact as determinative of whether that design was available in 1999. A limiting instruction is required to affirm that availability in 1999 does not follow from the fact that the redesign was found to be non-infringing.

### III. EXMARK'S PROPOSED INSTRUCTION: EFFECT OF NON-INFRINGING ALTERNATIVES ON DAMAGES

Damages are not capped at the cost of implementing a non-infringing alternative. To the contrary, an infringer may be liable for reasonable royalty damages that exceed the amount that the infringer could have paid to avoid infringement.

**Support and Rationale:** *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("[Defendant] is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative. . . . To the contrary, an infringer may be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement.").

This instruction is needed as Briggs argued to the jury that the design-around cost capped damages. Trial Tr. Vol. III at 573:17-20 ("But as you do your job, one of the constraints, one of the things that sets the upper boundary for what would make the reasonable royalty is design-around costs; right?"). That is contrary to the law.

IV. **EXMARK'S PROPOSED INSTRUCTION: EFFECT OF BRIGGS' PROFIT ON REASONABLE ROYALTY**

Briggs' anticipated profit from use of the patented invention is among the factors to be considered in determining a reasonable royalty, but the law does not require that an infringer be permitted to make a profit.

**Support and Rationale:** *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1374 (Fed. Cir. 2008) ("[W]e reject [Defendant's] argument that a reasonable royalty can never result in an infringer operating at a loss. Although an infringer's anticipated profit from the use of the patented invention is among the factors to be considered in determining a reasonable royalty, the law does not require that an infringer be permitted to make a profit.") (internal quotations and citation omitted).

Briggs has argued that it cannot make a profit if it pays a 5% royalty. The law does not require that an infringer be permitted to make a profit. The interests of the patentee are important, and those interests may result in a reasonable royalty where the infringer makes no profit.

V. **EXMARK'S PROPOSED LIMITING INSTRUCTION: ONLY ONE CLAIM NEED BE INFRINGED**

When one patent claim is infringed, the patent is infringed. A patent holder need only establish infringement of one claim.

**Support and Rationale:** *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987) ("One is liable for patent infringement if one claim be infringed.").

In light of Briggs' statements comparing the value of "thousands of claims" to "one claim of one patent," a limiting instruction is required to rectify any confusion on the relationship between infringing a claim and infringing a patent. Trial Tr. Vol. III at 583:18-22 ("So on the

7

one hand, we have thousands of claims that there's testimony that couldn't – they couldn't be designed around and on the other hand, we have one claim of one patent that has been successfully designed around and you're saying those two situations are roughly equal.").

                                      **EXMARK MANUFACTURING CO., INC.**

                                      By its attorneys,

Dated: December 14, 2018            *s/ J. Derek Vandenburgh*
                                        J. Derek Vandenburgh (admitted *pro hac vice*)
                                        Joseph W. Winkels (admitted *pro hac vice*)
                                        Alexander S. Rinn (admitted *pro hac vice*)
                                        CARLSON, CASPERS, VANDENBURGH &
                                            LINDQUIST, P.A.
                                        225 South Sixth Street, Suite 4200
                                        Minneapolis, MN 55402
                                        Phone: 612-436-9600
                                        Fax: 612-436-9605
                                        dvandenburgh@carlsoncaspers.com
                                        jwinkels@carlsoncaspers.com
                                        arinn@carlsoncaspers.com

                                        Jill Robb Ackerman (No. 17623)
                                        BAIRD HOLM LLP
                                        1500 Woodmen Tower
                                        1700 Farnam Street
                                        Omaha, NE 68102-2068
                                        Phone: 402-636-8263
                                        Fax: 402-344-0588
                                        jrackerman@bairdholm.com